## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

_____
                                                  :
AUDREY DOE, BECCA DOE, CARLA DOE,                 :
DIANE DOE, EVE DOE, FIONA DOE,                    :
GEORGIA DOE, HIROKE DOE, and IAN DOE, Plaintiffs  :
                                                  :
         VS.                                      :
                                                  :
BOBBY JINDAL, Governor of the State of Louisiana; :
JAMES D. CALDWELL, Attorney General of the State  :
of Louisiana; JAMES M. LEBLANC, Secretary,        :
Louisiana Department of Public Safety and Corrections :
(DPSC), MICHAEL D. EDMONDSON, Superintendent,     :
Louisiana State Police (LSP); JIM MITCHELL        :  CIVIL CASE NO. _____
Deputy Superintendent, LSP; EUGENIE C. POWERS     :
Director, Division of Probation and Parole, DPSC; :
BARRY MATHENY, Assistant Director, Division of    :
Probation and Parole, DPSC; KAY HODGES            :
Commissioner, Office of Motor Vehicles (OMV);     :
RONALD W. SERPAS, Superintendent,                 :
New Orleans Police Department (NOPD), Defendants, :
in their official capacities.                     :
_____   :

## COMPLAINT

Plaintiffs Audrey Doe, Becca Doe, Carla Doe, Diane Doe, Eve Doe, Fiona Doe, Georgia

Doe, Hiroke Doe, and Ian Doe (collectively "Plaintiffs"),[1] by and through their attorneys, allege

the following:

_____

[1]      Plaintiffs seek to proceed under pseudonyms in order to protect their identities from both the
public and from defendants. Because people registered as sex offenders, as well as their family members,
are often targets of harassment, intimidation, and violence, Plaintiffs reasonably fear disclosing their
identity in the public realm. While the identities of all individuals registered as sex offenders in Louisiana
are publicly available through a website maintained by the Louisiana State Police, members of the public
must affirmatively seek out this information. Requiring Plaintiffs to disclose their identities in connection
with litigation which names, among others, the Governor of the State of Louisiana as a defendant, would
subject them to a significantly greater level of public exposure of their status on the sex offender registry,
and place them at substantially increased risk of hostile reaction from the public, opprobrium, social
ostracization, considerable harassment, serious retaliatory harm, and violence.  *See Doe v. Stegall*, 653
F.2d 180, 186 (5th Cir. 1981); *Victoria W. v. Jerry J. Larpenter, et al.,* 2001 U.S. Dist. LEXIS 5072,
Civil. No. 00-1960 (Apr. 17, 2001 E.D.La). Indeed, requiring Plaintiffs to disclose their (cont…)

## NATURE OF ACTION

1.      Since 1805, Louisiana's Crime Against Nature statute has criminalized the commission of "unnatural carnal copulation," defined by Louisiana courts as oral and anal sex. The statute prohibits the commission of these sex acts, which are both non-procreative and historically associated with homosexuality, irrespective of the gender, marital status or consent of the participants.

2.      In 1982, Louisiana expanded its Crime Against Nature statute to specifically criminalize "solicitation by a human being of another with the intent to engage in any unnatural carnal copulation for compensation."  In so doing, Louisiana became the first and only state in the nation to adopt a freestanding statute that specifically criminalizes offering or agreeing to engage in oral or anal sex for a fee.  While other states have general provisions criminalizing solicitation and prostitution-related offenses, Louisiana alone singles out solicitation of oral or anal sex for harsher punishment than solicitation of other sex acts.

3.      Louisiana's prostitution statute outlaws the solicitation and commission of "indiscriminate sexual intercourse" – encompassing vaginal, oral, and anal intercourse – for compensation, thereby reaching all the conduct outlawed under the Crime Against Nature by Solicitation statute.

---

identities to the public would exacerbate the very harms which are the subject of Plaintiffs' complaint, resulting in further violation of their right to privacy and unconstitutional disclosure of highly sensitive personal information.

Plaintiffs also seek to shield their identities from defendants because they are challenging governmental activity, and thus placing themselves at risk of retaliation by government officials who retain a considerable degree of control over Plaintiffs' daily lives, with potentially drastic consequences, including loss of liberty.  *See Doe*, 653 F.2d at 186*; Does I Thru XXIII v. Advanced Textile Corporation,* 214 F.3d 1058, 1067 (9th Cir. 2000).

Moreover, plaintiffs' identities are immaterial to the claimed constitutional violations, and knowledge of their actual identities is not necessary to adjudicate the claims or defenses in this case. Accordingly, plaintiffs respectfully request the Court's permission to proceed in this litigation using a pseudonym.

4.      The Louisiana Legislature recently equalized the penalties associated with a first conviction for prostitution and a first conviction of Crime Against Nature by Solicitation.

5.      However, the statutory penalties for a second prostitution conviction and a second Crime Against Nature by Solicitation conviction differ in critical ways, thereby subjecting individuals convicted of allegedly soliciting oral or anal intercourse to far harsher punishment than those convicted of soliciting vaginal intercourse.

6.      In 1991, the Louisiana Legislature passed the Registration of Sex Offenders, Sexually Violent Predators, and Child Predators law (hereinafter "registry law"), which provides for the collection and public dissemination of vast amounts of information about people convicted of specifically enumerated sex offenses.  Under this law, individuals convicted of Crime Against Nature by Solicitation are required to register as sex offenders.

7.      Until very recently, even a first Crime Against Nature conviction triggered this requirement.  Despite recent amendments, anyone convicted of a second Crime Against Nature by Solicitation offense must still register as a sex offender.  Conversely, no number of convictions for prostitution requires registration as a sex offender, and never has.

8.      Crime Against Nature by Solicitation is the only offense requiring registration as a sex offender that does not involve use of force, coercion, use of a weapon, lack of consent, or a minor victim.  In fact, the offense of Crime Against Nature by Solicitation requires no act whatsoever – only a verbal offer or agreement to engage in oral or anal sex in exchange for compensation.

9.      The only possible explanation for the inclusion of the Crime Against Nature by Solicitation statute in the registry law is that it targets non-procreative sex acts traditionally associated with homosexuality.

10.    Plaintiffs were all convicted of Crime Against Nature by Solicitation.  As a result, though their conduct fell within the scope of the statute prohibiting prostitution, they have, without any rational basis, been subjected to harsher penalties than similarly-situated individuals convicted of prostitution, and have been forced to register as sex offenders.

11.    One Plaintiff has only a single Crime Against Nature by Solicitation conviction, but because her conviction precedes recent legislative amendments, she continues to be subject to the registration requirements.  Other Plaintiffs have multiple convictions of Crime Against Nature by Solicitation, and as a result must register as sex offenders for the rest of their lives.

12.    The registry law imposes a myriad of requirements on individuals convicted of Crime Against Nature by Solicitation.  These harsh requirements affect every aspect of their lives, including housing, employment, travel, access to identification documents, family life, and evacuation in the event of an emergency or natural disaster.  For example, registrants must carry a state driver's license or non-drivers' identification document which brands them as a sex offender in bright orange capital letters.  Like individuals on the registry as a result of having committed offenses involving children, violence, or lack of consent, individuals convicted of mere solicitation of oral or anal sex for compensation must disclose the fact that they are registered as a sex offender to neighbors, landlords, employers, schools, parks, community centers, and churches.

13.    The requirement that individuals convicted of Crime Against Nature by Solicitation appear on sex offender database, known as the Sex Offender and Child Predator Registry (hereinafter "SOCPR"), has had devastating consequences for Plaintiffs.  For example, many Plaintiffs have been unable to secure work or housing as a result of their status as sex

offenders.  Audrey Doe has been physically threatened by neighbors.  Eve Doe has been refused residential drug treatment because providers will not accept sex offenders.

14.    Plaintiffs are not alone in being forced to register as sex offenders simply because they have been convicted of Crime Against Nature by Solicitation.  Indeed, almost 40 percent of registered sex offenders in Orleans Parish are on the registry as a result of such a conviction.  75 percent of these individuals are women, and 79 percent of them are African American.

