**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| AUDREY DOE, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>BOBBY JINDAL, et al.,<br><br>Defendants. | Civil Action No. 11-00388 (MLCF) (ALC) |

**PLAINTIFFS' MEMORANDUM IN**
**OPPOSITION TO STATE DEFENDANTS' MOTION TO**
**DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12**

# TABLE OF CONTENTS


| | Page |
|---|---|
| TABLE OF AUTHORITIES | iii |
| PRELIMINARY STATEMENT | 1 |
| ARGUMENT | 3 |
| STANDARD OF REVIEW | 3 |
| I. THE EX PARTE YOUNG EXCEPTION AFFORDS THIS COURT JURISDICTION OVER GOVERNOR JINDAL | 3 |
| II. PLAINTIFFS HAVE ADEQUATELY PLED A VIOLATION OF THE EQUAL PROTECTION CLAUSE | 5 |
| A. A Classification Exists Between Individuals Convicted of CANS and Those Convicted of Prostitution | 6 |
| B. The Challenged Portion of the Registry Law Does Not Advance a Legitimate Governmental Purpose | 7 |
| 1. The Classification Does Not Advance Public Safety | 8 |
| 2. The Classification Does Not Advance Defendants' Morality-Based Rationales | 8 |
| 3. Classification Based Solely On Moral Disapproval of Non-Procreative Sex Acts Associated with Homosexuality is Impermissable | 9 |
| III. PLAINTIFFS HAVE ADEQUATELY PLED A PRIVACY VIOLATION | 11 |
| A. Plaintiffs Have a Substantial and Recognized Interest in Avoiding Disclosure | 12 |
| B. Defendants Have No Legitimate Interest in Disclosing This Information | 14 |
| IV. PLAINTIFFS HAVE ADEQUATELY PLED A VIOLATION OF THEIR RIGHT TO PROCEDURAL DUE PROCESS | 14 |
| A. The Registry Law Imposes a Stigma on Plaintiffs | 15 |
| B. Plaintiffs Have Suffered an Infringement of Their Liberty Interests | 15 |
| C. Plaintiffs Are Entitled to a Hearing | 16 |

**Page**

V. PLAINTIFFS HAVE ADEQUATELY ALLEGED THAT REQUIRING THEM TO REGISTER AS SEX OFFENDERS IS CRUEL AND UNUSUAL PUNISHMENT .......... 18

A. Requiring Plaintiffs to Register as Sex Offenders Constitutes Punishment 19

1. The Legislature Acted with Punitive Intent .......... 19

2. The Registry Law Is Punitive in Purpose and Effect. .......... 20

B. Requiring Individuals Convicted of CANS to Register as Sex Offenders Is Disproportionate to Their Offense and Inconsistent with National Norms 22

1. Registration Is Inconsistent with National and Community Consensus .......... 22

2. The Court's Independent Analysis Should Suggest that Registration Is Inappropriate .......... 23

VI. THERE IS NO BASIS FOR REQUIRING DISCLOSURE OF PLAINTIFFS' IDENTITIES TO DEFENDANTS AT THIS STAGE OF THE LITIGATION ... 24

CONCLUSION .......... 24

# TABLE OF AUTHORITIES

**Page(s)**

## Rules and Statutes

La. Rev. Stat. § 14:82(A) .......... 1

La. Rev. Stat. § 14:82(A)(2) .......... 1, 6

La. Rev. Stat. § 14:89 .......... 1

La. Rev. Stat. § 14:89(A)(1) .......... 1

La. Rev. Stat. § 14:89(A)(2) .......... 1

La. Rev. Stat. § 14:89.2 .......... 1, 6, 9

La. Rev. Stat. § 15:540 .......... 15, 18, 20

La. Rev. Stat. § 15:540(A) .......... 1, 14

La. Rev. Stat. § 15:542.1 .......... 15

La. Rev. Stat. § 15:542(E) .......... 20

La. Rev. Stat. § 15:543.1 .......... 15

La. Rev. Stat. § 15:543.2 .......... 15

La. Rev. Stat. § 15:579 .......... 13

La. Rev. Stat. § 15:589 .......... 13

## Cases

ACLU of Miss., Inc. v. Mississippi,
911 F.2d 1066 (5th Cir. 1990) .......... 13

Ashcroft v. Iqbal,
129 S. Ct. 1937 (2009) .......... 3

Bd. of Regents of State Colls. v. Roth,
408 U.S. 564 (1972) .......... 16

Bell v. Wolfish,
441 U.S. 520 (1979) .......... 19, 21

Biddle v. Perovich,
274 U.S. 480 (1927) .......... 5

City of Cleburne v. Cleburne Living Ctr.,
473 U.S. 432 (1985) ........ 5, 8

City of Clinton v. Pilgrim's Pride Corp.,
632 F.3d 148 (5th Cir. 2010) ........ 3

Codd v. Velger,
429 U.S. 624 (1977) ........ 15

Conn. Dep't of Pub. Safety v. Doe,
538 U.S. 1 (2003) ........ 17-18

Danna v. Bd. of Aldermen for Abita Springs, La.,
Civ. A. No. 86-2282, 1987 WL 4864 (E.D. La. Apr. 15, 1987) ........ 16

Doe v. Pataki,
3 F. Supp. 2d 456, 468 (S.D.N.Y. 1998) ........ 16, 17

Doe v. Stegall,
653 F.2d 180 (5th Cir. 1981) ........ 24

E.B. v. Verniero,
119 F.3d 1077 (3d Cir. 1997) ........ 17

Eisenstadt v. Baird,
405 U.S. 438 (1972) ........ passim

Ellerbe v. Andrews,
623 So. 2d 41 (La. Ct. App. 1993) ........ 13

Ex Parte Young,
209 U.S. 123 (1908) ........ 2, 3-4

Fadjo v. Coon,
633 F.2d, 1172 (5th Cir. 1981) ........ 12

Fernandez-Montes v. Allied Pilots Ass'n,
987 F.2d 278 (5th Cir. 1993) ........ 3

Graham v. Florida,
130 S. Ct. 2011 (2010) ........ 22, 23

Griswold v. Connecticut,
381 U.S. 479 (1965) ........ 11

Hawaii v. Guidry,
96 P.3d 242 (Haw. 2004) ........ 18

K.P. v. LeBlanc,
627 F.3d 115 (5th Cir. 2010) .................................................................................... 5

Kansas v. Crane,
534 U.S. 407 (2002) .................................................................................... 19

Kansas v. Hendricks,
521 U.S. 346 (1997) .................................................................................... 19

Kennedy v. Louisiana,
554 U.S. 407 (2008) .................................................................................... 22, 23

Lawrence v. Texas,
539 U.S. 558 (2003) .................................................................................... 8, 9-10, 11

Marrero v. City of Hialeah,
625 F.2d 499 (5th Cir. 1980) .................................................................................... 16

Mathews v. Eldridge,
424 U.S. 319 (1976) .................................................................................... 17

Mathews v. Lucas,
427 U.S. 495 (1976) .................................................................................... 7

Meredith v. Nowak,
No. CIV A 06-2384, 2006 WL 3020097 (E.D. La. Oct. 19, 2006) .................................. 3

