UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

AUDREY DOE, ET AL.                          CIVIL ACTION

v.                                          NO. 11-388

BOBBY JINDAL, ET AL.                        SECTION "F"


ORDER AND REASONS

Before the Court are two motions: (1) the State defendants' motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) or, alternatively, for identification of the plaintiffs; and (2) defendant Superintendent Ronal Serpas's motion to dismiss pursuant to Federal Rule of Civil Procedure 17(a) and Rule 12(b)(6).  For the reasons that follow, the defendants' motions are GRANTED in part (the plaintiffs' claims asserted against Governor Bobby Jindal are dismissed, and the claims based on violations of the Eighth Amendment and the Fourteenth Amendment's Substantive and Procedural Due Process Clause are dismissed as to all defendants) and DENIED in part (the plaintiffs' claim based on an alleged violation of the Fourteenth Amendment Equal Protection Clause survives as against all defendants, except as against Governor Jindal).[1]

_____

[1]Also, in light of all counsel's agreement during oral argument that it was not necessary at this stage of the proceedings for the plaintiffs to disclose their identities, the defendants' motions are DENIED in part, without prejudice, insofar as they seek

## Background

A group of anonymous plaintiffs, all of whom were convicted of Louisiana's Crime Against Nature by Solicitation statute based on their agreement to engage in oral sex for compensation, bring this civil rights suit.  They challenge that statute's requirement that, as a result of their conviction, they must register as sex offenders under Louisiana's sex offender registry law.  They complain that if, instead, they had been convicted of solicitation of sex for money under the State's Prostitution law, they would not have been required to register as sex offenders, nor would they have been subjected to longer prison sentences and stricter fines. It is the State's more lenient treatment of those convicted under the Prostitution statute, compared to those convicted under the Crime Against Nature by Solicitation statute, that anchors their civil rights claims in which they advance constitutional challenges under the Fifth, Eighth, and Fourteenth Amendments to the U.S. Constitution against various State defendants and one municipal defendant.

Louisiana's approach  to punishing solicitation of sex, until recently, depended in part on the particular sex act solicited: that is, solicitation of oral or anal sex.  Because the law dictated that a second-offense constituted a felony if the conviction was for a Crime Against Nature by Solicitation, it was

_____

to compel disclosure of the plaintiffs' identities.

2

punished by longer prison sentences and larger fines, and the
accused also had to register as a sex offender;[2] but the
solicitation of sexual intercourse (which encompasses oral, anal,
and vaginal sexual intercourse) has always been a misdemeanor

---

[2]Before Act 223 was recently signed into law, the Crime
Against Nature by Solicitation statute, La.R.S. 14:89.2, provided:

> A. Crime against Nature by solicitation
> is the solicitation by a human being of
> another with the intent to engage in any
> unnatural carnal copulation for compensation.
> B. (1) Whoever violates the provisions
> of this Section, on a first conviction
> thereof, shall be fined not more than five
> hundred dollars, imprisoned for not more than
> six months, or both.
> (2) Whoever violates the provisions
> of this Section, on a second or subsequent
> conviction thereof, shall be fined not more
> than two thousand dollars, or imprisoned, with
> or without hard labor, for not more than five
> years, or both.
> (3) Whoever violates the provisions
> of this Section, when the person being
> solicited is under the age of seventeen years,
> shall be fined not more than two thousand
> dollars, or imprisoned, with or without hard
> labor, for not more than five years, or both.
> Lack of knowledge of the age of the person
> being solicited shall not be a defense.
> C. A violation of the provisions of
> Paragraphs B(2) and (3) of this Section shall
> be considered a sex offense as defined in R.S.
> 15:541 and the offender shall be required to
> register as a sex offender as provided for in
> Chapter 3-B of Title 15 of the Louisiana
> Revised Statutes of 1950.

The Louisiana Supreme Court has defined "unnatural carnal
copulation" as between human beings as "refer[ing] only to two
specified sexual practices: sodomy...and oral-genital activity...."
State of Louisiana v. Smith, 766 So.2d 501, (La. 2000)(citing State
v. Phillips, 365 So.2d 1304, 1306 (La. 1978)).

3

offense when statutorily identified as Prostitution, and those convicted of Prostitution have never been required to register as sex offenders.[3] Moreover, until August 15, 2011 the punishment for Prostitution was less.

On February 15, 2011 nine plaintiffs, proceeding pseudonymously, sued the defendants in their official capacities under 42 U.S.C. § 1983 to challenge the constitutionality of Louisiana's mandatory inclusion of one particular crime on the State's sex offender registry, the Crime Against Nature by

---

[3]Louisiana's Prostitution statute, La.R.S. 14:82, provides:

> A. Prostitution is:
> (1) The practice by a person of indiscriminate sexual intercourse with others for compensation.
> (2) The solicitation by one person of another with the intent to engage in indiscriminate sexual intercourse with the latter for compensation.
> B. As used in this Section, "sexual intercourse" means anal, oral, or vaginal sexual intercourse.
> (1) Whoever commits the crime of prostitution shall be fined not more than five hundred dollars or be imprisoned for not more than six months, or both.
> (2) On a second conviction, the offender shall be fined not less than two hundred fifty dollars nor more than two thousand dollars or be imprisoned, with or without hard labor, for not more than two years, or both.
> (3) On a third and subsequent conviction, the offender shall be imprisoned, with or without hard labor, for not less than two nor more than four years and shall be fined not less than five hundred dollars nor more than four thousand dollars....