15.    Requiring individuals convicted solely of Crime Against Nature by Solicitation to register as sex offenders serves no legitimate purpose whatsoever.  Plaintiffs pose no danger to anyone.  They have not been convicted of any criminal offense involving force, use of a weapon, coercion, lack of consent, or a victim who is a minor.  They pose no threat of predation, violence, or danger to children.  Thus, the mandate that they be subject to the harsh requirements of the sex offender registry law is unjustifiable and unconstitutional.

16.    Had Plaintiffs been charged and convicted of prostitution (which encompasses all their alleged conduct), they would not be required to register as sex offenders.  The only reason Plaintiffs are listed on the SOCPR and subjected to the requirements of the registry law is that they were convicted under the provisions of a 200-year-old statute that condemns non-procreative sex acts traditionally associated with homosexuality solely on grounds of moral disapproval of the specific sexual acts involved.   Indeed, much of the outdated statute under which Plaintiffs were charged has been explicitly rendered unconstitutional by the United States Supreme Court's decision in *Lawrence v. Texas*, 539 U.S. 558 (2003).

17.    Defendants, by requiring, administering, enforcing, and endorsing Plaintiffs' inclusion on the SOCPR, and their subjection to the requirements of the registry law, are

violating the rights guaranteed to Plaintiffs under the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.

18.     All Plaintiffs seek a judgment declaring that Defendants' actions and the actions of all persons acting on Defendants' behalf violate Plaintiffs' constitutional rights as to each applicable count.  Plaintiffs also seek a declaration that the application of the registry law to Plaintiffs is and was unjustified, unconstitutional, and unlawful.  Plaintiffs further seek an injunction compelling Defendants to remove Plaintiffs from the SOCPR, expunge all records signaling their past inclusion on the registry, and/or enjoining defendants from administering and enforcing the registry law.  In addition, Plaintiffs seek an award of costs and reasonable attorneys' fees.

## JURISDICTION AND VENUE

19.     Plaintiffs' claims are brought pursuant to 42 U.S.C. § 1983 and under the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.

20.     This court has jurisdiction to hear Plaintiffs' claims pursuant to 28 U.S.C. §§ 1331, 1343 and the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202.

21.     Venue is proper in the Eastern District of Louisiana under 28 U.S.C. § 1391(b)(2) because seven of the Plaintiffs reside in this judicial district, and because a substantial part of the acts that gave rise to this lawsuit occurred principally in the City of New Orleans.  This District is also an appropriate venue under 28 U.S.C. § 1391(b)(1) because at least one Defendant resides in this judicial district.

# PARTIES

## I.    Plaintiffs

22.    Plaintiffs have all been convicted under Louisiana's Crime Against Nature by Solicitation statute.  Solely as a result of these convictions, they are all registered as sex offenders pursuant to Louisiana's registry law.  No Plaintiff is registered as a sex offender as a result of any conviction other than Crime Against Nature by Solicitation.

## II.    Defendants

23.    Defendant BOBBY JINDAL is the Governor of the State of Louisiana.  As Chief Executive of the State of Louisiana, he has the duty to "faithfully support the constitution and laws of the state and of the United States and . . . see that the laws are faithfully executed."  LA Const. art. 4 § 5.  He also appoints, subject to confirmation by the Senate, the head of each department in the executive branch and the members of each board and commission in the executive branch whose election or appointment is not provided by the Louisiana Constitution. This includes the Secretary of the Department of Public Safety and Corrections, which administers, implements, and maintains the State Sex Offender and Child Predator Registry (SOCPR).  He also has, pursuant to Article IV, § 5(e) of the Louisiana Constitution, the power to pardon or commute sentences imposed for criminal offenses.  He is sued in his official capacity.

24.    Defendant JAMES D. CALDWELL is the Attorney General of the State of Louisiana.  As such, he exercises supervision over all district attorneys in the state, and has authority to institute a prosecution, to intervene in any proceeding, or issue advisory opinions as to the interpretation of the laws of the State of Louisiana as he may deem necessary for the assertion or protection of the rights and interests of the state.  Thus, Defendant Caldwell has final authority over criminal justice policy in Louisiana, including the administration, maintenance,

and enforcement of the Crime Against Nature statute, the registry law, and the SOCPR.  He is sued in his official capacity.

25.    Defendant JAMES M. LEBLANC is Secretary of the Louisiana Department of Public Safety and Corrections (DPSC), and as such is DPSC's chief executive officer.  DPSC's Corrections Services Division oversees adult offenders, including those on probation and parole. DPSC is charged with informing individuals convicted of registerable offenses who are released from incarceration or placed on parole, supervised release, or probation, of the registration and notification requirements under the registry law.  DPSC is also responsible for obtaining and supplying the Louisiana State Police's Bureau of Identification and Information with information necessary for the registration of sex offenders on the SOCPR.  DPSC is further responsible for implementing the registry law's location tracking and crime correlation based electronic monitoring supervision program, as well as registry law's driver's license and identification stickering and coding program.  As Secretary of DPSC, Defendant LeBlanc is responsible for the functioning and control of all programs within the Department, formulates rules and regulations, and determines policy regarding management, personnel, and total operations.  He is sued in his official capacity.

26.    Defendant MICHAEL D. EDMONSON is Superintendent of the Louisiana State Police (LSP), a statewide law enforcement agency.  The Louisiana State Police's Bureau of Identification and Information maintains the SOCPR, and releases information about registrants on its public website.  As Superintendent of LSP, Defendant Edmonson has ultimate authority over LSP policies, practices, and decisions, including those that affect the maintenance and dissemination of the information contained on the SOCPR.  He is sued in his official capacity.

27.    Defendant JIM MITCHELL is Deputy Superintendent of LSP in charge of Support Services.  LSP Support Services oversees the policies and practices of the Bureau of Identification and Information, which is charged with developing and maintaining the SOCPR, including releasing offender information on its public website.  He is sued in his official capacity.

28.    Defendant EUGENIE C. POWERS is the Director of the Division of Probation and Parole at the DPSC.  The Division of Probation and Parole investigates and supervises adjudicated adult offenders who have been released into the community.  Specifically, the Division supervises all convicted sex offenders who appear on the SOCPR and monitors compliance with registration and notification laws.  As part of this effort, the Division issues state identification cards for offenders that conform to the requirements of the registry law.  As Director of the Division of Probation and Parole, Defendant Powers has ultimate authority over the Division's polices, practices, and decisions, including the supervision of SOCPR registrants and enforcement of the registry law.  She is sued in her official capacity.

29.    Defendant BARRY MATHENY is an Assistant Director in the Corrections Services Department of DPSC and serves as its Sex Offenders and Parole Board Liaison.  As such he is responsible for the Department's policies, practices, and decisions relating to registered sex offenders, including enforcement of the registry law and offender supervision.  He is sued in his official capacity.

30.    Defendant KAY HODGES is the Commissioner of the Office of Motor Vehicles (OMV), the state entity within the Department of Public Safety responsible for implementing state motor vehicle regulations.  OMV carries out the registry law requirements related to driver licensing and identification, including coding and stickering.  As such, the OMV supplies

Plaintiffs and other registrants with driver's licenses that prominently identify them as registered sex offenders.  Defendant Hodges is sued in her official capacity.

31.     Defendant RONAL W. SERPAS is the Superintendent of the New Orleans Police Department (NOPD).  As such, he has ultimate authority over the policies, practices, customs, and decisions of the NOPD, a municipal agency of the City of New Orleans.  This includes policies, practices, customs, and decisions with respect to enforcement of the registry law and maintenance of the SOCPR.  Such functions include advising and notifying registrants of their obligations under the registry law, obtaining and executing arrest warrants for those suspected of being out of compliance, and spot-checking offender residences.  Defendant Serpas is statutorily charged with the duty to collect and disseminate information from registrants in New Orleans, including those there temporarily as a result of an emergency.  He is further authorized to release such information to the public when necessary.  Defendant Serpas is sued in his official capacity.