NASA v. Nelson,
131 S. Ct. 746 (2011) .................................................................................... 12

Nixon v. Adm'r of Gen. Servs.,
433 U.S. 425 (1977) .................................................................................... 12

Okpalobi v. Foster,
244 F.3d 405 (5th Cir. 2001) .................................................................................... 5

Paul v. Davis,
424 U.S. 693 (1976) .................................................................................... 12, 14

People v. Hofsheier,
34 Cal. 4th 1185 (Cal. 2006) .................................................................................... 7, 9

Phillips v. Vandygriff,
711 F.2d 1217 (5th Cir. 1983) .................................................................................... 16

Plante v. Gonzalez,
575 F.2d 1119 (5th Cir. 1978) .................................................................................... 12, 14

Reliable Consultants, Inc. v. Earle,
517 F.3d 738 (5th Cir. 2008) .................................................................................. 9

Roe v. Farwell,
999 F. Supp. 174 (D. Mass. 1998) ......................................................................... 16

Romer v. Evans,
517 U.S. 620 (1996) ................................................................................................ 7-8

Roper v. Simmons,
543 U.S. 551 (2005) ................................................................................................ 18

S. Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe,
599 F.2d 707 (5th Cir. 1979 ) .................................................................................. 24

San Jacinto Sav. & Loan v. Kakal,
928 F.2d 697 (5th Cir. 1991) .................................................................................. 14, 15-16

Smith v. Doe,
538 U.S. 84 (2003) .................................................................................................. 19-20, 21

Smith v. Sampson,
Civ. A. No. 08-14002, 2009 U.S. Dist. LEXIS 84662 (E.D. Mich., Aug. 6, 2009) .......... 4

State v. Dick,
951 So. 2d 124 (La. 2007) ....................................................................................... 4

State v. Moore,
847 So. 2d 53 (La. App. 3d Cir. May 14, 2003) ..................................................... 4

State v. Thomas,
891 So.2d 1233 (La. 2005) ...................................................................................... 1

State v. Triplett,
952 So. 2d 774 (La. App. 4th Cir. 2007) ................................................................ 4

Stefanoff v. Hays Cnty., Tex.,
154 F.3d 523, 525-26 (5th Cir. 1998) ..................................................................... 5

U.S. Dep't of Agric. v. Moreno,
413 U.S. 528 (1973) ................................................................................................ 7, 8

U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press,
489 U.S. 749 (1989) ................................................................................................ 13

United States v. Jimenez,
275 F. App'x 433 (5th Cir. 2008) ............................................................................ 15

Utah v. Briggs,
199 P.3d 935 (Utah 2008) ........ 18

Vacco v. Quill,
521 U.S. 793 (1997) ........ 7

Whalen v. Roe,
429 U.S. 589 (1977) ........ 11-12

Williams v. Morgan,
478 F.3d 1316 (11th Cir. 2007) ........ 9

Wisconsin. v. Constantineau,
400 U.S. 433 (1971) ........ 14

**Other Authorities**

Brief of Professors of History George Chauncey, Nancy F. Cotte, et al., as Amici Curiae Supporting Petitioners ........ 10

Chester James Antieau, THE ORIGINAL UNDERSTANDING OF THE FOURTEENTH AMENDMENT (1981) ........ 7

La. Const. art. 4 § 5 ........ 4

Nan Hunter, *Life After Hardwick*, 27 Harv. C.R.-C.L.L. Rev. 531 (1992) ........ 10

Toni M. Massaro, *Shame, Culture, and American Criminal Law*, 89 Mich. L. Rev. 1880 (1991) ........ 21

U.S. Const. amend. VIII ........ 18

U.S. Const. amend. XIV, § 1 ........ 5

## PRELIMINARY STATEMENT

Since 1982, Louisiana has prosecuted the solicitation of oral or anal sex in exchange for compensation under two different statutes: Prostitution, see La. Rev. Stat. ("R.S.") § 14:82(A), and Crime Against Nature by Solicitation ("CANS"), see id. § 14:89.2 (formerly id. § 14:89(A)(2)).[1] While Prostitution criminalizes, inter alia, the solicitation of vaginal, oral, or anal sex for compensation, CANS punishes only solicitation of oral or anal sex for compensation. Compare id. §14:82(A)(2) with id. § 14:89.2; see also Complaint ("Compl.") ¶¶ 48, 51-53. Accordingly, where an individual is alleged to have solicited oral or anal sex, police and prosecutors have unfettered discretion to choose which statute to apply – with drastically different consequences. Compl. ¶ 53.

Plaintiffs, who were all charged and convicted of CANS, id. ¶ 126, bring this action to challenge the injustice wrought by the disparate, discriminatory and disproportionate punishment imposed for a CANS conviction compared to punishment of the same conduct under the Prostitution statute. CANS singles out solicitation of historically disfavored sex acts for sex offender registration, longer prison sentences, and higher fines. In fact, CANS is the only offense that triggers sex offender registration without an element of force, coercion, a weapon, lack of consent, or a minor victim. Id. ¶¶ 66, 68, 70; La. R.S. § 15:540(A). Louisiana has no legitimate basis to distinguish between individuals convicted of CANS and those convicted of Prostitution. The harsher penalties for CANS simply express moral disapproval of certain types

---

1 In August 2010, a legislative amendment deleted La. R.S. § 14:89(A)(2) from the Louisiana Criminal Code and re-enacted the provision as La. R.S. § 14:89.2, describing the prohibited conduct in identical language. A different subsection of Crime Against Nature, La. R.S. § 14:89 (previously La. R.S. § 14:89(A)(1)), criminalizes consensual, private, non-commercial oral and anal sex between adults, as well as sexual acts with animals. The sections were deemed severable by State v. Thomas, 891 So. 2d 1233 (La. 2005). La. R.S. § 14:89 was severed from CANS in 2010 and is not at issue in this case.

of sex acts traditionally associated with homosexuality, between consenting adults, and brand those who engage in them with a badge of infamy. The resulting harms to plaintiffs' liberty, privacy, and due process interests are untenable in light of the impermissible purpose underlying this distinction.

In their motion to dismiss ("MTD"), defendants misapprehend and misconstrue the nature of plaintiffs' claims. According to defendants, "plaintiffs insinuate they have some fundamental right to engage in sex acts for compensation." MTD at 11 (emphasis in original). Plaintiffs have not here claimed a right to engage in commercial or public sexual conduct, nor do they challenge the entire CANS statute. Plaintiffs challenge only those provisions of the Crime Against Nature statute (of which CANS is only one part) and the Registration of Sex Offenders, Sexually Violent Predators, and Child Predators statute ("Registry Law") that punish CANS more severely than Prostitution. See Compl. ¶¶ 184-207. Defendants speciously raise the specter of bestiality – conduct nowhere mentioned in the CANS statute – to obfuscate plaintiffs' narrow and specific claims. MTD at 12. Nowhere in the Complaint or the CANS statute is there any reference to sex acts with animals, as no plaintiff has ever been accused, much less convicted, of such acts. Plaintiffs simply seek to be treated the same as identically-situated individuals, to be free from violations of their rights to privacy and due process, and to be free from cruel and unusual punishment.