Solicitation statute.   They sued Governor Bobby Jindal; Attorney
General James D. Buddy Caldwell; Secretary of the Louisiana
Department of Public Safety and Corrections (DPSC) James M.
LeBlanc; Superintendent of the DPSC Colonel Michael D. Edmonson;
Deputy Superintendent of the DPSC, Office of the State Police,
Charles Dupuy; Director of the DPSC, Division of Probation and
Parole, Eugenie C. Powers; Assistant Director of the DPSC, Division
of Probation and Parole, Barry Matheny; Commissioner of the DPSC,
Office of Motor Vehicles, Nick Gautreaux; and Superintendent of the
New Orleans Police Department, Ronal W. Serpas.[4]   According to
their complaint, each of the nine plaintiffs have been convicted of
Crime Against Nature by Solicitation for agreeing to perform oral
sex for money, and must register as sex offenders for 15 years or
for their lifetime.[5]   And, even though the State legislature
recently equalized the penalties for Crime Against Nature by
Solicitation and the crime of Prostitution, individuals (such as

---

[4]The defendants have pointed out that the plaintiffs name
Jim Mitchell as Deputy Superintendent, but that Charles Dupuy
replaced Mitchell.   The defendants also point out that the
plaintiffs named Kay Hodges as Commissioner of the DPSC, Office of
Motor Vehicles, who has been replaced by Nick Gautreaux.

[5]Many of the plaintiffs were convicted under La.R.S.
14:89 which, after their convictions, was divided by the
legislature into three separate statutes: 14:89 (crime against
nature), 14:89.1 (aggravated crime against nature), and 14:89.2
(crime against nature by solicitation).   This lawsuit pertains to
a subsection of § 14:89.2, which creates the offense of Crimes
Against Nature by Solicitation, and also imposes the registration
requirements for persons convicted of the offense.

5

the plaintiffs here) convicted of Crime Against Nature by Solicitation before August 15, 2011 must continue to register as sex offenders.[6]  They maintain that no rational justification exists for distinguishing between what is otherwise identical criminal conduct and that their constitutional rights continue to be violated because they are subject to the sex offender registration requirements when others similarly-situated are not.

In their complaint, the plaintiffs trace the history of the Crime Against Nature by Solicitation statute and suggest that this history supports their theory that no rational basis exists for treating them differently from those convicted of participating in identical conduct under the Prostitution statute:  Since 1805, Louisiana's Crime Against Nature statute has criminalized the commission of "unnatural carnal copulation," defined as oral and anal sex.[7]

---

[6]The Court takes judicial notice of this recently revised legislation: on June 27, 2011 Governor Bobby Jindal signed House Bill 141 into law.  Act. No. 223 of the 2011 Regular Session.  Act 223 removes the requirement that persons convicted on or after August 15, 2011 of Crimes Against Nature by Solicitation be required to register as sex offenders, and otherwise equalizes the penalties for Crimes Against Nature by Solicitation and Prostitution.  The plaintiffs here, of course, do not benefit from the revised legislation that applies prospectively only and, therefore, they must continue to register as sex offenders.

[7]Much of the Crime Against Nature statute has been held unconstitutional by the United States Supreme Court in <u>Lawrence v. Texas</u>, 539 U.S. 558 (2003).  <u>Lawrence</u> does not speak to the solicitation of sex for money, and has no force here.  It might be helpful to draw attention to the point that at this phase of the case, which focuses only the defendants' attack on plaintiffs'

In 1982, Louisiana expanded the Crime Against Nature statute
to specifically criminalize "solicitation by a human being of
another with the intent to engage in any unnatural carnal
copulation for compensation." In so doing, Louisiana became the
first and only state in the nation to adopt a freestanding statute
that specifically criminalizes offering or agreeing to engage in
oral or anal sex for a fee. While other states have general
provisions criminalizing solicitation and prostitution-related
offenses (as does Louisiana),[8] Louisiana also singles out
solicitation of oral and anal sex for money for harsher punishment
and sex offender registration. This registration requirement is
governed by the the Registration of Sex Offenders, Sexually Violent
Predators, and Child Predators law, which was passed in 1991. The
registry law  provides for the collection and dissemination of
information about persons convicted of specifically enumerated sex
offenses.[9]

_____

pleadings, their charge of the State's role in bias is not reached.

[8]Louisiana's Prostitution statute outlaws the
solicitation and commission of "indiscriminate sexual intercourse",
which encompasses vaginal, oral, and anal intercourse, for
compensation. Quite obviously, the scope of the Prostitution is
broader than the Crime Against Nature by Solicitation statute but
it also encompasses all of the sex acts criminalized by the Crime
Against Nature by Solicitation statute. The State's argument that
the challenged statute is different because it also covers
bestiality defies credulity. See, infra, p. 23-24.

[9]The registry law imposes a number of requirements that
the plaintiffs maintain affect every aspect of their lives,
including housing, employment, travel, access to identification

But last year, the Louisiana legislature equalized the penalties associated with a first conviction for Prostitution and a first conviction of Crime Against Nature by Solicitation; the amended legislation continued to mandate that individuals convicted of Crime Against Nature by Solicitation register as sex offenders, but only as a result of a second or subsequent conviction.[10]   (As

---

documents, family life, and evacuation in the event of an emergency or natural disaster.  For example, registrants must carry a state driver's license or other state identification card that brands them as a SEX OFFENDER in bright orange capital letters.   All individuals on the registry must send notify neighbors, landlords, employers, schools, parks, community centers, and churches that they are sex offenders.   It covers much broader categories of sexual predators who belong on the registry.

The plaintiffs contend that the requirement that they register as sex offenders has had devastating consequences: many have been unable to secure work or housing, threatened by neighbors, and refused residential drug treatment.  The plaintiffs further contend  that Crime Against Nature by Solicitation is the only offense requiring registration as a sex offender that does not involve the use of force, coercion, use of a weapon, lack of consent, or a minor victim.  In fact, the plaintiffs point out, the offense of Crime Against Nature by Solicitation requires no act whatsoever; rather, it only requires an offer or agreement to engage in oral or anal sex in exchange for compensation.  Requiring individuals solely convicted of Crime Against Nature by Solicitation to register as sex offenders serves no legitimate purpose, the plaintiffs assert, because they pose no threat of predation, violence, or danger to children.   Rather, the only possible explanation for the inclusion of the Crime Against Nature by Solicitation in the registry law, the plaintiffs insist, is that it targets non-procreative sex acts traditionally associated with homosexuality (an issue not addressed in this opinion).