### STATEMENT OF FACTS

**I.     Louisiana's Crime Against Nature Statute and its Criminalization of Oral and Anal Sex.**

32.     For more than 200 years, Louisiana criminalized sexual conduct considered contrary to the laws of nature because it was non-procreative and historically associated with homosexuality.  Specifically, Louisiana outlawed oral and anal sex, irrespective of the gender, marital status, or consent of the participants, throughout the 19th and 20th Centuries.  Louisiana's current application of sex offender registration requirements to Plaintiffs and other individuals convicted of Crime Against Nature by Solicitation is a direct result of the long history of animus and discrimination described in Sections I(A) through I(C), below.

A.    1805-1895

33.    Louisiana's first criminal code was enacted in 1805, and included a provision criminalizing what was termed a "Crime Against Nature."  *See* 1805 Louisiana Acts chap. I, § 2. The law provided for the punishment of the "abominable and detestable crime against nature, committed with mankind or beast."  LA. REV. STAT. § 788.

34.    For much of the 19th Century, as in most jurisdictions at the time, Louisiana's statute did not define the precise conduct constituting this crime.  However, American courts, commentators and legislators uniformly followed English precedent holding that a "crime against nature" referred to anal sexual intercourse between a man and an animal, a woman, or another man.

35.    The prohibition on anal sexual intercourse was animated by religious and social prohibitions against non-procreative sexual activity.  As the United States Supreme Court observed in *Lawrence v. Texas*, "early American sodomy laws were not directed at homosexuals as such but instead sought to prohibit nonprocreative sexual activity more generally."  539 U.S. at 568.

36.    Regulation of non-procreative sexual practices stemmed from Christian religious teachings, which imposed a duty on followers to multiply.  It encompassed such non-procreative acts as masturbation and sodomy.[2]  The disapproval and prohibition of non-procreative sex acts continued to animate 19th Century laws outlawing sodomy.

37.    In 1882, the Supreme Court of Louisiana displayed this animus in rejecting a vagueness challenge to the Crime Against Nature statute, stating: "The euphemism by which the law describes *pecatum illud horribile* [that horrible crime not to be named among Christians],

---

[2]      *See* Brief of Professors of History George Chauncey, Nancy F. Cott, et. al. as Amici Curiae Supporting Petitioners, *Lawrence v. Texas*, 539 U.S. 558 (2003) (hereinafter "*Lawrence* Historians Brief").

does not, in our opinion, leave its meaning doubtful or obscure." *State v. Williams*, 34 La. Ann. 87, 88 (1882).

**B.    1896-mid-20th Century**

38.    In 1896, Louisiana amended its Crime Against Nature statute to explicitly encompass oral sex, rewording the provision to state: "Whoever shall be convicted of the detestable and abominable crime against nature committed with mankind or with beast with the sexual organs, or with the mouth, shall suffer imprisonment at hard labor for not less than two years and not more than ten years." 1896 Louisiana Acts § 1, page 102. In 1900, the Supreme Court of Louisiana nonetheless indicated its belief that the Crime Against Nature statute had criminalized both anal and oral sex since its inception. *See State v. Vicknair*, 52 La. Ann. 1921 (1900).

39.    Both oral and anal sex are non-procreative forms of sexual conduct that were subject to criminalization and regulation throughout the 19th Century and, in many jurisdictions, including Louisiana, the 20th Century.

40.    In *State v. Long*, 133 La. 580 (1913), the Louisiana Supreme Court cited to a number of definitions of Crime Against Nature before concluding once again that the statute encompassed not only anal sex, but also oral sex, irrespective of consent, the sex of the participants, or their marital status.

41.    Just one year later, the Supreme Court of Louisiana made it clear that it understood oral sex to be a criminal "perversion," and reiterated that the statute applied to fellatio "and perhaps that other perversion called 'cunnilingus,' committed with the mouth and the female sexual organ." *State v. Murry*, 136 La. 253, 260 (1914).

42.    In 1942, the Louisiana Criminal Code was comprehensively revised, and the Crime Against Nature statute was amended to read: "Crime against nature is the unnatural carnal copulation by a human being with another of the same or opposite sex or with an animal. Emission is not necessary, and, when committed by a human being with another, the use of the genital organ of one of the offenders of whatever sex is sufficient to constitute the crime." *See* LA. CRIM. STAT. ANN. § 43:89 (1943).  Although the 2-year minimum sentence remained, the maximum penalty was reduced from 10 to five years, the hard labor provision was made optional, and a fine of up to $2,000.00 was added.  *Id.*

C.    **Mid-20th Century to Present**

43.    In the last third of the twentieth century, sodomy laws began to specifically target homosexuality.  *See*, *e.g.*, *Lawrence*, 539 U.S. at 570.  These laws sought to classify and penalize homosexuals as a subordinate class of citizens, and sodomy and homosexuality became understood as synonymous.  Thus, sodomy laws were, by the latter portion of the twentieth century, explicitly motivated by animus against homosexual conduct and homosexuals, in addition to moral disapproval of non-procreative sex acts.

44.    In 1964, the Louisiana Supreme Court rejected a vagueness challenge to the Crime Against Nature statute in a case involving homosexual sex, stating that:

> The phrase "unnatural carnal copulation" . . . [has] a well defined, well understood, and generally accepted meaning  i.e., *any and all carnal copulation or sexual joining and coition that is devious and abnormal because it is contrary to the natural traits and/or instincts intended by nature, and therefore does not conform to the order ordained by nature*.  To meet the test of constitutionality it is not necessary that the statute describe the *loathsome and disgusting details connected with each and every way in which "unnatural carnal copulation" may be accomplished*.

*State v. Bonnano*, 245 La. 1117, 1123-24 (1964) (emphasis supplied).  The Court thus upheld the defendant's sentence of three years' imprisonment for a single act of consensual sex with another man.

45.     Illustrating the twentieth century focus on regulating homosexuality, in 1966 the Louisiana Supreme Court held that the definition of "unnatural carnal copulation" under the Crime Against Nature statute, as interpreted in *Bonnano*, encompassed oral sex between two women.  *State v. Young et al.*, 249 La. 1053 (1966)

46.     The entire Crime Against Nature statute remained in force until 2003, when the United States Supreme Court decided *Lawrence v. Texas*, 539 U.S. 558 (2003), striking down a Texas sodomy statute and holding that a criminal statute that singles out oral and anal sex "furthers no legitimate state interest which can justify its intrusion into the personal and private life of the individual."  *Id*. at 525-26.

47.     The Louisiana Supreme Court has not had an opportunity to squarely declare La. Rev. Stat. 14:89(A)(1), the portion of the Crime Against Nature criminalizing all oral and anal sex, unconstitutional under *Lawrence*.  However, in *State v. Thomas*, 891 So. 2d 1233 (2005), the Court acknowledged that *Lawrence* dictated that this provision of the statute would not withstand scrutiny.

     **D.     The 1982 Expansion of the Crime Against Nature Statute.**

48.     The Supreme Court's decision in *Lawrence v. Texas* nevertheless did not eliminate the use of the Crime Against Nature statute in Louisiana.  In 1982, Louisiana expanded the statute in an unprecedented way, adding a provision specifically criminalizing *solicitation* of acts of oral and anal sex *for compensation*, and imposing much harsher penalties for this offense than existing provisions outlawing prostitution.

49.    In so doing, Louisiana became the first and only state in the nation to create a statute distinct from the statute criminalizing prostitution that specifically and separately targets solicitation of oral and anal sex for compensation.

50.    Moreover, as described below, a conviction of Crime Against Nature by Solicitation – but not a prostitution conviction – requires registration as a sex offender.

51.    Prostitution is defined under Louisiana Criminal Code as, *inter alia*, "the solicitation by one person of another with the intent to engage in indiscriminate sexual intercourse with the latter for compensation." LA. REV. STAT. 14:82(A)(2). "Sexual intercourse" is defined as "anal, oral, or vaginal sexual intercourse." LA. REV. STAT. 14:82(B).

52.    The 1982 Crime Against Nature by Solicitation provision specifically criminalizes "solicitation by a human being of another with the intent to engage in any unnatural carnal copulation for compensation." 1982 La. Acts page no. 1637; *see also* LA. REV. STAT. 14:89(A)(2). "Unnatural carnal copulation" extends only to oral and anal sex. This remains a criminal offense distinct from prostitution.