Defendants challenge this Court's jurisdiction over Governor Jindal on the grounds that his connection to the enforcement of CANS and its registration requirements is too tenuous. Yet Governor Jindal appoints Executive Branch officials charged with enforcing the laws at issue, and he is the only individual who has the power to remedy the harm alleged by plaintiffs. These direct connections satisfy the Ex Parte Young exception to the doctrine of sovereign immunity.

Finally, defendants argue plaintiffs should not be allowed to proceed anonymously, only to concede that disclosure of their identities is not necessary to the adjudication of the instant motion. Accordingly, this issue would be properly addressed upon a motion under Rule 26 of the Federal Rules of Civil Procedure.

## ARGUMENT

## STANDARD OF REVIEW

On a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, courts must "accept well-pled factual allegations as true," City of Clinton v. Pilgrim's Pride Corp., 632 F.3d 148, 153 (5th Cir. 2010), and "resolve any ambiguities or doubts regarding the sufficiency of the claim in favor of [the] plaintiff." Fernandez-Montes v. Allied Pilots Ass'n, 987 F.2d 278, 284 n. 9 (5th Cir. 1993). Courts must deny a motion to dismiss "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). These same standards apply to a motion to dismiss brought under Rule 12(b)(1) of the Federal Rules of Civil Procedure. See, e.g., Meredith v. Nowak, No. CIV A 06-2384, 2006 WL 3020097, at *2 (E.D. La. Oct. 19, 2006) (Feldman, J.).

## I. THE EX PARTE YOUNG EXCEPTION AFFORDS THIS COURT JURISDICTION OVER GOVERNOR JINDAL

Governor Jindal is not entitled to sovereign immunity under the Eleventh Amendment and is therefore subject to the Court's jurisdiction in this matter. Pursuant to Ex Parte Young, 209 U.S. 123 (1908), the Eleventh Amendment does not bar lawsuits against state officials who are sued in their official capacities to enjoin the enforcement of an unconstitutional law. Id. at 159-60. To be subject to such a suit, the official must have "some connection with the

enforcement of the act" arising out of "the general law" or "specifically created by the act itself." Id. at 157.

Governor Jindal has the requisite connection to the enforcement of CANS and the Registry Law. Louisiana's constitution charges Governor Jindal with the duty to "see that the laws are faithfully executed." La. Const. art. 4 § 5; Compl. ¶ 23. Governor Jindal specifically executed the challenged CANS provision by delegating his power to enforce its sex offender registration requirements to state officials, including the Secretary of the Department of Public Safety and Corrections, which administers, implements, and maintains the State Sex Offender and Child Predator Registry. Compl. ¶ 23.

Further, Louisiana's constitution vests the power of commutation in the Executive Branch, and accordingly, Governor Jindal has exclusive authority over matters of clemency. La. Const. art. 4 § 5(e); Compl. ¶ 23; see also State v. Dick, 951 So. 2d 124, 131 (La. 2007); State v. Triplett, 952 So. 2d 774, 775 (La. App. 4th Cir. 2007). Governor Jindal also has the authority to grant a full pardon, and if an individual obtains a gubernatorial pardon, "the requirements of the [sex offender] statute no longer apply to him." State v. Moore, 847 So. 2d 53, 59-60 (La. App. 3d Cir. 2003). Thus, Governor Jindal is the only state official who can remove individuals convicted of CANS from the sex offender registry as appropriate and thus ameliorate the effects of the unconstitutional provisions at issue. The authority to offer relief from the effects of an unconstitutional act – and the failure to act on that authority – establishes the requisite connection between Governor Jindal and the enforcement of the challenged legislation. See, e.g., Smith v. Sampson, No. 08-14002, 2009 WL 3011577 (E.D. Mich., Sept. 17, 2009) (holding that Ex Parte Young applies to constitutional claims against state officials who have the power to commute criminal sentences).

Defendants' reliance on Okpalobi v. Foster, 244 F.3d 405 (5th Cir. 2001), to argue that Governor Jindal must have a "particular" duty to enforce the challenged statute, MTD at 7, is unavailing, as Okpalobi is not binding precedent. See 244 F.3d at 441 (Parker, J., dissenting) (because the "particular duty" standard garnered only a plurality of the court, it "is not binding authority to any"); see also K.P. v. LeBlanc, 627 F.3d 115, 124 (5th Cir. 2010) (same). In any event, the outcome of the Ex Parte Young analysis remains the same under the narrow and nonbinding Okpalobi standard because Governor Jindal has particularized duties with respect to the laws at issue. His failure to commute unconstitutional sentences or offer full pardons to individuals convicted of CANS demonstrates his willingness to enforce these laws. See Biddle v. Perovich, 274 U.S. 480, 486 (1927). Governor Jindal is thus a proper party to this action.

## II. PLAINTIFFS HAVE ADEQUATELY PLED A VIOLATION OF THE EQUAL PROTECTION CLAUSE

A state may not "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. Equal protection is "essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985); see also Stefanoff v. Hays Cnty., Tex., 154 F.3d 523, 525-26 (5th Cir. 1998). Plaintiffs have been punished more severely than identically-situated individuals: plaintiffs were forced to register as sex offenders and subjected to harsher sentences and fines simply because they were convicted of CANS, rather than Prostitution, for conduct chargeable under either statute. At a minimum, the Equal Protection Clause demands that any distinction among classes of persons be "rationally related to a legitimate state interest." Cleburne, 473 U.S. at 440; see also Eisenstadt v. Baird, 405 U.S. 438, 447 (1972) (noting that the classification "must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation") (internal quotations and citation

omitted). The classification drawn between individuals convicted of CANS and those convicted of Prostitution is not rationally related to achieving any legitimate state interest. Rather, it stems solely from moral disapproval of non-procreative sex acts historically associated with homosexuality. Thus, plaintiffs have stated a claim for violation of the Equal Protection Clause.

### A. A Classification Exists Between Individuals Convicted of CANS and Those Convicted of Prostitution

The Prostitution and CANS statutes both prohibit solicitation of oral or anal sex, but the same conduct is punished more severely under CANS. Compare La. R.S. § 14:82(A)(2) (outlawing solicitation of oral, anal, or vaginal sex for compensation) with id. § 14:89.2 (outlawing only solicitation of oral or anal sex for compensation); see also Compl. ¶¶ 48, 51-60. In addition to higher fines and longer periods of incarceration, CANS requires registration as a sex offender for fifteen years to life upon a second or subsequent conviction, Compl. ¶ 69, while no number of Prostitution convictions requires registration.[2] Id. ¶ 71. Thus, a classification exists between identically-situated individuals convicted under the two statutes.