[10]Until August 2010, even a first conviction of Crime Against Nature by Solicitation triggered higher penalties and the sex offender registration requirement.  A first conviction of Crime Against Nature by Solicitation, as a result of the August 15, 2010 amendments, is no longer a felony and carries with it the same penalties as a first Prostitution conviction.

before, however, one convicted of Prostitution, no matter how often, is not required to register as a sex offender.) The August 2010 amendment was not retroactive, however. Plaintiffs must stay registered as sex offenders.

After August 15, 2011, those convicted of Crime Against Nature by Solicitation, under the new legislation, will only face the same penalties as those convicted of Prostitution; the sex offender registration requirement for those convicted of Crime Against Nature by Solicitation has been eliminated.

In asserting this Section 1983 suit, the plaintiffs advance the following constitutional violations: (1) Fourteenth Amendment Equal Protection Violation; (2) Fourteenth Amendment Violation of Substantive Due Process (Right to Privacy); (3) Fourteenth Amendment Violation of Procedural Due Process; and (4) Eighth Amendment Violation: Disproportionate and Cruel and Unusual Punishment. In pursuing these claims, the plaintiffs seek various forms of relief, requesting that the Court:

1. Declare that La.R.S. 15:542(A)(1)(a) violates the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution insofar as it requires individuals convicted of Crime Against Nature to register as sex offenders;

2. Declare that the defendants' actions violate the Plaintiffs' rights under the Fifth, Eighth, and Fourteenth Amendments to the U.S. Constitution;

3. Order the defendants to permanently remove the plaintiffs from the Sex Offender and Child Predator Registry;

4. Order the defendants to expunge all state records indicating that the plaintiffs were ever registered on the Sex Offender and Child Predator Registry;

5. Order the defendants to alert all agencies who were provided information about the plaintiffs' registration (including

courts, police departments, sheriff's departments, and the Federal Bureau of Investigation) that this information is no longer valid;

6.    Order the defendants to cease and desist from placing any individuals convicted under the Crime Against Nature on the Sex Offender and Child Predator Registry; and

7.    Award the plaintiff's attorney's fees and costs.

The defendants now seek dismissal of the plaintiffs' claims.[11]

I.

A.

Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the Court's subject matter jurisdiction. Fed.R.Civ.P. 12(b)(1). Governor Bobby Jindal, challenges this Court's subject matter jurisdiction as to him, invoking the doctrine of sovereign immunity. The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001).  The Court may find a plausible set of facts to support subject matter jurisdiction by considering any of the following: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Barrera-Montenegro v. United States, 74 F.3d 657, 659 (5th Cir. 1996).

B.

All defendants seek dismissal for failure to state a claim

---

[11]The defendants also seek to require disclosure of the plaintiffs' identities.

under Rule 12(b)(6).  The standard of review applicable to motions
to dismiss under Rule 12(b)(1) is similar to that applicable to
motions to dismiss under Rule 12(b)(6).  See Williams v. Wynne, 533
F.3d 360, 364-65 n.2 (5th Cir. 2008)(observing that the Rule
12(b)(1) and Rule 12(b)(6) standards are similar, but noting that
applying the Rule 12(b)(1) standard permits the Court to consider
a broader range of materials in resolving the motion).

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows
a party to move for dismissal of a complaint for failure to state
a claim upon which relief can be granted.  Such a motion is rarely
granted because it is viewed with disfavor.  See Lowrey v. Tex. A
& M Univ. Sys., 117 F.3d 242, 247 (5th Cir. 1997) (quoting Kaiser
Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc., 677 F.2d
1045, 1050 (5th Cir. 1982)).  In considering a Rule 12(b)(6)
motion, the Court "accepts 'all well-pleaded facts as true, viewing
them in the light most favorable to the plaintiff.'"  See Martin K.
Eby Constr. Co. v. Dallas Area Rapid Transit, 369 F.3d 464 (5th
Cir. 2004) (quoting Jones v. Greninger, 188 F.3d 322, 324 (5th Cir.
1999)).  But, in deciding whether dismissal is warranted, the
Court will not accept conclusory allegations in the complaint as
true.  Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards,
Inc., 677 F.2d 1045, 1050 (5th Cir. 1982). Indeed, the Court must
first identify allegations that are conclusory and, thus, not
entitled to the assumption of truth.  Ashcroft v. Iqbal, --- U.S.

11

---, 129 S.Ct. 1937, 1949 (2009).  A corollary: legal conclusions "must be supported by factual allegations." <u>Id.</u> at 1950.  Assuming the veracity of the well-pleaded factual allegations, the Court must then determine "whether they plausibly give rise to an entitlement to relief." <u>Id.</u>

"'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" <u>Gonzalez v. Kay</u>, 577 F.3d 600, 603 (5th Cir. 2009)(quoting <u>Iqbal</u>, 129 S.Ct. at 1949 (2009))(internal quotation marks omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (quotation marks, citations, and footnote omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 129 S. Ct. at 1949 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."). This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Id.</u>  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and

plausibility of entitlement to relief." Id. (citing Twombly, 550 U.S. at 557)(internal quotations omitted). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'", thus, "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citation omitted).

In deciding a motion to dismiss, the Court may consider documents that are essentially "part of the pleadings" -- that is, any documents attached to or incorporated in the plaintiffs' complaint that are central to the plaintiff's claim for relief. Causey v. Sewell Cadillac-Chevrolet, Inc., 394 F.3d 285, 288 (5th Cir. 2004) (citing Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498-99 (5th Cir. 2000)). Also, the Court is permitted to consider matters of public record and other matters subject to judicial notice without converting a motion to dismiss into one for summary judgment. See United States ex rel. Willard v. Humana Health Plan of Texas Inc., 336 F.3d 375, 379 (5th Cir. 2003).