53.    Because La. Rev. Stat. 14:82(A)(2), criminalizing prostitution, encompasses all the conduct outlawed by La. Rev. Stat. 14:89(A)(2), the Crime Against Nature by Solicitation statute, police officers have virtually unfettered discretion to arrest individuals under either statute, or both. Similarly, prosecutors have unfettered discretion to charge and prosecute individuals under either statute, or both.

54.    The critical distinction between the statutes is the punishment they trigger.

55.    A first conviction under the prostitution statute is treated as a misdemeanor offense, punishable by a fine of no more than $500.00 or a maximum term of imprisonment of

six months.  *See* LA. REV. STAT. 14:82(C)(1).  The statute does not create any obligation to register as a sex offender.

56.    Until August 2010, a first conviction under the Crime Against Nature statute was, by contrast, treated as a felony offense, punishable by a term of imprisonment of up to five years, with or without hard labor, and/or a fine of not more than $2,000.00.  *See* LA. REV. STAT. 14:89(B) (2009).  Moreover, until August 2010, even a first conviction of Crime Against Nature by solicitation resulted in mandatory registration as a sex offender.

A.    **2010 Amendment to the Crime Against Nature Statute.**

57.    The Crime Against Nature by Solicitation statute remained unchanged until August 2010, when it was amended to slightly alter the penalties imposed.  Despite these amendments, the requirement that individuals convicted of Crime Against Nature by Solicitation register as sex offenders remains in effect for anyone with a second or subsequent conviction. As before, no one convicted of prostitution any number of times is required to register as a sex offender.

58.    As of August 15, 2010, a first conviction for Crime Against Nature by Solicitation is no longer a felony, and now carries identical penalties to a first prostitution conviction.  No registration on the SOCPR is required.  However, the amendment is not retroactive, and thus does not benefit those individuals with a single Crime Against Nature by Solicitation conviction incurred prior to August 2010, including several Plaintiffs.

59.    The sentencing exposure for subsequent offenses, however, continues to differ under the two statutes.  Critically, a second Crime Against Nature by Solicitation conviction requires registration as a sex offender.  *See* Section II, *infra*.  No number of prostitution convictions will trigger a requirement that an individual register as a sex offender.

60.     All second or subsequent Crime Against Nature by Solicitation convictions carry a penalty of a prison sentence of up to five years, with or without hard labor, and/or a fine of not more than $2,000.00. By contrast, a second prostitution conviction carries a prison sentence of not more than two years, and/or fine of between $250.00 and $2,000.00. *See* LA. REV. STAT. 14:82I(2). On a third or subsequent conviction, prostitution carries a prison sentence of between two and four years and/or a fine of between $500.00 and $4,000.00. Thus, even a fifth or tenth prostitution statute carries lighter sentence exposure than a second conviction under the Crime Against Nature by Solicitation statute.

61.     Not only is Louisiana the only state in the country to have a freestanding statute criminalizing solicitation of oral and anal sex for compensation, but it is the only state in the country to punish such conduct more harshly than solicitation of vaginal intercourse for compensation. It is also the only state in the country to impose a sex offender registration requirement for mere solicitation of sexual conduct for compensation, based solely the non-procreative nature of the sexual conduct solicited. And in fact, no other state requires registration for any prostitution offense involving solicitation.

62.     Because police officers and prosecutors continue to have unfettered discretion when deciding whether to arrest and charge individuals under either statute where it is alleged that such individuals have solicited oral or anal sex for compensation, they also have unfettered discretion in choosing whether or not an individual will face mandatory registration as a sex offender if convicted. This creates a situation ripe for abuse and discriminatory enforcement.

II.     **The State Sex Offender and Child Predator Registry (SOCPR).**

      A.     **All Offenses Requiring Registration as a Sex Offender Involve Use of Force, Coercion, Use of a Weapon, Lack of Consent, or a Minor Victim – With the Sole Exception of Crime Against Nature by Solicitation.**

63.     In June 1992, the Louisiana legislature enacted a law requiring the registration of sex offenders, sexually violent predators, and child predators. *See Registration of Sex Offenders, Sexually Violent Predators, and Child Predators*, 1992 La. Acts No. 388 § 1; *see also* LA. REV. STAT. 15:540 ("registry law").  The registry created by the law is known as the State Sex Offender and Child Predator Registry ("SOCPR").  A true and accurate copy of the registry law is appended hereto as Exhibit A.

64.     The registry law was introduced as Senate Bill 1111 by former Senator Cox, who explained to the Senate Committee that he was sponsoring the Bill after an incident in which a child in his constituency went missing after a sex offender moved into the community, but the community had not been informed as to his presence.  No other testimony was introduced into the record before the Senate Bill was adopted.  *See* Senate Committee on Judiciary C, Minutes, May 12, 1992 (Baton Rouge, LA), at page 3.

65.     In passing the registry law, the legislature found that "sex offenders, sexually violent predators, and child predators often pose a high risk of engaging in sex offenses, and crimes against victims who are minors even after being released from incarceration or commitment and that protection of the public from sex offenders, sexually violent predators, and child predators is of paramount governmental interest."  LA. REV. STAT. 15:540(A).

66.     The legislature further found that "law enforcement officers' efforts to protect their communities, conduct investigations, and quickly apprehend offenders who commit sex offenses and crimes against victims who are minors, are impaired by the lack of information

available to law enforcement agencies about convicted sex offenders, sexually violent predators, and child predators who live within the agency's jurisdiction, and the penal and mental health components of our justice system are largely hidden from public view and that lack of information from either may result in failure of both systems to meet this paramount concern of public safety." *Id.* The legislature concluded: "Release of information about sex offenders, sexually violent predators, and child predators to public agencies, *and under limited circumstances to the general public*, will further the *governmental interests of public safety* and public scrutiny of the criminal and mental health systems *so long as the information released is rationally related to the furtherance of those goals*." *Id.* (emphasis supplied).

67.     The legislature included the following offenses among those requiring registration as a sex offender: aggravated rape; forcible rape; simple rape; sexual battery of a person under 13; second degree sexual battery; aggravated and second degree kidnapping of a child under 18; aggravated kidnapping of a child; simple kidnapping of a child under 18; incest; aggravated incest; molestation of a juvenile; felony carnal knowledge of a juvenile; indecent behavior with juveniles; pornography involving juveniles; molestation of a juvenile; computer-aided solicitation of a minor; prohibited sexual conduct between an educator and student; contributing to the delinquency of juveniles; obscenity by solicitation of a person under the age of seventeen; video voyeurism; voyeurism; human trafficking; prostitution involving persons under 17; enticing minors into prostitution; pandering; sexual battery of the infirm; and aggravated Crime Against Nature.[3]

68.     All these offenses include an element of force, coercion, use of a weapon, lack of consent, or a victim under the age of 18.

---

[3]     Aggravated Crime Against Nature differs from Crime Against Nature in that it includes an element of force, lack of consent, and/or a victim under the age of 17. *See* R.S. 14:89.1. The Aggravated Crime Against Nature statute is not the subject of the present lawsuit.

69.     The legislature also included the entire Crime Against Nature statute – including consensual "unnatural carnal copulation" with individuals over the age of 18, as well as solicitation of "unnatural carnal copulation" for compensation, with nothing more – on the list of offenses requiring registration as a sex offender.

70.     The Crime Against Nature statute does not include an element of force, coercion, use of a weapon, lack of consent, or a victim under the age of 18.  Indeed, it is the *only* offense requiring registration as a sex offender that does not include one or more of these elements.

71.     Prostitution itself is not included in La. Rev. Stat. 15:541 as an offense requiring registration as a sex offender.  While registration is required for certain prostitution-related offenses, those offenses all involve an element of force, coercion, use of a weapon, lack of consent, or a minor victim.

72.     Additionally, the Crime Against Nature by Solicitation statute is distinct from most of the other offenses requiring registration as a sex offender in that it does not involve actual *commission* of any sexual act – merely the *verbal agreement to engage* in such an act. The only other offenses requiring registration that do not involve actual commission of an act are computer-aided solicitation of a minor and obscenity by solicitation of a person under the age of seventeen.  Both of these offenses involve minor victims.