Defendants' arguments to the contrary are unavailing. Defendants' argument that the law does not burden a "suspect class," MTD at 10, is irrelevant. The classification of identically-situated individuals requires justification, regardless of whether a suspect class is involved. See, e.g., Eisenstadt, 405 U.S. at 438 (finding an equal protection violation despite lack of a suspect class). Defendants further assert that punishing "one type of conduct more severely than another similar type of conduct does not, of itself, create an equal protection violation." MTD at 11

[2] Although the penalties for a first conviction under the two statutes were recently equalized, a second or subsequent CANS conviction continues to carry longer prison terms and heavier fines than a second or subsequent Prostitution conviction, as well as mandatory registration as a sex offender for periods of fifteen years to life. Compl. ¶¶ 58-60, 69. However, the legislative amendments were not retroactive, and thus individuals with a single CANS conviction prior to August 2010 (including several plaintiffs) must still register as sex offenders. Id. ¶ 58.

(citing Vacco v. Quill, 521 U.S. 793, 799 (1997)). However, Vacco is inapposite, as it involved similar, but readily and rationally distinguishable, types of conduct. Id. at 802 (distinguishing physician-assisted suicide from a patient's refusal of life-sustaining treatment). By contrast, the same conduct is punished more severely under CANS than Prostitution. Such differential treatment requires a legitimate justification.[3] See, e.g., Romer v. Evans, 517 U.S. 620, 633 (1996). Defendants have not and cannot provide any such legitimate justification for the distinction at issue here. Plaintiffs have thus plainly alleged an impermissible classification.

### B. The Challenged Portion of the Registry Law Does Not Advance a Legitimate Governmental Purpose

Where a law treats similarly-situated individuals differently, courts closely examine whether the distinction advances a legitimate governmental purpose. Mathews v. Lucas, 427 U.S. 495, 510 (1976) (noting that the rational basis test "is not a toothless one"). While the Supreme Court broadly defers to legislative choices in economic and regulatory contexts, rational basis review is applied with particular vigor where individual liberty and human dignity are at stake. See, e.g., Eisenstadt, 405 U.S. at 446-55 (overturning ban on distribution of contraceptives to unmarried people); U.S. Dep't of Agric. v. Moreno, 413 U.S. 528, 533-38 (1973) (overturning ban on food stamps for households with unmarried persons). A rigorous application of rational basis review is particularly appropriate where, as here, a distinction is drawn to disadvantage a politically unpopular group or solely to express moral disapproval. See, e.g., Romer, 517 U.S. at 634 (citation omitted) (emphasis in original) (noting that a "bare . . . desire to harm a politically unpopular group cannot constitute a legitimate governmental

---

[3] Indeed, the Equal Protection Clause was adopted in part to eliminate statutes that punished identical crimes committed against African Americans and whites differently. See People v. Hofsheier, 37 Cal. 4th 1185, 1207 (Cal. 2006) (citing Chester James Antieau, THE ORIGINAL UNDERSTANDING OF THE FOURTEENTH AMENDMENT 21-23 (1981)).

interest"); Lawrence v. Texas, 539 U.S. 558, 582 (2003) (O'Connor, J., concurring) ("[W]e have never held that moral disapproval, without any other asserted state interest, is a sufficient rationale under the Equal Protection Clause to justify a law that discriminates among groups of persons"). Defendants posit two government interests to justify harsher punishment for CANS: public safety and morality. The classification does not advance public safety, leaving moral disapproval as the sole justification, which alone cannot suffice.

**1. The Classification Does Not Advance Public Safety**

Defendants argue that the Registry Law allows the public to track sex offenders, thus serving a public safety function. MTD at 14. But the Legislature's decision that a Prostitution conviction for identical conduct does not warrant sex offender registration belies such a justification, as "[i]n each case the evil, as perceived by the State, would be identical, and the underinclusion would be invidious." See Eisenstadt, 405 U.S. at 454. Furthermore, like Prostitution, CANS does not involve an element of force, coercion, use of a weapon, lack of consent, or a minor victim. Compl. ¶¶ 68, 70. In fact, CANS is the only offense mandating registration that does not include any of these elements.[4] Thus, any public safety rationale for imposition of registration requirements for offenses including these elements is inapplicable.

**2. The Classification Does Not Advance Defendants' Morality-Based Rationales**

As an initial matter, the purported morality-based interests presented by defendants are not advanced by the classification. See Moreno, 413 U.S. at 534 (classification failed rational basis review because it was "irrelevant" to the law's purposes); City of Cleburne, 473 U.S. at 450 (classification failed rational basis review because it rested on an "irrational prejudice").

[4] Unlike nearly every other offense requiring registration, CANS also does not involve commission of any act – just agreement to do so. Compl. ¶ 72. The only other offenses requiring registration without a physical act involve minor victims. Id.

Defendants suggest that the distinction between CANS and Prostitution is "logical" because CANS applies to "depraved acts" not encompassed by Prostitution – namely "sex with an animal." MTD at 12-13. This argument is contradicted by the text of the statute: "Crime against nature by solicitation is the solicitation by a human being of another with the intent to engage in any unnatural carnal copulation for compensation." La. R.S. § 14:89.2 (emphasis added). Defendants' effort to raise the specter of bestiality is nothing more than a sensationalistic distraction from the lack of any justification for the challenged distinction.

Next, defendants argue that the state may regulate public commercial acts on grounds of morality. MTD at 14 (citing Williams v. Morgan, 478 F.3d 1316 (11th Cir. 2007) (upholding ban on the sale of sexual devices)); but see Reliable Consultants, Inc. v. Earle, 517 F.3d 738 (5th Cir. 2008). Plaintiffs take no issue with this proposition. Nevertheless, Louisiana cannot arbitrarily create classifications among those it punishes for the sale of sex based only on moral disapproval of the type of sex involved. See, e.g., People v. Hofsheier, 37 Cal. 4th 1185, 1207 (Cal. 2006) (striking down a law requiring sex offender registration of persons convicted of voluntary oral copulation with a minor of the age of sixteen or seventeen, but not of persons convicted of voluntary sexual intercourse with a minor of the same age).

### 3. A Classification Based Solely on Moral Disapproval of Non-Procreative Sex Acts Associated with Homosexuality Is Impermissible

Evolving Supreme Court jurisprudence suggests that moral disapproval of non-procreative sex acts associated with homosexuality cannot justify the classification at issue here. The Crime Against Nature statute is plainly based in such moral disapproval. The statute was adopted in 1805, and for more than 200 years, it criminalized oral and anal sex on the grounds that, as non-procreative acts, they were contrary to the laws of nature. Compl. ¶¶ 32, 33, 38, 39; see also Lawrence, 539 U.S. at 568 ("[E]arly American sodomy laws . . . sought to prohibit non-

procreative sexual activity"). Judicial decisions interpreting Crime Against Nature further demonstrate this purpose. In 1882, the Louisiana Supreme Court stated that the statute outlawed "that horrible crime not to be named," Compl. ¶ 37; in 1914, it referred to oral sex, outlawed under the provision, as a form of "perversion," id. ¶ 41; and in 1964, it described the proscribed conduct as "loathsome and disgusting." Id. ¶ 44. In the last third of the 20th century, the purpose of sodomy laws was moral condemnation of homosexuality. Lawrence, 539 U.S. at 570; Compl. ¶ 43. Sodomy laws adopted at this time "reflect [an] historically unprecedented concern to classify and penalize homosexuals as a subordinate class of citizens," Brief of Professors of History George Chauncey, Nancy F. Cotte, et al., as Amici Curiae Supporting Petitioners, at *3, Lawrence v. Texas, 539 U.S. 558 (2003), such that sodomy and homosexuality became synonymous, see Nan Hunter, Life After Hardwick, 27 Harv. C.R.-C.L.L. Rev. 531, 542 (1992) ("New social understandings have converted sodomy into a code word for homosexuality, regardless of the statutory definition"); see also Lawrence, 539 U.S. at 578 (describing sodomy as "sexual practices common to a homosexual lifestyle").