II.

Ex Parte Young and Sovereign Immunity

Governor Bobby Jindal contends that sovereign immunity bars all of the plaintiffs' claims as to him. The plaintiffs counter that Governor Jidnal appoints the officials charged with enforcing the laws at issue, and that he has the power to remedy the harm alleged by the plaintiffs.

13

The Eleventh Amendment bars suits by private citizens against a state in federal court. K.P. v. LeBlanc, 627 F.3d 115, 124 (5th Cir. 2010)(citing Hutto v. Finney, 437 U.S. 678, 700 (1978)). This immunity extends to protect state actors in their official capacities. Id. There is, of course, a narrow exception to this immunity from suit: the Ex Parte Young exception "is based on the legal fiction that a sovereign state cannot act unconstitutionally[; t]hus, where a state actor enforces an unconstitutional law, he is stripped of his official clothing and becomes a private person subject to suit." See id. (citing Ex Parte Young, 209 U.S. 123 (1908)); see also Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 n.10 (1989)(noting "[o]f course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State'").

The Ex Parte Young exception applies when the plaintiff demonstrates that the state officer has "some connection" with the enforcement of the disputed act. K.P., 627 F.3d at 124 (citing Ex Parte Young, 209 U.S. at 160, and noting that the purpose of the connection requirement is to prevent litigants from misusing the exception). As the Fifth Circuit U.S. Court of Appeals has observed:

> Ex Parte Young gives some guidance about the required
> "connection" between a state actor and an allegedly

14

> unconstitutional act.  "The fact that the state officer, by virtue of his office, has some connection with the enforcement of the act, is the important and material fact, and whether it arises out of the general law, or is specially created by the act itself, is not material so long as it exists."

Id. (quoting Ex Parte Young, 209 U.S. at 157).

Governor Jindal insists that he lacks the requisite connection with the enforcement of the challenged act that is necessary to establish applicability of the Ex Parte Young exception to his sovereign immunity; he contends that the duty of enforcing the registry laws is specifically assigned by statute, and is not delegated by the Governor, citing La.R.S. 15:577(A) and La.R.S. 15:578.  Invoking Okpalobi v. Foster, 244 F.3d 405, 411 (5th Cir. 2001),[12] Governor Jindal contends that the plaintiffs must allege that he has the particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty.   To the extent that the Governor seeks to limit the scope of the Ex Parte Young exception based on the Fifth Circuit's analysis in Okpalobi, it is undisputed that the Fifth Circuit's discussion of sovereign immunity in Okpalobi was in a plurality opinion.  As the Fifth Circuit has pointed out, "[b]ecause that part of the en banc opinion did not garner majority support, the Eleventh Amendment

---

[12]In Okpalobi, the Fifth Circuit held that to determine whether the Ex Parte Young exception applies, the Court "should gauge (1) the ability of the official to enforce the statute at issue under his statutory or constitutional powers, and (2) the demonstrated willingness of the official to enforce the statute." 244 F.3d at 417.

analysis is not binding precedent." <u>K.P. v. LeBlanc</u>, 627 F.3d at

124 (citing <u>United States v. Ferguson</u>, 211 F.3d 878, 885 (5th Cir.

2000)).

Nevertheless, the Court finds that the plaintiffs fall short

of satisfying the "some connection" requirement of <u>Ex Parte Young</u>.

Governor Jindal's generic constitutional duty as governor to "see

that the laws are faithfully executed" (La. Const. art. 4 § 5)

lacks the <u>Ex Parte Young</u> nexus between the Governor and the alleged

unconstitutional act to defeat his sovereign immunity.

### III.

Section 1983 imposes civil liability on:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State..., subjects,
> or causes to be subjected, any citizen of the United
> States or other person within the jurisdiction thereof to
> the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws....

42 U.S.C. § 1983.  To state a § 1983 claim, a plaintiff must claim

a violation of a right secured by the Constitution or laws of the

United States and demonstrate that the deprivation was committed by

a person acting under color of state law.  <u>Anderson v. Law Firm of

Shorty, Dooley & Hall</u>, 393 Fed.Appx. 214 (5th Cir. Aug. 26, 2010

(citing <u>Randolph v. Cervantes</u>, 130 F.3d 727, 730 (5th Cir. 1997)).

Because § 1983 imposes liability only for violations of rights

protected by federal laws and the Constitution, "[t]he first

inquiry in any § 1983 suit...is whether the plaintiff has been

deprived of a right 'secured by the Constitution and laws.'" <u>Baker</u>

16

v. McCollan, 443 U.S. 137, 140 (1970).

The defendants contend that the plaintiffs fail to plead facts showing a violation of a Constitutional right and, therefore, their claims should be dismissed for failure to state a claim. Plaintiffs focus several constitutional targets:

A.   14th Amendment Equal Protection Violation Claim

The plaintiffs submit that the Equal Protection Clause has been violated because:

> Defendants' maintenance, administration, and enforcement of the registry law with respect to Plaintiffs, and other individuals convicted of Crime Against Nature by Solicitation, has no rational relationship to a legitimate governmental interest, but rather is motivated by animus toward non-procreative sex acts traditionally associated with homosexuality.

The plaintiffs assert that the Crime Against Nature by Solicitation statute singles out for greater punishment sex workers who solicit oral and anal sex for money, and includes a requirement that individuals convicted must register as sex offenders, as opposed to those convicted for violation of the Prostitution statute, a conviction for which does not require sex offender registration. The defendants now test the sufficiency of these allegations.