73.     Thus, the Crime Against Nature is uniquely situated as the only offense requiring registration as a sex offender based on religious and moral objections to the kinds of sex acts involved (i.e. oral and anal sex), and their historical association with homosexuality, even though those acts do not involve use of force, coercion, use of a weapon, lack of consent, or a minor victim.

**B.    Obligations Imposed by the Registry Law**

74.    The registry law imposes myriad requirements and obligations upon individuals who are required to register as sex offenders, affecting almost every aspect of a registrant's life, including housing, employment, family relationships, access to identification documents, ability to travel, and emergency evacuations.

**ii.    Registration Requirements**

75.    All adults listed on the SOCPR (hereinafter "registrants") must separately register within three days of release or conviction with either the sheriff or police department where she or he lives, works, and attends school.

76.    At this time, the registrant must provide, *inter alia*: his or her name; residential, work, and school addresses, along with travel routes used by the registrant and two forms of proof of residence for each residential address provided; a current photograph; fingerprints, palm prints, and a DNA sample; cellular and home telephone numbers; a description of every vehicle registered to or operated by the registrant, including license plate number and a copy of the registrant's driver's license or identification card; social security number and date of birth; a description of her or his physical characteristics, including but not limited to sex, race, hair color, eye color, height, age, weight, scars, tattoos, or other identifying marks; every e-mail address, online screen name, or other online identifiers used by the registrant to communicate on the internet (required notice must be given before any online identifier is used to communicate on the internet); temporary lodging information regarding any place where the registrant plans to stay for seven or more days; and travel and immigration documents, including but not limited to passports and documents establishing immigration status.

77.     The registrant must pay an annual registration fee of $60.00 to every law enforcement agency with which she or he is registered.  Failure to pay the fee within 30 days of initial registration constitutes a failure to register and subjects the registrant to prosecution for failure to register.  *See* LA. REV. STAT. 15:542.1.4(A)(3).

### iii.    Notification Requirements

78.     Registrants must also disclose the fact that they are registered as sex offenders to all members of the community in which they live, work, study and worship.

79.     These notifications include extensive information about registrants.  They must give notice of their crime of conviction, name, address, and a description of their physical characteristics, along with a photograph,[4] to every residence within three-tenths of a mile in an urban or suburban area of the registrant's address.  This notice is provided in the form of postcards paid for by the registrant.  The same information appears on the registry database, accessible to the public via the internet.

80.     Such notice must also be furnished to the superintendent and school principals within the school district where the registrant resides.  School principals must post notices in conspicuous areas in schools which state the registrant's name, address, and the crime for which she or he was convicted.  They may also share the information with other school principals.

81.     Registrants must also give these notices to their landlords, or whomever owns their residence.

82.     Registrants must also send notices to the superintendent of any park, playground, or recreation districts near the registrant's home.  These superintendents send the information to the custodians of the parks, playgrounds, and recreational facilities in the designated area.

---

[4]     An exception to the registry law waives this requirement for registrants who are convicted under the Crime Against Nature statute.  LA. REV. STAT. 15:542(1)(e).  However, many registrants are not made aware of this exception and post and distribute their photographs publicly.  *See infra* at Section IV.

Custodians then post the information about registrants in conspicuous areas at the park, playground, or recreational facility which state the registrant's name, address, and the crime for which she or he was convicted.  Custodians may share the information with custodians in other areas.

83.     These notices must be furnished every five years.

84.     Law enforcement may also order the registrant to publish their registration information in a newspaper.

85.     The registry statute also authorizes a court to order a registrant to use signs, handbills, bumper stickers, or clothing labels to publicize the fact that she or he is a registered sex offender.

86.     Any registrant who provides recreational instruction to persons under the age of 17 must also prominently display a notice where the instruction occurs that includes his or her name and photograph, the date and jurisdiction of conviction, and his or her crime of conviction.

87.     Driver's licenses and non-driver's state identification issued to registrants feature the words "SEX OFFENDER" in bright orange capital letters, immediately below his or her photograph.

88.     In addition, all registrants are required to carry a special identification card issued by the Department of Public Safety and Corrections that includes the words "SEX OFFENDER" in bright orange capital letters at all times.  Failure to obtain and annually renew this special identification card constitutes a misdemeanor.  LA. REV. STAT. § 40:1321(J).

iv.     Renewal and Update Requirements

89.     Registrants must update their registration in person annually.

90.     Registrants must also contact the sheriff's office or the police department if she or he changes a place of residence or establishes a new or additional residence; vacates his or her address of registration with the intent not to return; has been absent from his or her current address of registration for more than 30 consecutive days or an aggregate of 30 days or more per calendar year and is physically present at another address during that same time period; or has a change in name, place of employment, or enrollment.  Additionally, he or she must send a written notice of change of address or other information to the law enforcement agency with whom she or he was previously registered within three business days of establishing a new or additional residence.

91.     Any time the registrant plans to stay somewhere other than his or her registered address for seven or more consecutive days, she or he must appear in person at the sheriff's office in the parish of residence at least three days prior to establishing temporary lodging to provide the temporary lodging information regarding *any* place where the offender plans to stay while away.

<strong>v.      Emergency Situation Requirements</strong>

92.     Registrants are subject to specific and onerous requirements in the event of an emergency, such as hurricane evacuation.

93.     Under the registry law, any registrant who enters an emergency shelter must, within 24 hours, notify the management of the facility, the chief of police of the municipality, and the sheriff of the parish in which the shelter is located of their sex offender status.

94.     There is also a separate and complex series of Protocols governing the evacuation and sheltering of registrants in the event of a natural or technological emergency.  *See* DSS ESF-6 Protocols for Evacuating and Sheltering Registered Sex Offenders (Unique Population)

("Protocols"), Updated June 25, 2009.   A true and correct copy of these Protocols is appended hereto as Exhibit B.

95.     The Protocols forbid registered sex offenders who need publicly-run emergency shelter from remaining with their children and families in the event of an evacuation.  *Id.* Instead, the Protocols require registrants to use segregated sex offender emergency shelter locations.  They include no provisions that provide for the safety of women or transgender people.

96.     According to the Protocols, the only such segregated facility currently available to registrants is the Wade Correctional Center, a prison in Homer, Louisiana.  Registrants who need to use a public shelter in the event of an emergency must thus go to prison irrespective of whether they are serving a term of incarceration at the time of the emergency.

97.     When a registrant reports to a Parish Pickup Point (¶) in the event of an emergency or disaster, ¶ personnel must alert law enforcement, issue a tracking number and badge to the registrant, and inform the registrant that she or he will not be allowed to stay, or be transported, with family members while housed in state-operated or parish-operated shelter.  All registered sex offenders are put in a guarded holding area, and then board segregated buses for registered sex offenders.  *Id.*  Again, no provision is made for the safety of women or transgender people.

98.     At the shelter, personnel are again required to inform registrants that they may not stay with their family, and separately inform the registrant's family that they are not allowed to stay with the registrant.  They are also to instruct the registrant to wear a badge identifying her as a sex offender at all times.  *See id*. at App. B.

99.     The Protocols specify that "in cases where the registered sex offender is a single parent, provisions will be made for the child/chlidren [sic] to be placed with another family member or in an alternative caregiver situation out of harm's way until the emergency event ends." *Id*. at App. A.  There are no provisions explaining how this process is implemented or achieved, or what will be done if no suitable caregiver is found.

100.     Failure to present oneself as a registered sex offender in all emergency situations that involve evacuation and sheltering assistance is subject to criminal punishment such as revocation of parole.  *See id*. at App. C.

### vi.    Failure to Register

101.     Failure to fully comply with the complex and burdensome obligations imposed by overall registration requirements has grave consequences – even if failure to comply with one of these requirements results from poverty or homelessness.