CANS was enacted against this historical backdrop in 1982 and imposed much harsher penalties for solicitation of oral or anal sex than the already-existing Prostitution statute. Compl. ¶ 48. When Louisiana adopted its sex offender registration law in 1992, Crime Against Nature, including CANS, was among the offenses requiring registration. Id. ¶ 69. A Prostitution conviction, by contrast, has never required sex offender registration, clearly indicating that the Louisiana legislature was not concerned with requiring registration upon conviction of solicitation of sex generally. Id. ¶¶ 32, 71, 73. The only difference between the statutes is that, while the CANS statute is specifically rooted in a history of moral disapproval of non-procreative sex acts associated with homosexuality, the Prostitution statute is not.

Supreme Court jurisprudence has demonstrated that moral disapproval cannot justify the classification at issue here. See Griswold v. Connecticut, 381 U.S. 479, 485 (1965) (invalidating a statute prohibiting married persons from using contraception); Eisenstadt, 405 U.S. at 443 (rejecting deterrence of premarital, non-procreative sex as a justification for differential treatment of married and unmarried individuals). In Lawrence, the Supreme Court, invoking Griswold and Eisenstadt, held that the state may not discriminatorily punish adult, consensual "sexual practices common to a homosexual lifestyle" based simply on moral disapproval, just as it may not punish non-procreative sex acts based on morality.[5] Id. at 577-78; see also id. at 582 (O'Connor, J., concurring) ("[M]oral disapproval of [homosexuals], like a bare desire to harm [this] group, is an interest that is insufficient to satisfy rational basis review under the Equal Protection Clause." (citations omitted)).

Plaintiffs have plausibly alleged that they are subject to a classification based solely on moral animus toward non-procreative sex acts. Moral disapproval of such acts, standing alone, is not a legitimate governmental purpose, nor is it rationally related to the classification here. Thus, plaintiffs' equal protection claim must stand.

## III. PLAINTIFFS HAVE ADEQUATELY PLED A PRIVACY VIOLATION

A CANS conviction forces plaintiffs to disclose their identities, addresses, photographs, criminal convictions and status as registered sex offenders to the public for no legitimate reason, in violation of their right to avoid unwarranted disclosure of private information. See Whalen v.

---

[5] Tellingly, while Lawrence was decided on due process grounds, the Court took note of the relevance of the Equal Protection Clause, explaining that the petitioners in Lawrence made a "tenable" equal protection claim, and insisting that "[e]quality of treatment and the due process right . . . are linked in important respects, and a decision on the latter point advances both interests." 539 U.S. at 575. Under either analysis, the "fact that the governing majority in a State has traditionally viewed a particular practice as immoral is not a sufficient reason for upholding a law prohibiting the practice," id. at 577-78, or justifying a distinction between otherwise identical criminal conduct.

Roe, 429 U.S. 589 (1977); see also Compl. ¶ 192. Defendants misconstrue this cause of action, erroneously stating that plaintiffs claim "a constitutionally protected right to privacy when they engage in sexual acts in exchange for money." MTD at 15. In fact, it is the public notification requirements that violate plaintiffs' right to privacy. Compl. ¶ 192.

The Supreme Court has recognized two types of constitutionally-protected privacy interests: "the interest in independence in making certain kinds of important decisions," Whalen, 429 U.S. at 599-600, which extends to "matters relating to marriage, procreation, contraception, family relationships, and child rearing and education," Paul v. Davis, 424 U.S. 693, 713 (1976), and "the individual interest in avoiding disclosure of personal matters [by the government]." Whalen, 429 U.S. at 599; see also NASA v. Nelson, 131 S. Ct. 746 (2011); Fadjo v. Coon, 633 F.2d 1172, 1176 (5th Cir. 1981) (noting that in Whalen and Nixon v. Adm'r of Gen. Servs., 433 U.S. 425, 458 (1977), "the privacy interest in confidentiality was found to extend beyond the [areas] noted in Paul"). While the government has a need to collect private data, it has a concomitant duty "to avoid [its] unwarranted disclosure." Whalen, 429 U.S. at 605.

In the Fifth Circuit, claims arising from the disclosure of personal information are subject to a balancing test that weighs the government's interest in disclosure against the individual's interest in avoiding such disclosure. See, e.g., Plante v. Gonzalez, 575 F.2d 1119, 1132, 1134 (5th Cir. 1978) (noting that "scrutiny is necessary," and that "something more than mere rationality must be demonstrated" to justify disclosure); see also Fadjo, 633 F.2d at 1176-77 (overruling dismissal of plaintiff's privacy claim and directing the court to apply a balancing test on remand).

### A. Plaintiffs Have a Substantial and Recognized Interest in Avoiding Disclosure

Imposition of a mandatory sex offender registration requirement upon conviction of CANS subjects plaintiffs to significant and highly embarrassing disclosure of personal

information, including dissemination of their names, addresses, photographs, and convictions to their neighbors, landlords, employers, area schools, and community institutions. Compl. ¶¶ 78-82, 113. Plaintiffs must also disclose their status as registered sex offenders everywhere they are required to present identification, including banks, airports, and establishments serving alcohol, because their state-issued driver's licenses, and mandatory identification cards, feature the words "SEX OFFENDER" in orange capitalized letters. Id. ¶¶ 87-88.

An interest in avoiding disclosure of the information contained in a rap sheet (including name, date of birth, physical characteristics, and history of arrests, charges, convictions, and incarcerations) to the press and the public has long been recognized. See U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 752 (1989) (recognizing a substantial privacy interest in such information, even though it was previously publicly available).[6] Essentially identical information about plaintiffs has been disclosed here. However, the intrusion plaintiffs face is greater than in Reporters Committee, where mere access to information was at issue, because they must affirmatively disseminate information to the public. Compl. ¶¶ 79, 87. Where, as here, the information at issue concerns sexual matters and the inference of homosexuality, plaintiffs "undeniably have an interest in restricting disclosure." ACLU of Miss., Inc. v. Mississippi, 911 F.2d 1066, 1070 (5th Cir. 1990). Thus, plaintiffs have adequately alleged a substantial privacy interest.

[6] The Louisiana legislature has also recognized that one's criminal history implicates significant privacy interests, enacting a series of provisions limiting the disclosure of such information. See, e.g., La. R.S. § 15:579; La. R.S. § 15:589 (describing Bureau of Criminal Identification and Information's duty to maintain the privacy and security of criminal history); see also Ellerbe v. Andrews, 623 So. 2d 41, 44 (La. Ct. App. 1993) (holding that "the privacy interest of the individual to his criminal history summary . . . significantly outweighs the public's right of access to this information").