The Equal Protection Clause of the Fourteenth Amendment of the Constitution commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. Amend. XIV, § 1; Vacco v. Quill, 521 U.S. 793, 799 (1997)(citations omitted)(holding that New York's prohibition on

17

assisting suicide did not violate Equal Protection Clause of the Fourteenth Amendment).    States must comply with the Equal Protection Clause by "treat[ing] like cases alike[.]" Id.; John Corp. v. City of Houston, 214 F.3d 573, 577 (5th Cir. 2000)(citation omitted)("The Equal Protection Clause protects individuals from governmental action that works to treat similarly situated individuals differently."); Stoneburner v. Secretary of the Army, 152 F.3d 485, 491 (5th Cir. 1998)(citation omitted)("The Equal Protection Clause...essentially directs that all persons similarly situated be treated alike.").    However, "if a law neither burdens a fundamental right nor targets a suspect class," the Supreme Court has observed, "the legislative classification [will survive] so long as it bears a rational relation to some legitimate end." Romer v. Evans, 517 U.S. 620, 631 (1993)(citing Heller v. Doe, 509 U.S. 312, 319-20 (1993)); City of Cleburne, Texas v. Cleburne Living Ctr., 473 U.S. 432, 440 (1985)("The general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest."). So that is the test: Is there a rational basis for the Crime Against Nature by Solicitation statute, if its every prohibited act is also prohibited by the Prostitution statute?

When conducting rational basis review, the Supreme Court has observed that "we will not overturn such [government action] unless

the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that the [government's] actions were irrational." <u>Kimel v. Florida Bd. of Regents</u>, 528 U.S. 62, 84 (2000)(citing <u>Vance v. Bradley</u>, 440 U.S. 93, 97 (1979)).  Where, as here, the challenged classification is presumptively rational, "the individual challenging its constitutionality bears the burden of proving that the 'facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decisionmaker.'" <u>Id.</u> (citing <u>Bradeley</u>, 440 U.S. at 111).

To state an Equal Protection claim, and thereby satisfy their burden of stating a Constitutional violation sufficient to state a § 1983 claim, the plaintiffs must allege that they have been purposefully treated differently from others similarly situated, and that there is no rational basis for the difference in treatment. <u>Stoneburner</u>, 152 F.3d at 490 (citations omitted).  The plaintiffs contend that they have adequately pleaded a violation of the Equal Protection Clause: they allege that they are treated differently than identically-situated individuals, in that they were forced to register as sex offenders (and subjected to harsher sentences and fines) simply because they were convicted of Crime Against Nature by Solicitation, rather than Prostitution; conduct chargeable by and covered under either statute.  They also allege

19

that the classification drawn between individuals convicted of Crime Against Nature by Solicitation and those convicted of Prostitution is not rationally related to achieving any legitimate state interest.[13]   Applying, as it must, the liberal pleading standards that test the defendants' motions to dismiss, the Court agrees.

The plaintiffs contend that their Equal Protection claim turns on the fact that, because the Crime Against Nature by Solicitation and the solicitation provision of the Prostitution statute have identical elements and punish identical conduct, the State cannot have any constitutionally acceptable rationale for requiring those convicted of Crime Against Nature by Solicitation, but not Prostitution, to register as sex offenders.[14]   The plaintiffs lean

_____

[13]The parties agree that no fundamental right has been infringed, nor any suspect classification is involved; accordingly, the parties agree that the classification need only bear a rational relationship to some legitimate objective.

[14]In an analogous context, the plaintiffs note that the California Supreme Court found an Equal Protection violation when it was confronted with laws concerning voluntary sexual conduct with minors: mandatory sex offender registration was required if an individual was convicted of engaging in an oral sex act, but no such mandatory registration was required of those convicted of engaging in vaginal intercourse.   See People v. Hofsheier, 129 P.3d 29 (Cal. 2006).   The law challenged in California mandated that a person convicted of voluntary oral sex with a 16-year old must register as a sex offender for life, while a person convicted of voluntary vaginal intercourse with a 16-year old was spared the registration requirement, unless the trial court in its discretion determined that registration was appropriate.   Id. at 36.   The Equal Protection Clause forbade the distinction, the California Supreme Court held, because the state legislature could not have a rational reason to conclude "that persons who are convicted of

heavily on <u>Eisenstadt v. Baird</u>, 405 U.S. 438, 454 (1972), which they argue supports their assertion that the State cannot have a legitimate interest in imposing a sanction on one group of people and not another when the "evil, as perceived by the State, [is] identical." <u>Eisenstadt</u> is influential.

In <u>Eisenstadt</u>, the Supreme Court struck down a Massachusetts law that criminalized the distribution of contraception to unmarried persons in light of the different treatment of married persons, who were allowed access to contraception. <u>Id.</u> at 440-43. In so doing, the high court rejected various asserted rationales the government offered for treating these groups differently. The Court announced that "whatever the rights of the individual to access to contraceptives may be, the rights must be the same for the unmarried and the married alike." <u>Id.</u> at 453. Those words resonate here. For example, the Supreme Court rejected the asserted public health purpose of the law, on the grounds that such a purpose would apply equally to married people not subject to the

---

voluntary oral copulation with adolescents 16 to 17 years old, as opposed to those who are convicted of voluntary intercourse with adolescents in that same age group" can be classified differently under the law; such persons are similarly situated in terms of the nature of their misconduct. <u>Id.</u> at 39-41 (reasoning that any justification for requiring sex offender registration for those convicted of engaging in one sex act could apply equally to those convicted of engaging in the other sex act, and noting that its ruling "does not preclude the Legislature from treating both groups the same"). The plaintiffs here contend that the analysis applies with even greater force to their circumstances because the conduct targeted by the Prostitution and Crime Against Nature by Solicitation statutes is exactly the same, not just similar.

restriction and, also, that any concern over the dangerousness of the contraceptives themselves was already addressed by federal and state public health regulations in place.  Id. at 452.  In holding that outlawing the distribution of contraceptives to unmarried persons but allowing the distribution to married persons violated the Equal Protection Clause, the Supreme Court explained: "the evil, as perceived by the State, would be identical, and the underinclusion would be invidious."[15]

None of the defendants' arguments assure the Court that the plaintiffs' complaint must be dismissed.[16]

---

[15]The Supreme Court further observed:

> [N]othing opens the door to arbitrary action so effectively as to allow [government] officials to pick and choose only a few to whom they will apply legislation and thus to escape the political retribution that might be visited upon them if larger numbers were affected.  Courts can take no better measure to assure that laws will be just than to require that laws be equal in operation.