102.     A person who fails to register, periodically renew and update registration, provide proof of residence or notification of change of address or other registration information, or provide community notification as required by the registry law, is guilty of a felony offense – along with the attendant sentencing exposure and fines and fees.  *See* LA. REV. STAT. 15:542.1.4.  Criminal liability attaches irrespective of the reason for failure to comply, such as inability to pay for registration or delivery of notification postcards, or homelessness.

103.     The failure to register provisions extend to registrants' family members, loved ones, friends and roommates.  One valid form of proof of residence under the registry law is an affidavit from a third party attesting to the location of the residence.  Individuals who furnish such an affidavit must write to the law enforcement agency with whom the registrant is registered any time the registrant is absent from the residence for a period of 30 days or more, or

if the registrant vacates the residence with the intent to establish a new residence at another location. The failure of such a third party to meet this requirement constitutes a misdemeanor punishable by a $500.00 fine and/or a prison sentence of up to six months.

### vii.    Duration of Registration

104.    Anyone who is required to register as a sex offender in Louisiana must do so for a period of 15 years from the date of the initial registration.

105.    A second registerable offense requires lifetime registration. This is so regardless of whether the prior offense required registration at the time of commission or conviction. Thus, once registered, another Crime Against Nature by Solicitation conviction results in lifetime registration as a sex offender.

106.    If a registrant is incarcerated for any felony subsequent to registration, the period of registration and notification begins anew on the day the registrant is released from incarceration, with no credit for the period of time in which the registrant complied with registration and notification requirements prior to his or her incarceration.

### viii.    Lack of Pardon and Waiver Options

107.    There is no allowance for leniency in the application of the requirements of the registry law. As such, there is no process by which individualized assessments are made about the appropriateness, necessity or wisdom of the registry requirements in individual cases.

108.    The requirement to register even continues to apply to a person who is pardoned of the underlying offense.

### C.    Administration and Dissemination of the SOCPR Data

109.    The law enforcement agency that receives the registrant's information immediately forwards that information to the Louisiana Bureau of Criminal Identification and

27

Information (BCII).  The BCII is a bureau within the Support Department of the Louisiana State Police, an agency of the Department of Public Safety and Corrections (DPSC).

110.    Registrants must renew their registration with the sheriff, who forwards the renewed information to the police department and to the BCII.

111.    In New Orleans, the law enforcement agency responsible for gathering and forwarding the registration information is the New Orleans Police Department (NOPD).

112.    BCII maintains and updates the SOCPR.  Upon receiving the information about any person required to register from law enforcement, the BCII immediately enters the information in the SOCPR.

113.    BCII also provides for public access to the information contained in the SOCPR, including internet-based access.  The SOCPR website is available at http://www.lsp.org/socpr/ default.html.  The website features field-search capabilities which allow members of the public to search for registered sex offenders by name, parish, address, city, zip code, and the registrant's home address, work address, or school address, internet names, phone numbers, or email addresses.  Users may also register to receive an email alert whenever an offender registers within one mile of any address or zip code submitted by the user.

114.    BCII provides the sheriff and the chief of police of the parish in which the registrant lives, works, and/or goes to school with the registrant's information.  If the registrant works or attends a postsecondary school, the information also goes to campus law enforcement.

115.    BCII also gives social networking web sites access to the entire database of registrants.

116.    BCII also transmits the conviction data and fingerprints of the registrant to the Federal Bureau of Investigation (FBI).  As a result, information about registrants is also available

through the United States Department of Justice's National Sex Offender Public Website. *See* http://www.nsopw.gov/Core/About.Aspx.

### D. Enforcement of the SOCPR

117.    When an individual is convicted of an offense that requires registration, the court is required to provide that individual with written notification of the registration and notification requirements under the registry law. A true and correct copy of the standardized Notification to Sex Offender form is attached hereto as Exhibit C.

118.    Upon release from incarceration or placement on parole, supervised release, or probation, one of several agencies must meet with individuals who will be registered as a sex offender, inform them of their duties under the registry law, and gather fingerprints, data, and a photograph. Under most circumstances, the DPSC has responsibility for this function.

119.    The information is transferred to the BCII for immediate inclusion in the registry.

120.    In New Orleans, the Sex Crimes Unit of the New Orleans Police Department monitors whether registrants, including Plaintiffs, are compliant with the registry requirements. Specifically, Detective Joseph Goines III and Detective Raymond Hughes are responsible for monitoring compliance with, and enforcing the provisions in the registry law. NOPD officers routinely perform spot-checks of the residences of registrants to ensure that the registrant still resides there. Plaintiffs who reside in Orleans Parish must also regularly meet with them at their offices. When a registrant is found to have moved without informing law enforcement, or is found to somehow be in non-compliance with the myriad requirements described *supra*, the detectives report the non-compliance and obtain a warrant for registrant's arrest.

### III.    The SOCPR in Orleans Parish

121.    As of February 2011, there were 812 living people[5] on the SOCPR who reside in Orleans Parish.

122.    Of those 812 individuals, 292 were placed on the registry due solely to a conviction for Crime Against Nature.  Thus, 36 percent of all registered sex offenders in Orleans Parish were convicted of Crime Against Nature, rather than an offense involving force, coercion, a weapon, lack of consent, or a minor victim.

123.    Of the 292 individuals in Orleans Parish who appear on the SOCPR because of a conviction for Crime Against Nature, 219 are women.  This represents 75 percent of all individuals registered because of a Crime Against Nature conviction.

124.    There are a total of 226 women on the SOCPR in Orleans Parish.  Thus, 97 percent of women who appear on the SOCPR do so as a result of a conviction for Crime Against Nature.

125.    A total of 230, or 79 percent, of individuals who appear on the SOCPR as a result of a Crime Against Nature conviction are African American.

### IV.    Facts Specific to Plaintiffs

126.    All Plaintiffs are registered as sex offenders on the SOCPR as a result of a conviction of Crime Against Nature by Solicitation.  No Plaintiff has been convicted of any other crime that requires registration as a sex offender.

127.    All Plaintiffs are subject to the myriad requirements of the registry law described in Section II(B), *supra*.  For example, all Plaintiffs' names and addresses appear on the SOCPR website, along with a photograph of their face, and a description of their age, height, weight,

---

[5]        A number of people who are deceased continue to appear on the SOCPR.  The statistics in Section III take into account only individuals who are alive and appear on the SOCPR.

race, eye and hair color, list of distinguishing characteristics (including descriptions of scars and tattoos), and their offenses.  All Plaintiffs' identification cards and driver's licenses prominently feature the words "SEX OFFENDER" in capitalized, bright orange letters.

128.    All Plaintiffs were convicted of Crime Against Nature by Solicitation based on allegations that they agreed to engage in oral sex for compensation.

129.    The prostitution statute encompasses all the criminal conduct alleged to have been committed by Plaintiffs.  However, because Plaintiffs were charged with, and convicted of, Crime Against Nature by Solicitation rather than prostitution, they are required to register as sex offenders.

130.    No Plaintiff has ever been arrested for, or convicted of, any sexual offense that involves a child, use of force, coercion, or a weapon, or lack of consent.

**A.    Audrey Doe**

131.    Audrey Doe is an African American grandmother in her mid-50s who has lived in Louisiana her whole life.  She currently resides in New Orleans.

132.    A decade ago, while she was struggling with poverty, substance abuse and mental health issues, Audrey Doe was convicted of Crime Against Nature by Solicitation on at least two occasions.  As a result, she is required to register as a sex offender and comply with the onerous registration requirements outlined in Section II(B), *supra*, for the rest of her life.

133.    Since her release from prison, Audrey Doe has spent hundreds of dollars to comply with the registry law's fees and notification requirements.  These expenses have included the cost of printing and mailing notification postcards to neighbors and the fee for placing an announcement in the newspaper disclosing her registration as a sex offender.

134.     Audrey Doe lives in fear that people in her neighborhood will physically harm her whenever she is required to send out community notifications.  In 2008, after circulating such notifications, rocks were thrown through her windows.  On another occasion, a group of youths threw rocks at Audrey Doe and yelled at her to "suck [their] dicks" as she attempted to walk to a store.  She has been forced to explain to neighbors why she is registered as a sex offender, which she found to be deeply distressing.