### B. Defendants Have No Legitimate Interest in Disclosing This Information

Plaintiffs' privacy interest must be weighed against the government's interest in disclosure.[7] Plante, 575 F.2d at 1132. Mere rationality of the government's articulated interest will not justify disclosure. Id. at 1134. Plaintiffs have plausibly alleged that there is no identifiable or justifiable governmental interest in disclosure of this information.[8] See Point II(B), supra. Thus, plaintiffs have adequately pled a substantive Due Process Clause claim.

## IV. PLAINTIFFS HAVE ADEQUATELY PLED A VIOLATION OF THEIR RIGHT TO PROCEDURAL DUE PROCESS

In the alternative, plaintiffs have adequately pled a violation of their right to procedural due process. An opportunity to be heard is "essential" whenever "a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him." Wisconsin v. Constantineau, 400 U.S. 433, 437 (1971). Reputational injury is actionable when accompanied by the alteration of "a right or status previously [held] by state law." Paul, 424 U.S. at 711. The resulting "stigma-plus-infringement" doctrine requires a claimant to allege a stigma plus an infringement of some other interest. San Jacinto Sav. & Loan v. Kakal, 928 F.2d 697, 701 (5th Cir. 1991). Contrary to defendants' contention that plaintiffs rely "solely upon an injury to their reputation," MTD at 17, plaintiffs have properly alleged that they are subject to stigma as a result of a false government communication, plus a related deprivation of their liberty interests in privacy and employment. See Point III, supra; Section B infra.

---

[7] Indeed, the Registry Law itself reflects this notion: the release of information to the public "will further the governmental interests of public safety . . . so long as the information released is rationally related to the furtherance of those goals." La. R.S. § 15.540(A).

[8] Defendants have not engaged in the relevant balancing analysis required by Plante. Plaintiffs assume defendants rely on the same purported rationales they raise in their equal protection argument.

### A. The Registry Law Imposes a Stigma on Plaintiffs

To satisfy the stigma prong, plaintiffs must plead that a "substantially false" governmental communication created stigmatizing consequences. Codd v. Velger, 429 U.S. 624, 627 (1977); see also San Jacinto Sav. & Loan, 928 F.2d at 701. The Registry Law – a government communication – is false as applied to plaintiffs. First, it states that plaintiffs pose a "high risk" of committing "crimes against victims who are minors." La. R.S. § 15:540. Registrants must provide notice to schools and parks, further suggesting that plaintiffs pose a distinct threat to children. Id. § 15:542.1. This statement is false, as no plaintiff has ever been arrested for, or convicted of, any sexual offense that involves a child. Compl. ¶ 130. Second, the Registry Law states plaintiffs "pose a high risk" of committing the types of sex offenses that dominate the registry – those marked by force, coercion, use of a weapon, and lack of consent. La. R.S. § 15:540. Its extensive registration, notice, and emergency evacuation requirements suggest that the scheme is premised on registrants' threat to the community. Id. § 15:543.1-2. These statements create the false impression that plaintiffs are violent predators, yet no plaintiff has ever been arrested for, or convicted of, any sexual offense that involves children, force, coercion, weapons, or lack of consent. Compl. ¶ 130.

Plaintiffs are indisputably stigmatized by these statements, exposed to physical threats and deep embarrassment. Id. ¶¶ 134-35, 137, 141, 144, 149, 153-55, 158, 161, 167, 172-73, 177, 183; see also United States v. Jimenez, 275 F. App'x 433, 442 (5th Cir. 2008) (forcing an individual to register as a sex offender creates "stigmatizing consequences"). Notably, defendants do not contest that plaintiffs have suffered stigmatization.

### B. Plaintiffs Have Suffered an Infringement of Their Liberty Interests

The second prong of the stigma-plus-infringement doctrine requires a showing that the defendants "sought to remove or significantly alter" a liberty interest "recognized and protected

by state law or guaranteed by one of the provisions of the Bill of Rights that has been 'incorporated.'" San Jacinto Sav. & Loan, 928 F.2d at 701-02 (citation omitted). Plaintiffs have adequately alleged that the public notification requirements imposed on individuals convicted of CANS infringe their right to privacy. See Point III, supra; see, e.g., Doe v. Pataki, 3 F. Supp. 2d 456, 468 (S.D.N.Y. 1998) (finding that harm to registrants' reputation, coupled with the infringement of their privacy rights, satisfies the stigma-plus-infringement test); Roe v. Farwell, 999 F. Supp. 174, 196-97 (D. Mass. 1998) (finding that sex offender registry law infringed plaintiff's privacy interest protected by the state and federal constitutions). In addition, plaintiffs have alleged that mandatory sex offender registration infringes their right to work, Compl. ¶¶ 136, 148, 159, 165, 176, 181, a liberty interest entitled to protection. See, e.g., Bd. of Regents of State Colls. v. Roth, 408 U.S. 564 (1972); Phillips v. Vandygriff, 711 F.2d 1217 (5th Cir. 1983); Danna v. Bd. of Aldermen for Abita Springs, La., Civ. A. No. 86-2282, 1987 WL 4864 (E.D. La. Apr. 15, 1987) (Feldman, J.). Thus, plaintiffs have adequately pled an infringement of a protected liberty interest.

### C. Plaintiffs Are Entitled to a Hearing

Once a plaintiff satisfies the stigma-plus-infringement test, courts must determine what process is due. Marrero v. City of Hialeah, 625 F.2d 499, 519 (5th Cir. 1980). Where, as here, plaintiffs are "not afforded even the bare elements of due process," i.e., notice and an opportunity to be heard, courts "need not undertake a detailed inquiry into what process is due." Id. at 520. Plaintiffs have been convicted of an offense that includes no element of violence or predation. Compl. ¶ 70. Therefore, here, no such element was ever proven because it is not an element of CANS. Id. Thus, plaintiffs have been deprived of any due process whatsoever, and the inquiry can end here.

Should this Court decide to engage in a more detailed analysis, three factors are relevant:

> [First], the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Mathews v. Eldridge, 424 U.S. 319, 335 (1976). Based on these factors, defendants cannot demonstrate that that they have provided plaintiffs with sufficient due process. First, plaintiffs' interests in privacy and reputation have been unmistakably harmed. See Point III supra; Section B, supra; E.B. v. Verniero, 119 F.3d 1077, 1107 (3d Cir. 1997) (finding that the private liberty interests affected by sex offender registration are "very substantial"). Second, the risk of an erroneous deprivation of plaintiffs' liberty interests is self-evident. The Registry Law falsely and harmfully portrays plaintiffs as dangerous to the public and to children in particular, even though they have not been convicted of an offense that involves violence or children. See supra; Verniero, 119 F.3d at 1110 (noting that "an overestimation of an individual's dangerousness will lead to immediate and irreparable harm"); Pataki, 3 F. Supp. 2d at 470. Finally, the government has no legitimate interest in requiring plaintiffs to register as sex offenders.[9] See Point II(B), supra.