Id. (quoting Ry. Express Agency v. New York, 336 U.S. 106, 112-13 (1949)).

[16]In support of their assertion that punishing one type of conduct more severely than another similar type of conduct does not, by itself, create an Equal Protection violation, the defendants invoke Vacco v. Quill, 521 U.S. 793, 799 (1997)(New York's prohibition on physician-assisted suicide did not violate Equal Protection Clause), in which the Supreme Court considered similar but distinguishable statutes: one banning physician-assisted suicide and the other permitting patient refusal of life-sustaining treatment.  Vacco is distinguishable.  The Supreme Court found that the two practices were rationally distinguishable with regard to causation and intent.  Id. at 808 ("the law has long used actors' intent or purpose to distinguish between two acts that may

First, the defendants' argument that the plaintiffs fail to plead the classification element of their Equal Protection claim is without merit.    The defendants suggest in their papers, as they did at oral argument, that the Prostitution and Crime Against Nature by Solicitation statutes punish different types of conduct because the latter also covers bestiality.  In fact, when asked during oral argument why the legislature has two statutes on the books if the sex acts of the Prostitution statute consume all of the acts of the Crime Against Nature by Solicitation statute, counsel persisted in advancing the fiction that bestiality was an act not covered by the Prostitution statute but is covered by the Crime Against Nature statute.  That comment defies credulity.  Its absurdity is betrayed by the statutory text,[17] the Louisiana Supreme Court's pronouncements,[18] and common sense.

---

have the same result.... Put differently, the law distinguishes actions taken 'because of' a given end from actions taken 'in spite of' their unintended but foreseen consequences."). Here, however, the solicited sex acts criminalized by Crime Against Nature by Solicitation are absolutely consumed within the Prostitution statute; indeed, the plaintiffs have adequately alleged that the elements required to prove each offense are the same.

[17]The relevant text of the Crime Against Nature by Solicitation statute provides:
> A.  Crime against Nature by solicitation is the solicitation by a human being of another with the intent to engage in any unnatural carnal copulation for compensation.

La.R.S. 14:89.2.

[18]The Louisiana Supreme Court has defined "unnatural carnal copulation" as between human beings as "refer[ing] only to two specified sexual practices: sodomy...and oral-genital

Next, the Court addresses the defendants' contention that the line drawn by the legislature advances two legitimate interests: public morality and public safety.[19]  The plaintiffs counter that the State cannot possibly have a legitimate rationale for requiring those convicted of the one statute, but not Prostitution, to register as sex offenders.[20]  In other words, the objectives invoked by the defendants are equally applicable to the Prostitution statute[21] and, therefore, the classification is arbitrary.  Even

---

activity...."  State of Louisiana v. Smith, 766 So.2d 501, (La. 2000)(citing State v. Phillips, 365 So.2d 1304, 1306 (La. 1978)).

[19]As to public safety, the defendants contend that "[c]onceivably, a rational person would want to know if a prospective sexual partner or the person in charge of the well being of their children has multiple convictions for Crimes Against Nature by Solicitation."  That, of course, would absurdly lead the State to also conclude that prostitution poses no threat to a child's well-being.

[20]The Supreme Court has held, albeit in a factually distinguishable context, that imposing different restrictions on those who committed the same type of offense violates the Equal Protection Clause.  Skinner v. Okla. ex rel. Williamson, 316 U.S. 535, 542 (1942)("When the law lays an unequal hand on those who have committed intrinsically the same quality of offense...it has made an invidious a discrimination as if it had selected a particular race or nationality for oppressive treatment"; "The equal protection clause would...be a formula of empty words if such conspicuously artificial lines could be drawn.").

[21]Again, in Eisenstadt the Supreme Court determined that "[i]f [public health] was the Legislature's goal, [the contraception law at issue] is not required" in light of the laws already in effect.  405 U.S. at 452.  This reasoning, insists the plaintiffs, applies equally here: because the Prostitution statute was enacted, as amended in 1977, to protect the health and safety of the general public, when the Crime Against Nature by Solicitation statute was adopted, public safety could not have been the rationale because the State already had in place the

24

assuming that it is appropriate for the Court to consider these possible legislative objectives at the Rule 12(b)(6) stage, taking the plaintiffs' well-pleaded allegations as true, as the Court is obliged to do, both of these argued objectives apply equally to the Prostitution statute, which also encompasses the solicitation of oral and anal sex acts proscribed by Crime Against Nature by Solicitation.

For all of these reasons, the Court finds that the plaintiffs have alleged a facially plausible Equal Protection claim that at this stage of the case is sufficient to withstand dismissal for failure to state a claim.  The complaint contains more than "labels and conclusions" and includes factual allegations of sufficient "heft" to set forth "a plausible entitlement to relief." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 557 (2007)(citation omitted). Accordingly, whether the State has a legitimate reason for mandating sex offender registration for one sex solicitation offense but not another, or whether such a classification is arbitrary,[22] must await a merits-inquiry.

---

Prostitution statute, which was enacted for public safety purposes and criminalized the exact same conduct.