135.     Audrey Doe currently lives at a non-profit residential agency in New Orleans and has been subjected to compliance checks by uniformed law enforcement officers at this residence.  As a result, all the other women on Audrey Doe's floor have now learned that she is registered as a sex offender, causing her considerable pain.

136.     Audrey Doe fears that her designation as a sex offender, reflected on her state identification cards, will render her unable to secure employment and housing in the future.

137.     Audrey Doe has never engaged in any sexual offense involving a child, coercion, force, a weapon, or lack of consent, and does not understand why she is required to register as a sex offender.  Audrey Doe experiences harm in the form of embarrassment, humiliation, shame, and fear whenever she is required to present her identification, and as a result of the stigma associated with her status as a registered sex offender.

**B.     Becca Doe**

138.     Becca Doe is a mother of four in her mid-50s who resides in New Orleans, Louisiana.

139.     Becca Doe has been convicted of Crime Against Nature by Solicitation on three occasions: in the early 1990s, in the late 1990s, and in the early 2000s.  After her first conviction,

Becca Doe was sentenced to 40 months imprisonment with hard labor and required to register as a sex offender for a period of 15 years.

140.    Becca Doe has spent hundreds of dollars to remain compliant with the registry law's fees and notification requirements.  These expenses have included the cost of creating and mailing out notification postcards to neighbors, and placing an announcement in the newspaper disclosing her registration as a sex offender.

141.    Becca Doe believes that her presence on the publicly-available sex offender registry places her in danger.  Indeed, in one incident, a stranger came to her residence looking for sex, indicating that he had seen her photograph "on the internet."

142.    Becca Doe was forced to inform her daughters' school principal that she was a registered sex offender.

143.    Every time Becca Doe has applied for a job that requires her to show her driver's license or identification card, both of which identify her as a sex offender, she has been refused that job.

144.    Becca Doe experiences embarrassment, humiliation, shame, and fear whenever she is required to present her identification, and as a result of the stigma associated with her status as a registered sex offender.

**C.    Carla Doe**

145.    Carla Doe is an African American woman in her mid-40s who lives in Jefferson Parish.

146.    Carla Doe was convicted of Crime Against Nature by Solicitation on numerous occasions between the late 1980s and the mid-2000s.  She must register as sex offender for the rest of her life as a result of these convictions.

147.    In addition to the registration fees, Carla Doe has spent hundreds of dollars to remain compliant with the registry law's notification requirements.  Recently, she was required to pay hundreds of dollars to comply with community notification requirements after she moved to escape a physically abusive common law husband.

148.    Carla Doe has been refused employment after presenting her identification that states that she is a registered sex offender.

149.    Carla Doe experiences harm in the form of embarrassment, humiliation, shame, and fear whenever she is required to present her identification, and as a result of the stigma associated with her status as a registered sex offender.

### D.    Diane Doe

150.    Diane Doe is an African American woman in her late 40s who is the mother of five adult children. She has lived in New Orleans for most of her life, and currently resides with her husband.

151.    Diane Doe was convicted of Crime Against Nature by Solicitation on at least three occasions in the late 1990s.  She must register as a sex offender for the rest of her life as a result of these convictions.

152.    Diane Doe has been told by non-profit housing agencies that she is ineligible for housing because of her registration as sex offender.  Diane Doe fears her husband, and he has threatened to evict her from their house.  Diane Doe feels trapped and worries that she will be unable to secure housing if she leaves her husband.

153.    Diane Doe's registration as a sex offender causes her deep shame and has interfered with her ability to develop and maintain relationships with her family.  Her husband is embarrassed about her status, and she believes her children are as well.  Her 77 year-old

grandmother and four of her aunts are all unaware that she is registered as a sex offender. During evacuation from New Orleans prior to Hurricane Gustav, Diane Doe evacuated separately from her children and these family members because she knew that she would have to show her identification that states that she is a sex offender at emergency shelters.

154.    Diane Doe feels forced to explain that she did not molest anyone when she presents her identification at banks, the doctor's office, and other businesses.

155.    Diane Doe experiences harm in the form of embarrassment, humiliation, shame, intimidation and fear whenever she is required to present her identification, and as a result of the stigma associated with her status as a registered sex offender.

        **E.    Eve Doe**

156.    Eve Doe is a 40-year-old transgender woman who resides in a mid-sized city in Louisiana.  She has resided in Louisiana for most of her life.

157.    Eve Doe was convicted of Crime Against Nature by Solicitation on three occasions during the early and late 1990s, and must register as a sex offender for the rest of her life as a result.  Eve Doe served 40 months in prison as a result of one of those convictions dating from the late 1990s.

158.    In addition to the registration fees, Eve Doe has spent hundreds of dollars to remain compliant with the registry law's notification requirements.  Eve Doe was first forced to circulate community notifications disclosing her registration as a sex offender from her grandmother's home.  This caused both Eve Doe and her family deep embarrassment and humiliation.

159.    In 2007, Eve Doe terminated her employment at a chain restaurant where she had been a successful and valued employee after her employers discovered that she was a registered sex offender and reneged on a previously-discussed promotion.

160.    Eve Doe has struggled with drug addiction and recently relapsed after the tragic loss of her partner.  She attempted to obtain treatment at various non-profit organizations providing substance abuse services, but three organizations specifically denied her treatment because of her status as a registered sex offender.  She attempted to get temporary housing at a non-profit agency but was refused placement for the same reason.

161.    Eve Doe experiences harm in the form of embarrassment, humiliation, shame, and fear whenever she is required to present her identification, and as a result of the stigma associated with her status as a registered sex offender.  Eve Doe reports that she feels that people she encounters assume she has molested a child or sexually assaulted someone when they learn that she is a registered sex offender.

**F.    Fiona Doe**

162.    Fiona Doe is an African American transgender woman in her 30s who resides in St. Tammany Parish.

163.    Fiona Doe was twice convicted of Crime Against Nature by Solicitation in the early 2000s.  She must register as a sex offender for the rest of her life as a result of these convictions.

164.    In addition to the registration fees, Fiona Doe has spent hundreds of dollars to remain compliant with the registry law's notification requirements.  These notification requirements have placed her in fear that individuals will come to her house to do her harm.

36

165.    Fiona Doe has been refused employment after presenting her identification that states that she is a registered sex offender.

166.    In early December 2010, Fiona Doe moved to St. Tammany Parish.  She contacted the New Orleans Police Department to inform them she was moving, and presented herself for a scheduled meeting with the NOPD to fill out change of address paperwork.  At that meeting, she was arrested for failure to register and was subsequently held in a men's facility at Orleans Parish Prison for four days, placing her at significant risk of sexual and physical assault. The charges against her were subsequently dropped.

167.    Fiona Doe is depressed by the prospect of having to register as a sex offender for the rest of her life.  She feels that, despite having been convicted solely of solicitation of oral sex for compensation, community members perceive her to be a rapist or a child molester.  Fiona Doe experiences harm in the form of embarrassment, humiliation, shame, and fear whenever she is required to present her identification, and as a result of the stigma associated with her status as a registered sex offender.

**G.    Georgia Doe**

168.    Georgia Doe is an African American woman in her early 40s who resides in a mid-sized city in Louisiana.  She is the mother of two, and grandmother of six.

169.    In the late 1990s, Georgia Doe was convicted of Crime Against Nature by Solicitation and was sentenced to 30 months of incarceration.  As a result of this single conviction, she is required to register as a sex offender for 15 years.

170.    In addition to the registration fees, Georgia Doe has spent hundreds of dollars to remain compliant with the registry law's notification requirements.

171.    Recently, an independent publication in the area where Georgia Doe lives published photographs of all individuals registered as sex offenders in the area. Georgia Doe's photograph appeared, along with a listing of the crime for which she appears on the registry.

172.    Georgia Doe experiences shame, humiliation, and embarrassment whenever she is required to show her identification. Her discomfort was particularly acute when she was required to produce it prior to visiting one of her grandchildren at the hospital.

173.    Because she is often with her grandchildren, Georgia Doe is concerned that members of the community will call the police out of concern that she is a pedophile who will do them harm.