Avoiding the Mathews test entirely, defendants incorrectly assert that this case is "nearly identical" to Connecticut Department of Public Safety v. Doe, 538 U.S. 1 (2003), where the Supreme Court held that a convicted sex offender was not entitled to a hearing on current dangerousness. MTD at 16. However, in Connecticut Department of Public Safety: (1) the registrant failed to show that the Connecticut registry law was substantively defective; and (2)

---

[9] In fact, the state has an "interest in ensuring that its classification and notification system [are] both fair and accurate." Pataki, 3 F. Supp. 2d at 470; see also Verniero, 119 F.3d at 1107-08 ("[T]he state has no substantial interest in . . . notifying those who will come into contact with a registrant who has erroneously been identified as a moderate or high risk [offender].").

the state's scheme included a clear disclaimer that "no determination" had been made as to any registrant's current dangerousness. Id. Here, by contrast, plaintiffs have challenged their registration on four constitutional grounds. Compl. ¶¶ 186, 192, 198, 204. In addition, dangerousness is clearly relevant, as the Registry Law's stated purpose is to "protect" the public from sex offenders who allegedly pose a "high risk" of engaging in violent sex offenses and crimes against children. La. R. S. § 15:540.

Defendants cannot demonstrate that they provided plaintiffs with due process. Thus, should CANS ultimately remain on the list of offenses requiring sex offender registration, plaintiffs have adequately pled that they are entitled to a hearing that would allow a judge to remove them from the registry because they have not been convicted of an offense involving an element of force, coercion, a weapon, lack of consent, or a minor victim.[10]

## V. PLAINTIFFS HAVE ADEQUATELY ALLEGED THAT REQUIRING THEM TO REGISTER AS SEX OFFENDERS IS CRUEL AND UNUSUAL PUNISHMENT

The Eighth Amendment prohibits the imposition of "cruel and unusual punishment," U.S. Const. amend. VIII, based on the "basic precept of justice that punishment for crime should be graduated and proportioned to [the] offense." Roper v. Simmons, 543 U.S. 551, 560 (2005) (internal quotations and citation omitted). Plaintiffs maintain that requiring them to register as sex offenders based solely on a CANS conviction is punitive, purposeless, grossly disproportionate, and out-of-step with national consensus. Compl. ¶ 204.

---

10 Other states have provided such hearings. See, e.g., Utah v. Briggs, 199 P.3d 935, 948 (Utah 2008) (distinguishing Conn. Dep't of Pub. Safety where registry law implied registrant was currently dangerous and required state to provide registrant "notice and an opportunity to be heard on the validity of that designation"); Hawaii v. Guidry, 96 P.3d 242 (Haw. 2004) (same).

**A. Requiring Plaintiffs to Register as Sex Offenders Constitutes Punishment**

In this case, both the intent and effect of the Registry Law are punitive. Thus, Eighth Amendment analysis is appropriate. Though defendants wrongly assert that the Supreme Court has found that sex offender registration is regulatory rather than punitive, MTD at 18, the Supreme Court has never decided that a sex offender registration requirement, applied to any type of offense, will always be deemed regulatory.[11] Instead, Smith v. Doe requires a court to first examine whether the legislature's intent was punitive or regulatory when it enacted the statutory scheme at issue. 538 U.S. 84, 92 (2003). If punitive, the inquiry ends here. Id. Even if the legislature's intent was regulatory, courts must analyze whether the purpose or effect of the legislative scheme is so punitive that it negates the legislature's stated regulatory intent. Id.

**1. The Legislature Acted with Punitive Intent**

Plaintiffs have demonstrated that defendants' public safety and morality rationales are unavailing as applied to CANS and that their registration as sex offenders stems only from moral disapproval of non-procreative sex acts associated with homosexuality. See Point II(B). "[I]f a restriction or condition is not reasonably related to a legitimate goal – if it is arbitrary or purposeless – a court permissibly may infer that the purpose of the governmental action is punishment." Bell v. Wolfish, 441 U.S. 520, 539 (1979). Therefore, the Louisiana legislature's inclusion of CANS in the Registry Law must be deemed punitive.

Courts must also consider whether the legislature indicated, "either expressly or impliedly," a preference for a regulatory or punitive label by looking to "formal attributes" of the legislative scheme, including "the manner of its codification or the enforcement procedures it

---

[11] Smith was "the first time [the Supreme Court] . . . considered a claim that a sex offender registration and notification law constitute[d] . . . punishment." 538 U.S. at 92. The other cases Defendants cite – Kansas v. Hendricks, 521 U.S. 346 (1997) and Kansas v. Crane, 534 U.S. 407 (2002) – analyzed whether civil commitment of dangerous sex offenders constituted punishment.

establishes." Smith, 538 U.S. at 93-94 (internal quotations and citation omitted). Unlike Alaska's registry law in Smith, Louisiana's Registry Law is located entirely in the criminal procedure code, which is dominated by provisions involving criminal punishment. Compare La. R.S. § 15:540 et seq. with Smith, 538 U.S. at 95. Further, the New Orleans Police Department and Louisiana State Police enforce the Registry Law. Compare Compl. ¶¶ 111, 120, La. R.S. § 15:542(E) with Smith, 538 U.S. at 108 (noting that a regulatory agency maintained registration information). Thus, the punitive intent of the Louisiana legislature is clear.

### 2. The Registry Law Is Punitive in Purpose and Effect

Should the Court find it necessary to proceed to the second step of the analysis, the purpose and effect of requiring individuals convicted of CANS to register as sex offenders is wholly punitive. The Supreme Court has enumerated seven factors that serve as "guideposts" for a determination of whether a legislative scheme is punitive in character. Smith, 538 U.S. at 97 (citation omitted). Here, each of the five most significant factors demonstrates that the legislative scheme is punitive.[12]

First, the Registry Law operates as an affirmative disability and restraint on plaintiffs. Plaintiffs must report in person to law enforcement regularly and appear at the sheriff's office whenever they plan to stay somewhere other than their registered addresses for seven or more days. Compl. ¶¶ 89-91. Compare Smith, 538 U.S. at 101 (finding no affirmative restraint where in-person reporting was not required). Moreover, unlike in Smith, plaintiffs have adequately alleged that the registration requirements interfere with their ability to obtain housing and employment. See id. at 100; Compl. ¶¶ 136, 143, 148, 152-53, 159, 165-66, 176, 181-82.

---

[12] The sixth and seventh factors, which analyze whether the legislative scheme applies to behavior that is already a crime and requires a finding of scienter, carry "little weight" in the context of sex offender registration schemes. See Smith, 538 U.S. at 105.

Second, the Registry Law reflects the historic tradition of punishment. By forcing individuals convicted of CANS to carry identification cards labeling them as "SEX OFFENDERS" in orange, the Registry Law resembles historic shaming practices such as branding alleged adulterers with a scarlet letter. Compl. ¶ 87; see generally Toni M. Massaro, Shame, Culture, and American Criminal Law, 89 Mich. L. Rev. 1880 (1991). The Registry Law's notification requirements, which include postcards to neighbors, listing on the internet, newspaper announcements, and court-ordered use of signs, handbills, bumper stickers, and clothing labels, Compl. ¶¶ 78-88, 140, 171, also result in public shaming. Cf. Smith, 538 U.S. at 98-99, 105 (distinguishing Alaska's registry law's "passive" internet-based notification from "face to face shaming" that requires offenders "to appear in public with some visible badge of past criminality"). The Registry Law makes community awareness, direct face-to-face disclosure, and the resulting humiliation, inescapable.