[22]"The State may not rely on a classification whose relationship to an asserted goal is so attenuated as to render the distinction arbitrary or irrational." <u>City of Cleburne, Texas v. Cleburne Living Ctr.</u>, 473 U.S. 432 (1985)(determining that mental retardation is not a quasi-suspect classification calling for a more exacting standard of judicial review than is normally accorded to economic and social legislation, and holding that requiring a

B.  14th Amendment Substantive and Procedural Due Process

The Fourteenth Amendment prohibits a state from "depriv[ing] any person of life, liberty, or property, without due process of law."  U.S. Const., amend. 14, § 1.  This protection has been viewed as having both a procedural and substantive component when state action is challenged.  As the Fifth Circuit has observed:

> Procedural due process promotes fairness in government decisions "[b]y requiring the government to follow appropriate procedures when its agents decide 'to deprive any person of life, liberty, or property.'" Daniels v. Williams, 474 U.S. 327, 331 (1986).  Substantive due process, "by barring certain government actions regardless of the fairness of the procedures used to implement them, [ ] serves to prevent government power from being 'used for purposes of oppression.'" Id. [quotation omitted].

The John Corp. v. The City of Houston, 214 F.3d 573, 577 (5th Cir. 2000); see also Rosedale Missionary Baptist Church v. City of New Orleans, 641 F.3d 86, 89-90 (5th Cir. 2011) ("A substantive due process violation is an 'action government officials may not take no matter what procedural protections accompany them'").

1.  Substantive Due Process (Right to Privacy)

The defendants seek dismissal of the plaintiffs' substantive due process claim, contending that the plaintiffs cannot rely

_____

special use permit for proposed group home for the mentally retarded violated Equal Protection clause given that the requirement, absent any rational basis in the record for believing that group home would pose any special threat to city's legitimate interests, appeared to rest on an irrational prejudice against the mentally retarded).

solely on injury to their reputation to establish a due process violation. The plaintiffs counter that the defendants misunderstand their argument noting that, in their complaint, they clearly allege a violation of their right to privacy when the assert:

> Defendants' maintenance, administration, and enforcement of the registry law with respect to Plaintiffs, and other individuals convicted of Crime Against Nature by Solicitation, forces Plaintiffs and others to disclose their criminal convictions and status as registered sex offenders on the internet, through community notifications, and on their identification cards, without a legitimate government interest in disclosure. Where Crime Against Nature by Solicitation involves no minor victim, element of force, coercion, use of a weapon, or lack of consent, Defendants are thus violating Plaintiffs' right to avoid disclosure of highly personal matters, in violation of the Fifth and Fourteenth Amendments to the United States Constitution.

In reply, the defendants urge the Court to reject the plaintiffs' invitation to expand the right to privacy beyond that recognized by the Supreme Court and federal appeals courts. Established federal law, say defendants, trumps the plaintiffs' right to privacy claim. The Court agrees.

The substantive component of due process protects fundamental rights that are so "implicit in the concept of ordered liberty" that "neither liberty nor justice would exist if they were sacrificed." Palko v. Connecticut, 302 U.S. 319 (1937). "Fundamental rights protected by substantive due process are protected from certain state actions regardless of what procedures the state uses." Doe v. Moore, 410 F.3d 1337, 1342 (11th Cir. 2005)(citing Washington v. Glucksberg, 521 U.S. 702, 721 (1997)).

Such fundamental rights have been held to include "the rights to marry, to have children, to direct the education and upbringing of one's children, to marital privacy, to use contraception, to bodily integrity, and to abortion." <u>Washington v. Glucksberg</u>, 521 U.S. 720, 721 (1997)(citations omitted).   The Supreme Court has, however, "always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." <u>Id.</u>

To establish a substantive due process violation, a plaintiff must with particularity describe the asserted right and establish it as "deeply rooted in this Nation's history and tradition." <u>Malagon de Fuentes v. Gonzales</u>, 462 F.3d 498, 505 (5th Cir. 2006)(citations omitted).  If the right is so deeply rooted as to be fundamental, more exacting scrutiny is required; if it is not, the Court applies only rational basis review.  <u>Id.</u>

The federal appeals courts that have considered the constitutionality of state-implemented sex offender registries have determined that the registry laws do not violate a constitutionally protected right to privacy. <u>See</u>, <u>e.g.</u>, <u>United States v. Ambert</u>, 561 F.3d 1202 (11th Cir. 2009)(sex offender registry did not violate defendant's substantive or procedural due process rights); <u>Doe v. Moore</u>, 410 F.3d 1337, 1342 (11th Cir. 2005)(noting that the plaintiffs' substantive due process argument closely resembled the

28

procedural due process argument rejected by the Supreme Court, when it held in Dep't of Public Safety that no liberty interest was implicated because the Connecticut statute turned on the offender's conviction alone and not a finding of dangerousness); Doe XIV v. Mich. Dep't of State Police, 490 F.3d 491, 500 (6th Cir. 2007)(rejecting substantive due process challenge to registration requirement of sex offender registries, reiterating that "not all rights of privacy or interests in nondisclosure of private information are of constitutional dimension"); Paul P. v. Verniero, 170 F.3d 396, 405 (3d Cir. 1999)(holding that the effects of sex offender registration fail "to fall within the penumbra of constitutional privacy protection").  The plaintiffs fail to state a substantive due process claim.

    2.  14th Amendment Procedural Due Process

    The plaintiffs allege that:

> Defendants' maintenance, administration, and enforcement
> of the registry law with respect to Plaintiffs, and other
> individuals convicted of Crime Against Nature by
> Solicitation, imposes upon Plaintiffs and such others a
> state-conferred badge of infamy, that is injurious to
> reputation, and falsely implies that Plaintiffs and
> others have been convicted of a crime involving a minor
> victim, force, coercion, lack of consent, or use of a
> weapon, without due process of law, in violation of the
> Fifth and Fourteenth Amendments to the United States
> Constitution.