### H.    Hiroke Doe

174.    Hiroke Doe is an African American transgender woman in her early 30s who has lived in New Orleans for her whole life.

175.    Hiroke Doe was convicted of Crime Against Nature by Solicitation in the late 1990s. She must register as a sex offender for 15 years as a result.

176.    Hiroke Doe was placed in fear of losing her employment and of retaliation by fellow employees when one of her co-workers discovered and revealed that she is a registered sex offender.

177.    Hiroke Doe experiences extreme embarrassment, humiliation, shame, and fear whenever she is required to present her identification, and as a result of the stigma associated with her status as a registered sex offender. Indeed, she avoids situations in which she has to use her identification card to avoid the humiliation of having to expose herself as a registered sex offender.

### I.    Ian Doe

178.    Ian Doe is a man in his 30s who resides in New Orleans.

179.    Ian Doe was convicted of Crime Against Nature by Solicitation once in the early 2000s, and served four years in prison on that single charge.  He must register as a sex offender for 15 years as a result of this conviction.

180.    In addition to the registration fees, Ian Doe has spent hundreds of dollars to remain compliant with the registry law's notification requirements.

181.    Ian Doe has been refused employment after presenting his identification that states that he is a registered sex offender.

182.    Ian Doe has struggled to find housing, and recently stayed at a homeless shelter in New Orleans for two nights.  However, when the staff discovered that Ian Doe was a registered sex offender, he was told he had to leave.

183.    Ian Doe experiences harm in the form of embarrassment, humiliation, shame, and fear whenever he is required to present his identification, and as a result of the stigma associated with his status as a registered sex offender.

### FIRST CAUSE OF ACTION
### (Fourteenth Amendment: Equal Protection)

184.    Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

185.    Plaintiffs bring this claim against all Defendants in their official capacities.

186.    Defendants' maintenance, administration, and enforcement of the registry law with respect to Plaintiffs, and other individuals convicted of Crime Against Nature by Solicitation, has no rational relationship to a legitimate governmental interest, but rather is motivated by animus towards non-procreative sex acts traditionally associated with

homosexuality, in violation of Plaintiffs' rights to equal protection of the law under the

Fourteenth Amendment to the United States Constitution.

187.    All Defendants' actions are under color of law and their authority as state officers.

188.    Plaintiffs have no adequate remedy at law or other effective means of enforcing

their Fourteenth Amendment right to equal protection other than by seeking declaratory and

injunctive relief from the Court.

189.    As a result of Defendants' unlawful conduct, all Plaintiffs are suffering harm,

including embarrassment, humiliation, shame, fear, and stigma.

**SECOND CAUSE OF ACTION**
**(Fifth and Fourteenth Amendments: Due Process: Right to Privacy)**

190.    Plaintiffs incorporate by reference each and every allegation contained in the

preceding paragraphs as if set forth fully herein.

191.    Plaintiffs bring this claim against all Defendants in their official capacities.

192.    Defendants' maintenance, administration, and enforcement of the registry law

with respect to Plaintiffs, and other individuals convicted of Crime Against Nature by

Solicitation, forces Plaintiffs and others to disclose their criminal convictions and status as

registered sex offenders on the internet, through community notifications, and on their

identification cards, without a legitimate government interest in disclosure.  Where Crime

Against Nature by Solicitation involves no minor victim, element of force, coercion, use of a

weapon, or lack of consent, Defendants are thus violating Plaintiffs' right to avoid disclosure of

highly personal matters, in violation of the Fifth and Fourteenth Amendments to the United

States Constitution.

193.    All Defendants' actions are under color of law and their authority as state officers.

194.     Plaintiffs have no adequate remedy at law or other effective means of enforcing their Fifth and Fourteenth Amendment rights to due process other than by seeking declaratory and injunctive relief from the Court.

195.     As a result of Defendants' unlawful conduct, all Plaintiffs are suffering harm, including embarrassment, humiliation, shame, fear, and stigma.

**THIRD CAUSE OF ACTION**
**(Fifth and Fourteenth Amendments: Due Process)**

196.     Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

197.     Plaintiffs bring this claim against all Defendants in their official capacities.

198.     Defendants' maintenance, administration, and enforcement  of the registry law with respect to Plaintiffs, and other individuals convicted of Crime Against Nature by Solicitation, imposes upon Plaintiffs and such others a state-conferred badge of infamy, that is injurious to reputation, and falsely implies that Plaintiffs and others have been convicted of a crime involving a minor victim, force, coercion, lack of consent, or use of a weapon, without due process of law, in violation of the Fifth and Fourteenth Amendments to the United States Constitution.

199.     All Defendants' actions are under color of law and their authority as state officers.

200.     Plaintiffs have no adequate remedy at law or other effective means of enforcing their Fifth and Fourteenth Amendment right to due process other than by seeking declaratory and injunctive relief from the Court.

201.     As a result of Defendants' unlawful conduct, all Plaintiffs are suffering psychological injury, emotional distress, financial hardship, embarrassment, humiliation, shame, and fear.

## FOURTH CAUSE OF ACTION
### (Eighth Amendment: Disproportionate and Cruel and Unusual Punishment)

202.     Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

203.     Plaintiffs bring this claim against all Defendants in their official capacities.

204.     Defendants' maintenance, administration, and enforcement of the registry law with respect to Plaintiffs, and other individuals convicted of Crime Against Nature by Solicitation, violates Plaintiffs' right to be free from grossly disproportionate punishment in relation to the punished conduct, namely Crimes Against Nature by Solicitation.  As applied to Plaintiffs and other individuals convicted of Crime Against Nature by Solicitation, the registry laws are cruel and unusual given reason, experience and societal developments eliminating anti-sodomy laws and laws criminalizing non-procreative sex.  Applying and enforcing the registry law to individuals convicted of Crimes Against Nature by Solicitation is punitive in effect and furthers no legitimate governmental interest.

205.     All Defendants' actions are under color of law and their authority as state officers.

206.     Plaintiffs have no adequate remedy at law or other effective means of enforcing their Eighth Amendment right to be free from cruel and unusual punishment through disproportionate punishment other than by seeking declaratory and injunctive relief from the Court.

207.     As a result of Defendants' unlawful conduct, all Plaintiffs are suffering psychological injury, emotional distress, financial hardship, embarrassment, humiliation, shame, and fear.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request the Court:

a.      Declare that La. Rev. Stat. § 15:542(A)(1)(a) violates the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution insofar as it requires individuals convicted of Crime Against Nature to register as sex offenders;

b.      Declare that Defendants' actions violate Plaintiffs' rights under the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution;

c.      Order Defendants to permanently remove Plaintiffs from the SOCPR;

d.      Order Defendants to expunge all State records indicating that Plaintiffs were ever registered on the SOCPR;

e.      Order Defendants to alert all agencies who were provided information about Plaintiffs' registration (including courts, police departments, sheriff's departments, and the Federal Bureau of Investigation) that this information is no longer valid;

f.      Order Defendants to cease and desist from placing any individuals convicted under the Crime Against Nature statute on the SOCPR;

g.      Award Plaintiffs attorney's fees and costs; and

h.      Order such other relief as this Court deems just and proper.

Dated: New York, New York
       February 15, 2011

Respectfully submitted,

/s/ William P. Quigley_____
William P. Quigley, La. State Bar #7769
Alexis Agathocleous, N.Y. State Bar #4227062
Sunita Patel, N.Y. State Bar #4441382
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012

Tel: (212) 614-6478
Fax: (212) 614-6499
Email: bquigley@ccrjustice.org; duprestars@yahoo.com

Andrea J. Ritchie, N.Y. State Bar # 4117727
995 President Street
Brooklyn, NY
Tel: (646) 831-1243
Email: andreajritchie@aol.com

Davida Finger, La. Bar #30889
LOYOLA UNIVERSITY NEW ORLEANS
COLLEGE OF LAW
Stuart H. Smith Law Clinic & Center for Social Justice
7214 St. Charles Ave, Box 902
New Orleans, LA 70118
Tel: (504) 861-5596
Fax: (504) 861-5440
Email: dfinger@loyno.edu