Third, the Registry Law serves two traditional aims of punishment: retribution and deterrence. Cf. Smith, 538 U.S. at 102 (finding that the Alaska registry was not retributive because the length of reporting requirements was graduated to the severity of the offense). Here, sex offender registration is for a period of fifteen years to life, with no mechanism for removal. Compl. ¶¶ 104-05, 107. This points to a retributive and deterrent aim.

Fourth, and most significantly, the Registry Law does not have a rational connection to a non-punitive purpose. See Smith, 538 U.S. at 102. The purposes advanced by defendants – public safety and morality – cannot withstand rational basis review. See Point II(B), supra. The discriminatory and arbitrary nature of the Registry Law as applied to those convicted of CANS, see id., mandates an inference of punishment. See Bell, 441 U.S. at 539.

Finally, as explained below, imposition of mandatory sex offender registration is excessive in light of the offense, which involves a mere verbal agreement to engage in certain sex acts between consenting adults for compensation. See Section B, infra. Accordingly, the most significant Smith factors strongly weigh in favor of finding that plaintiffs have adequately alleged that the purpose and effect of requiring them to register as sex offenders is punitive.

**B. Requiring Individuals Convicted of CANS to Register as Sex Offenders Is Disproportionate to Their Offense and Inconsistent with National Norms**

Once punitive intent or effect is established, the Eighth Amendment requires a plaintiff to plead that the punishment is cruel and unusual. To analyze this, courts look "beyond historical conceptions to the evolving standards of decency that mark the progress of a maturing society." Graham v. Florida, 130 S. Ct. 2011, 2021 (2010) (internal quotations and citation omitted). A particular punishment is categorically cruel and unusual when: (1) there is a national consensus against the punishment at issue; and (2) the Eighth Amendment's text, history, meaning, and purpose support such a determination. Id. at 2022-23.

**1. Registration Is Inconsistent with National and Community Consensus**

When evaluating national consensus, state legislatures provide the "clearest and most reliable objective evidence of contemporary values." Id. at 2023. No other state in the country imposes a sex offender registration requirement for solicitation of sexual conduct for compensation without more, and no other state treats solicitation of oral or anal sex for compensation differently than solicitation of other forms of sex for compensation. Compl. ¶ 61; see also Kennedy v. Louisiana, 554 U.S. 407 at 434 (2008) (finding a national consensus against capital punishment for the crime of child rape when Louisiana was "the only State since 1964" to impose such punishment). The 2010 amendments to CANS, which exempted first-time

offenders from registration, also demonstrate a growing community consensus within Louisiana against requiring registration. Compl. ¶¶ 57-59.

### 2. The Court's Independent Analysis Should Suggest that Registration Is Inappropriate

The Eighth Amendment requires that the State's power to punish be "exercised within the limits of civilized standards." Kennedy, 554 U.S. at 435 (internal quotations and citation omitted). To analyze this, courts consider the culpability of the offenders in light of: (1) their crimes and characteristics; (2) the severity of the punishment in question; and (3) whether the punishment serves a legitimate penological goal. Graham, 130 S. Ct. at 2026.

Plaintiffs have been convicted of offering to engage in oral or anal sex for compensation. Compl. ¶ 128. A Prostitution conviction, which encompasses exactly the same conduct, does not require registration. Id. ¶ 50. The severity of the Registry Law's numerous requirements are vastly disproportionate to the severity of this offense. Plaintiffs must regularly report to law enforcement and carry identification cards that publicly brand them as sex offenders; they are subject to extensive community notification requirements, annual registration fees, and separate emergency evacuation protocols. Id. ¶¶ 75-106. Failure to comply with these complex obligations can result in felony-level criminal sanctions. Id. ¶¶ 101-03. Some plaintiffs are subject to these harsh and onerous requirements for the rest of their lives, others for fifteen years. Id. ¶¶ 132, 139, 146, 151, 157, 163, 169, 175, 179. Finally, plaintiffs' harsher sentences and sex offender registration requirements serve no legitimate government interest. See Point II(B), supra. In light of national and community consensus, and the severity of the registration requirements compared to their criminal conduct, plaintiffs have adequately pled an Eighth Amendment violation.

## VI. THERE IS NO BASIS FOR REQUIRING DISCLOSURE OF PLAINTIFFS' IDENTITIES TO DEFENDANTS AT THIS STAGE OF THE LITIGATION

Defendants concede that plaintiffs' identities are not necessary to the adjudication of a motion to dismiss, MTD at 20, effectively mooting the issue for purposes of the instant motion.[13] Accordingly, plaintiffs respectfully submit the question of disclosure of their identities is irrelevant to the Court's ruling on the instant motion, and that this issue would be more properly litigated through a motion pursuant to Rule 26 of the Federal Rules of Civil Procedure. See, e.g., Doe v. Stegall, 653 F.2d 180, 182 (5th Cir. 1981) (motion for a protective order); S. Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe, 599 F.2d 707, 710 (5th Cir. 1979) (same). As municipal defendants have adopted state defendants' arguments in toto and raised additional arguments with respect to this issue, plaintiffs' responses to all arguments concerning disclosure of their identities are addressed in their Memorandum in Opposition to Municipal Defendants' Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 17 and 12.

## CONCLUSION

For the reasons stated above, defendants' motion to dismiss should be denied.

DATED: June 14, 2011

Respectfully submitted,

By: /s/ Alexis Agathocleous

Alexis Agathocleous, N.Y. State Bar #4227062, *pro hac vice*
William P. Quigley, La. State Bar #7769
Sunita Patel, N.Y. State Bar #4441382
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
Tel: (212) 614-6478

---

[13] Defendants unequivocally state that they do not object to plaintiffs proceeding anonymously in the pleadings. MTD at 18. While defendants do not contest plaintiffs' efforts to protect their identities from the public, they object to plaintiffs' efforts to remain anonymous with respect to defendants. Id.

Facsimile: (212) 614-6499
Email: aagathocleous@ccrjustice.org

ANDREA J. RITCHIE, N.Y. State Bar # 4117727
995 President Street
Brooklyn, NY
Tel: (646) 831-1243
Email: andreajritchie@aol.com

Davida Finger, La. Bar #30889 (T.A.)
LOYOLA UNIVERSITY NEW ORLEANS COLLEGE OF LAW
Stuart H. Smith Law Clinic & Center for Social Justice
7214 St. Charles Ave, Box 902
New Orleans, LA 70118
Tel: (504) 861-5596
Facsimile: (504) 861-5440
Email: dfinger@loyno.edu

Carmine D. Boccuzzi,* N.Y. State Bar #2677094
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, NY 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999
Email: cboccuzzi@cgsh.com

*Attorneys for Plaintiffs*

* *pro hac vice* admission pending