The defendants challenge the sufficiency of these allegations, contending that the plaintiffs' claim based on procedural due process is foreclosed by Connecticut Dep't of Pub. Safety v. Doe,

538 U.S. 1 (2003)(holding that procedural due process does not entitle an individual convicted of a sex offense to a hearing to determine whether he or she is sufficiently dangerous to be included in the state's convicted sex-offender registry where the statute requires the registration of all convicted sex offenders). The Court agrees. <u>See</u> <u>also</u>, <u>e.g.</u>, <u>Doe, XIV v. Mich. Dep't of State Police</u>, 490 F.3d 491, 502 (6th Cir. 2007)(affirming the district court's grant of summary judgment in favor of the State of Michigan, and determining that "[p]rocedural due process challenges to state sex-offender registry statutes that mandate the registration of all convicted sex offenders have been foreclosed by the Supreme Court's decision in <u>Department of Public Safety</u>"). Accordingly, because the plaintiffs' claims of due process violations fail as a matter of law, these claims must be dismissed.

D.  8th Amendment Cruel and Unusual Punishment

In their complaint, the plaintiffs allege:

Defendants' maintenance, administration, and enforcement of the registry law with respect to the plaintiffs, and other individuals convicted of Crime Against Nature by Solicitation, violates the plaintiffs' right to be free from grossly disproportionate punishment in relation to the punished conduct, namely Crimes Against Nature by Solicitation.  As applied to the plaintiffs and other individuals convicted of Crime Against Nature by Solicitation, the registry laws are cruel and unusual given reason, experience, and societal developments eliminating anti-sodomy laws and laws criminalizing non-procreative sex.  Applying and enforcing the registry law to individuals convicted of Crimes Against Nature by Solicitation is punitive in effect and furthers no legitimate governmental interest.

The defendants answer that the plaintiffs fail to make even the threshold showing that they are in fact being punished.

The Eighth Amendment forbids the imposition of "cruel and unusual punishment." U.S. Const. amend. VIII. The right protected by this Amendment, made applicable to the states by the Fourteenth Amendment, "flows from the basic 'precept of justice that punishment for crime should be graduated and proportioned to [the] offense." Roper v. Simmons, 543 U.S. 551, 560 (2005)(citations and quotations omitted).

The defendants invoke Smith v. Doe, 538 U.S. 84 (2002), in which the Supreme Court rejected a Section 1983 challenge to Alaska's sex offender registration act in which the plaintiffs contended that the law violated the Ex Post Facto clause. The Supreme Court held that the law was non-punitive and, therefore, its retroactive application did not violate the ex post facto clause. The plaintiffs would distinguish Smith v. Doe by arguing that it narrowly requires that the Court apply the intents-effects test: the Court first examines whether the legislature's intent was punitive or regulatory when it enacted the statutory scheme at issue; if the intent was punitive, the inquiry ends. See id. But even if the legislature's intent was merely regulatory, the plaintiffs contend, the Court must analyze whether the purpose or effect of the legislative scheme is so punitive that it negates the legislature's regulatory intent. See id.

The defendants insist that the legislature's intent in enacting the sex offender registry law was non-punitive; they invoke Moore v. Avoyelles Correctional Center, 253 F.3d 870, 872 (5th Cir. 2001).  In Moore v. Avoyelles Correctional Center, 253 F.3d 870, 872 (5th Cir. 2001), the plaintiff challenged Louisiana's registration requirement as a violation of the Constitution's Ex Post Facto laws.  Applying the "intents-effects" test, the Fifth Circuit held that the sex offender registration law was not punishment "even though it may bear harshly on one affected."  Id. The defendants contend that Moore is dispositive of the plaintiffs' attempt to state a violation of the Eighth Amendment.  The Court agrees.  See Smith v. Doe, 538 U.S. 84 (2003)(rejecting argument that Alaska's sex offender registration and notification law constitutes retroactive punishment forbidden by the Ex Post Facto Clause; finding, rather, that "the intent of the Alaska legislature was to create a civil, nonpunitive regime.").[23]  No case overcomes Smith or Moore, nor do the plaintiffs advance any meaningful distinctions between this case and the sweep of the case literature holding that the registry law and similar ones are non-punitive,

_____

[23]Accord Anderson v. Holder, --- F.3d ---, No. 10-5097, 2011 WL 3570013, at *2 (D.C. Cir. Aug. 16, 2011)(in affirming the district court's grant of defendants' motion to dismiss, the D.C. Circuit Court of Appeals held that D.C.'s sex offender registration requirement does not violate the Ex Post Facto Clause; in collecting analogous cases, the court noted that "the overwhelming weight of authority treats such laws as civil and nonpunitive").

32

civil regulatory enactments.[24]   Accordingly, the plaintiffs'
asserted right to relief under Section 1983 based on an Eighth
Amendment violation fails to meet the contrary weight of precedent.

IV.

Disclosure of Plaintiffs' Identities

There is no dispute that the Court must accept as true the
facts as alleged in the complaint regarding the plaintiffs'
identities.  Moreover, because all counsel seemed to agree during
oral argument that the Court need not reach this issue yet, the
defendants' motions, insofar as they request that the plaintiffs
disclose their identities (or that the Court dismiss the complaint
for failure to do so), are DENIED without prejudice.

V.

Accordingly, the defendants' motions are GRANTED in part
(insofar as the plaintiffs' claims asserted against Governor Bobby
Jindal are dismissed, and the claims based on violations of the
Eighth Amendment and the Fourteenth Amendment's Substantive and
Procedural Due Process Clause are dismissed as to all defendants)
and DENIED in part (insofar as the plaintiffs' claim based on an
alleged violation of the Fourteenth Amendment Equal Protection

---

[24]The Court notes that the Sixth Circuit rejected an
Eighth Amendment challenge to another state's sex offender registry
law.  See Cutshall v. Sundquist, 193 F.3d 466, 477 (6th Cir.
1999)(holding that "the Act does not impose punishment; it is
regulatory in nature.  Therefore, it does not violate the Eighth
Amendment's prohibition on cruel and unusual punishment.").

33

Clause survives the pleadings challenge as against all defendants, except as against Governor Bobby Jindal).

New Orleans, Louisiana, September 7, 2011

MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE