UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

AUDREY DOE, ET AL.                                    CIVIL ACTION

v.                                                    NO. 11-388

BOBBY JINDAL, ET AL.                                  SECTION "F"

ORDER AND REASONS

Before the Court is the plaintiffs' motion for summary

judgment.  For the reasons that follow, the motion is GRANTED.

**Background**

At issue in this case is a first and defining principle of

our struggle as a nation that finally resolved in the Fourteenth

Amendment to the Constitution: Equal Protection before the Law.  As

two writers[1] have observed:

> The idea was to distinguish between
> legislation for the common benefit and legislation
> that benefitted or burdened the few....  It was an
> appeal to notions of reciprocity in governance: law's
> generality was important, not simply in a formal sense
> but because it forced lawmakers to stand in the shoes
> of those they represented.  The principle of class
> legislation was terraced in both directions--it not
> only aimed to prevent class privilege but also
> invidious oppression.

Section 1 of the Fourteenth Amendment instructs that "No

State shall make or enforce any law which shall...deny to any

person within its jurisdiction the equal protection of the laws."

---

[1]V.F. Nourse and Sarah A. Maguire, *The Lost History of
Governance and Equal Protection,* 58 Duke L.J. 955, 968 (2009).

At the outset, it must be underscored that the issue presented in this case is not about approval or disapproval of sexual beliefs or mores. It is about the mandate of equality that is enshrined in the Constitution.

In Louisiana, the solicitation of oral or anal sex for compensation can be prosecuted under two different statutes: the solicitation for compensation provision of the Prostitution statute, and the Crime Against Nature by Solicitation statute.[2] Nine anonymous plaintiffs, all of whom were convicted of violating Louisiana's Crime Against Nature by Solicitation statute based on their agreement to engage in oral sex for compensation prior to August 15, 2011, bring this civil rights suit. They challenge that statute's requirement that, as a result of their conviction, they must register as sex offenders under Louisiana's sex offender registry law. They complain that if, instead, they had been convicted of solicitation of sex for money under the state Prostitution law, they would not have been required to register as

_____

[2]The solicitation provision of the Prostitution statute outlaws "[t]he solicitation by one person of another with the intent to engage in indiscriminate sexual intercourse with the latter for compensation." La.R.S. 14:82(A)(2). The Prostitution statute defines "sexual intercourse" as "anal, oral, or vaginal sexual intercourse." La.R.S. 14:82(B). The Crime Against Nature by Solicitation statute forbids "solicitation by a human being of another with the intent to engage in any unnatural carnal copulation for compensation." La.R.S. 14:89.2(A). "Unnatural carnal copulation" is also defined as oral or anal sexual intercourse. See, e.g., Louisiana v. Smith, 766 So.2d 501, 504-05 (La. 2000).

sex offenders.[3]  It is the State's more lenient treatment of those convicted under the solicitation provision of the Prostitution statute, they urge, compared to those convicted under the Crime Against Nature by Solicitation statute, that anchors their civil rights claim in which they advance their constitutional challenge under the Fourteenth Amendment to the U.S. Constitution.  They sue several State officials and one municipal official.

Louisiana's approach to punishing solicitation of sex, until recently, depended in part on the particular sex act solicited: solicitation for money of oral or anal sex.  Because the law dictated that a second-offense was a felony, if the conviction was for a Crime Against Nature by Solicitation,[4] it was punished by longer prison sentences and larger fines, and the accused also had

---

[3]They also point out that they would not have been subjected to longer prison sentences and stricter fines had they been convicted of Prostitution.  But they seek no relief regarding these harsher sentences.

[4]Until August 15, 2010, a first Crime Against Nature by Solicitation conviction was treated as a felony offense, punishable by up to five years in prison and a maximum fine of $2,000.  See La.R.S. 14:89(B)(2009).  And, until August 15, 2010, even just one Crime Against Nature by Solicitation conviction required mandatory sex offender registration.  See La.R.S. 15:541(24)(a)(2009).  After August 15, 2010, a first conviction of Crime Against Nature by Solicitation was by law no longer a felony, did not require sex offender registration, and carried identical penalties to a first solicitation of Prostitution conviction.  See 2010 La. Sess. Law Serv. Act 882 (S.B. 381).  However, the amendments were not retroactive, and thus did not benefit those individuals convicted of Crime Against Nature by Solicitation prior to August 15, 2010. And sex offender registration was still required for a second or subsequent Crime Against Nature by Solicitation conviction.

to register as a sex offender.[5] But the solicitation of

"indiscriminate sexual intercourse" (which encompasses oral and

anal, as well as vaginal sexual intercourse) has always been by law

---

[5]Before the amending Act 223 was signed into law, the Crime Against Nature by Solicitation statute, La.R.S. 14:89.2, provided:

> A. Crime against Nature by solicitation is the solicitation by a human being of another with the intent to engage in any unnatural carnal copulation for compensation.
> B. (1) Whoever violates the provisions of this Section, on a first conviction thereof, shall be fined not more than five hundred dollars, imprisoned for not more than six months, or both.
> (2) Whoever violates the provisions of this Section, on a second or subsequent conviction thereof, shall be fined not more than two thousand dollars, or imprisoned, with or without hard labor, for not more than five years, or both.
> (3) Whoever violates the provisions of this Section, when the person being solicited is under the age of seventeen years, shall be fined not more than two thousand dollars, or imprisoned, with or without hard labor, for not more than five years, or both. Lack of knowledge of the age of the person being solicited shall not be a defense.
> C. A violation of the provisions of Paragraphs B(2) and (3) of this Section shall be considered a sex offense as defined in R.S. 15:541 and the offender shall be required to register as a sex offender as provided for in Chapter 3-B of Title 15 of the Louisiana Revised Statutes of 1950.

The Louisiana Supreme Court has defined "unnatural carnal copulation" as between human beings as "refer[ing] only to two specified sexual practices: sodomy...and oral-genital activity...." State of Louisiana v. Smith, 766 So.2d 501, (La. 2000)(citing State v. Phillips, 365 So.2d 1304, 1306 (La. 1978)).

4

a misdemeanor offense when statutorily identified as Prostitution, and those convicted of solicitation of Prostitution have never been required to register as sex offenders.[6]

On February 15, 2011, these nine anonymous plaintiffs sued the defendants in their official capacities under 42 U.S.C. § 1983 to challenge the constitutionality of Louisiana's mandatory inclusion on the State's sex offender registry under the Crime Against Nature by Solicitation statute but not the Prostitution statute. They sued Governor Bobby Jindal; Attorney General James

_____

[6]Louisiana's Prostitution statute, La.R.S. 14:82, provides:

> A. Prostitution is:
> (1) The practice by a person of indiscriminate sexual intercourse with others for compensation.
> (2) The solicitation by one person of another with the intent to engage in indiscriminate sexual intercourse with the latter for compensation.
> B. As used in this Section, "sexual intercourse" means anal, oral, or vaginal sexual intercourse.
> (1) Whoever commits the crime of prostitution shall be fined not more than five hundred dollars or be imprisoned for not more than six months, or both.
> (2) On a second conviction, the offender shall be fined not less than two hundred fifty dollars nor more than two thousand dollars or be imprisoned, with or without hard labor, for not more than two years, or both.
> (3) On a third and subsequent conviction, the offender shall be imprisoned, with or without hard labor, for not less than two nor more than four years and shall be fined not less than five hundred dollars nor more than four thousand dollars....

D. Buddy Caldwell; Secretary of the Louisiana Department of Public Safety and Corrections (DPSC) James M. LeBlanc; Superintendent of the DPSC Colonel Michael D. Edmonson; Deputy Superintendent of the DPSC, Office of the State Police, Charles Dupuy; Director of the DPSC, Division of Probation and Parole, Eugenie C. Powers; Assistant Director of the DPSC, Division of Probation and Parole, Barry Matheny; Commissioner of the DPSC, Office of Motor Vehicles, Nick Gautreaux; and Superintendent of the New Orleans Police Department, Ronal W. Serpas.[7] Each of the nine plaintiffs alleges that they have been convicted of Crime Against Nature by Solicitation for agreeing to perform oral sex for money, and must register as sex offenders for 15 years, or in some cases for their lifetime, solely as a result of their Crime Against Nature by Solicitation convictions.[8] And, although the state legislature recently equalized the penalties for Crime Against Nature by Solicitation and the crime of solicitation of Prostitution,

---

[7]The defendants have pointed out that the plaintiffs name Jim Mitchell as Deputy Superintendent, but that Charles Dupuy replaced Mitchell. The defendants also point out that the plaintiffs named Kay Hodges as Commissioner of the DPSC, Office of Motor Vehicles, who has been replaced by Nick Gautreaux.

[8]Many of the plaintiffs were convicted under La.R.S. 14:89 which, after their convictions, was divided by the legislature into three separate statutes: 14:89 (crime against nature), 14:89.1 (aggravated crime against nature), and 14:89.2 (crime against nature by solicitation). This lawsuit pertains to a subsection of § 14:89.2, which creates the offense of Crimes Against Nature by Solicitation, and also imposes the registration requirements for persons convicted of the offense.

individuals (such as the plaintiffs here) convicted of Crime Against Nature by Solicitation before August 15, 2011 must continue to register as sex offenders but those convicted after August 15, 2011 do not. The change was not made retroactive.[9] Plaintiffs urge that no rational basis exists for criminally distinguishing between what is otherwise identical criminal conduct and that their constitutional right to Equal Protection of the laws continues to be violated because they remain by law subject to the sex offender registration requirements when others similarly situated are not.

The plaintiffs trace the history of the Crime Against Nature by Solicitation statute and suggest that history supports their theory that no rational basis exists for treating them differently from those convicted of participating in identical conduct under the Prostitution statute:[10] Since 1805, Louisiana's Crime Against

---

[9]The Court takes judicial notice of this revised legislation: on June 27, 2011 Governor Bobby Jindal signed House Bill 141 into law. Act. No. 223 of the 2011 Regular Session. Act 223 eliminates all differences between how Crime Against Nature by Solicitation convictions and solicitation of Prostitution convictions are treated for those convicted after August 15, 2011; thus, it removes the requirement that persons convicted on or after August 15, 2011 of Crimes Against Nature by Solicitation be required to register as sex offenders. Compare La. Rev. Stat. 14:82(C) with 2011 La. Sess. Law Serv. Act 223 (H.B. 141). The plaintiffs here, of course, do not benefit from the revised legislation that applies prospectively only and, therefore, they must continue to register as sex offenders.

[10]The Court need not consider this argument in reaching its decision. Plaintiffs draw attention to what they characterize as the State's history of bias toward gays and lesbians. But neither side seems to raise a question about whether one needs to establish animus to succeed in an Equal Protection challenge. And

Nature statute has criminalized the commission of "unnatural carnal copulation."[11]

In 1982, Louisiana expanded the Crime Against Nature statute to specifically criminalize "solicitation by a human being of another with the intent to engage in any unnatural carnal copulation for compensation."[12]  In so doing, Louisiana apparently became the first and only state in the nation to adopt a freestanding statute that specifically criminalizes offering or agreeing to engage in oral or anal sex for a fee in addition to its prostitution laws.  While other states have general provisions criminalizing solicitation and prostitution-related offenses,[13]

---

case literature is mixed.  <u>Compare</u> <u>Personnel Admin. of Massachusetts v. Feeney</u>, 442 U.S. 256 (1979) <u>with</u> <u>Eisenstadt v. Baird</u>, 405 U.S. 438 (1972); <u>see also</u> <u>Stefanoff v. Hays County, Texas</u>, 154 F.3d 523 (5th Cir. 1998).

[11]Much of the Crime Against Nature statute has been held unconstitutional by the United States Supreme Court in <u>Lawrence v. Texas</u>, 539 U.S. 558 (2003).  <u>Lawrence</u> does not speak to the solicitation of sex for money, and has little precedential force here.

[12]The Crime Against Nature by Solicitation statute was adopted in 1982.  The Prostitution statute was already in effect. 1982 La. Sess. Serv. Act 703 (H.B. 853); <u>State v. Forrest</u>, 439 So.2d 404, 407 (La. 1983).

[13]Louisiana's Prostitution statute outlaws the solicitation and commission of "indiscriminate sexual intercourse", including vaginal, oral, and anal intercourse, for compensation. Quite obviously, the scope of the Prostitution is broader –- but it also encompasses all of the sex acts criminalized by the Crime Against Nature by Solicitation statute.  This Court has previously rejected as incredible the State's argument that the challenged statute is different because it also covers bestiality.  That submission defies credulity.  <u>See</u> <u>Doe v. Jindal</u>, No. 11-388, 2011

until recently Louisiana also singled out solicitation of oral and anal sex for money for harsher punishment and for sex offender registration. This registration requirement is governed by the Registration of Sex Offenders, Sexually Violent Predators, and Child Predators law, which was enacted in 1991.[14] The registry law provides for the collection and dissemination of information about persons convicted of specifically enumerated sex offenses.[15]

_____

WL 3925042, at *8 (E.D.La. Sept. 7, 2011).

[14]La.R.S. 15:540 provides that:

> The legislature finds that sex offenders, sexually violent predators, and child predators often pose a high risk of engaging in sex offenses, and crimes against victims who are minors even after being released from incarceration...and that protection of the public from sex offenders, sexually violent predators, and child predators is of paramount governmental interest....
> Therefore, this state's policy is to assist local law enforcement agencies' efforts to protect their communities by requiring sex offenders, sexually violent predators, and child predators to register with state and local law enforcement agencies...and to authorize the release of necessary and relevant information...to the general public.

La.R.S. 15:540(A), (B).

[15]The registry law, which covers all sexual predators, imposes a number of requirements that the plaintiffs assert affect every aspect of their lives, including housing, employment, travel, access to identification documents, family life, and evacuation in the event of an emergency or natural disaster. For example, registrants must carry a state driver's license or other state identification card that brands them as a SEX OFFENDER in bright orange capital letters. All individuals on the registry must notify neighbors, landlords, employers, schools, parks, community centers, and churches that they are sex offenders. See La.R.S.

But in August 2010, the Louisiana legislature equalized the penalties associated between a first conviction for Prostitution and a first conviction of Crime Against Nature by Solicitation; the amending legislation continued to mandate that individuals convicted for Crime Against Nature by Solicitation register as sex offenders, but only as a result of a second, or subsequent, conviction.[16] (As before, however, one convicted of Prostitution, even for oral or anal sex, no matter how often, is not required to register as a sex offender.) The August 2010 amendment was not made retroactive.

The state legislature went further in amending the legislation yet again: by Act No. 223 of the 2011 Regular Session, the legislature eliminated all differences between how Crime Against Nature by Solicitation convictions and solicitation of Prostitution convictions are treated for those convicted after August 15, 2011; ironically, it removes the requirement that persons convicted on or after August 15, 2011 of Crimes Against Nature by Solicitation be required to register as sex offenders. Thus, after August 15, 2011, those convicted of Crime Against

_____

15:542(D); La.R.S. 15:542.1; La.R.S. 40:1321(J); La.R.S. 15:5543.2.

[16]Until August 2010, even a first conviction of Crime Against Nature by Solicitation triggered higher penalties and the sex offender registration requirement. A first conviction of Crime Against Nature by Solicitation, as a result of the August 15, 2010 amendments, is no longer a felony and carries with it the same penalties as a first Prostitution conviction.

Nature by Solicitation, under the new legislation, will face the same penalties as those convicted of Prostitution. Again, the August 2011 amendment was not made retroactive. These nine plaintiffs, all convicted before August 15, 2011, must remain on the registry. In asserting this Section 1983 suit, the plaintiffs advance a number of constitutional violations, but only their Fourteenth Amendment Equal Protection claim has survived the defendants' previous motion to dismiss. See Doe v. Jindal, No. 11-388, 2011 WL 3925042, at *8 (E.D.La. Sept. 7, 2011)(granting the defendants' motion to dismiss all claims against Governor Jindal and dismissing the Eighth Amendment and Substantive and Procedural Due Process claims against all defendants, but denying the defendants' motion to dismiss the plaintiffs' Equal Protection claim).[17] In pursuing their Equal Protection claim, the plaintiffs seek various forms of relief:

1.    Declare that La.R.S. 15:542(A)(1)(a) violates the ... Fourteenth Amendment[] to the United States Constitution insofar as it requires individuals convicted of Crime Against Nature to register as sex offenders;
2.    Declare that the defendants' actions violate the Plaintiffs' rights under the ... Fourteenth Amendment[] to the U.S. Constitution;
3.    Order the defendants to permanently remove the plaintiffs

_____

[17]In declining to dismiss the plaintiffs' Equal Protection claims, the Court ruled that the plaintiffs asserted plausible allegations that their rights under the Equal Protection Clause have been violated as a result of the added burden of sex offender registration imposed on the plaintiffs having been convicted under Crime Against Nature by Solicitation, where no such burden was imposed against those individuals convicted under the solicitation provision of the Prostitution statute.

from the Sex Offender and Child Predator Registry;

4.     Order the defendants to expunge all state records indicating that the plaintiffs were ever registered on the Sex Offender and Child Predator Registry;

5.     Order the defendants to alert all agencies who were provided information about the plaintiffs' registration (including courts, police departments, sheriff's departments, and the Federal Bureau of Investigation) that this information is no longer valid;

6.     Order the defendants to cease and desist from placing any individuals convicted under the Crime Against Nature on the Sex Offender and Child Predator Registry; and

7.     Award the plaintiffs' attorney's fees and costs.

The plaintiffs now seek summary judgment.

## I. Standard for Summary Judgment

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine dispute as to any material fact such that the moving party is entitled to judgment as a matter of law. No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio., 475 U.S. 574, 586 (1986). A genuine dispute of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The Court emphasizes that the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. See id. Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. Id. at 249-50 (citations omitted). Summary judgment

12

is also proper if the party opposing the motion fails to establish an essential element of his case.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party.  See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992).  Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claims.  Id.  Hearsay evidence and unsworn documents do not qualify as competent opposing evidence.  Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987).  Finally, in evaluating the summary judgment motion, the Court must read the facts in the light most favorable to the non-moving party. Anderson, 477 U.S. at 255.

## II.

As a threshold matter, before proceeding to the merits of the Equal Protection Clause challenge, the Court must be satisfied that each of the nine plaintiffs have standing to challenge the registration requirement imposed on individuals convicted of violating Louisiana's Crime Against Nature by Solicitation statute. The defendants vigorously attack the plaintiffs' standing.

Article III of the Constitution commands that a litigant must have standing to invoke the power of a federal court.  The Court's focus, in assessing standing, is on the parties' right to have the Court decide the merits of the dispute.  See Doe v. Beaumont Indep.

Sch. Dist., 240 F.3d 462, 466 (5th Cir. 2001)(citing Warth v.

Seldin, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)).

"Standing to sue must be proven, not merely asserted, in order to

provide a concrete case or controversy and to confine the courts'

rulings within our proper judicial sphere." Doe v. Tangipahoa

Parish School Bd., 494 F.3d 494, 499 (5th Cir. 2007) (noting that

"[n]o amount of creative inferences from the pretrial order or

'stipulations' can overcome [the necessary proof in the record

required to show standing]" and that the Board's failure to contest

standing cannot create jurisdiction because standing is not subject

to waiver by the parties).

　　　To establish standing, the plaintiffs must demonstrate the

"irreducible constitutional minimum of standing", which is informed

by three elements: (1) that they each personally suffered some

actual or threatened "injury in fact" (2) that is "fairly

traceable" to the challenged action of the defendants; (3) that

likely "would be redressed" by a favorable decision in Court. See

Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S.Ct.

2130, 119 L.Ed.2d 351 (1992).[18]  The Court has examined in depth the

charge sheets and court records of each of the nine plaintiffs.

---

[18] The actual injury requirement ensures that issues will
be resolved "not in the rarified atmosphere of a debating society,
but in a concrete factual context." Valley Forge Christian College
v. Americans United for Separation of Church and State, Inc., 454
U.S. 464, 472, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982).

There is no dispute,[19] and more importantly the record evidence establishes, that each plaintiff was convicted of at least one violation of La.R.S. 14:89(A)(2), which was the prior version of the Crime Against Nature by Solicitation before it was reenacted as La.R.S. 14:89.2.[20] The record confirms that each plaintiff is required to register as a result of a Crime Against Nature by Solicitation conviction; the record also establishes that those plaintiffs who must register for life must do so as a result of a second conviction for Crime Against Nature by Solicitation. By showing that they continue to be subject to the requirements of the registry law -- which imposes such burdens as paying annual registration fees; requires extensive community notification obligations; inclusion of the words "SEX OFFENDER" prominently on their driver's licenses; and adherence to separate evacuation protocols in the event of a state emergency -- the plaintiffs have shown an actual, concrete and particularized injury. They have

---

[19]The defendants concede in their papers that "[t]he plaintiffs each appear to have been convicted under La.R.S. 14:89(A)(2), which prohibited solicitation of a crime against nature."

[20]La.R.S. 14:89(A)(2) provided:

A. Crime against nature is:
    (1) The unnatural carnal copulation by a human being with another of the same sex or opposition sex or with an animal....
    (2) The solicitation by a human being of another with the intent to engage in any unnatural carnal copulation for compensation....

satisfied the first element of Article III standing.

Second, the plaintiffs must establish that their injuries are fairly traceable, or caused by, the defendants' actions. Here, there seems little doubt that the defendants are responsible for administering and enforcing the sex registry law. This places the defendants among those who contribute to the plaintiffs' harm. Because the defendants have the authority to enforce the registry law, they have significantly contributed to the plaintiffs' harm and, thus, the plaintiffs' injuries are traceable to the defendants' conduct.

Third, and finally, the Court considers redressability. "[A] plaintiff satisfies the redressability requirement when he shows that a favorable decision will relieve a discrete injury to himself. He need not show that a favorable decision will relieve his every injury." Larson v. Valente, 456 U.S. 228, 243 n.15, 102 S.Ct. 1673, 72 L.Ed.2d 33 (1982). Here, the sued officials or their successors have duties related to the enforcement of the registry law and -- if the Court were to rule in the plaintiffs' favor -- the plaintiffs would no longer be burdened with complying with the sex offender registration requirements. Therefore, an outcome in plaintiffs' favor would redress the plaintiffs' past, present, and future injuries.

Because the plaintiffs have standing, the Court turns to the

16

merits of the plaintiffs' Equal Protection claim.[21]

III.

This Court has already set forth the applicable substantive legal and constitutional requirements in its prior order regarding the defendants' earlier motion to dismiss. See Doe v. Jindal, No. 11-388, 2011 WL 3925042 (E.D.La. Sept. 7, 2011). In considering now whether the plaintiffs have shown entitlement to summary relief, however, these principles bear repeating.

*A.*

Section 1983 imposes civil liability on:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State..., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws....

42 U.S.C. § 1983. To establish a § 1983 violation, one must prove a violation of a right secured by the Constitution or laws of the United States and demonstrate that the deprivation was committed by a person acting under color of state law. Anderson v. Law Firm of Shorty, Dooley & Hall, 393 Fed.Appx. 214 (5th Cir. Aug. 26, 2010

---

[21]The defendants contest the plaintiffs' standing but they focus their argument, insisting that the Court should examine the underlying circumstances of the plaintiffs' convictions. They fail to persuade, however, why this is relevant to the plaintiffs' standing: a Crime Against Nature by Solicitation conviction is the central consideration to finding an actual injury because that is what triggers the registration requirement and the risk of an equal protection taint.

17

(citing <u>Randolph v. Cervantes</u>, 130 F.3d 727, 730 (5th Cir. 1997)).
Because § 1983 imposes liability only for violations of rights
protected by federal laws and the Constitution, "[t]he first
inquiry in any § 1983 suit...is whether the plaintiff has been
deprived of a right 'secured by the Constitution and laws.'" <u>Baker
v. McCollan</u>, 443 U.S. 137, 140 (1970).

Is summary relief appropriate on the claim that plaintiffs
have been and continue to be denied Equal Protection of the laws,
in violation of the Fourteenth Amendment of the Constitution? The
plaintiffs present their motion for summary judgment as one
presenting solely issues of law. They submit that: The
registration requirement imposed only for a Crime Against Nature by
Solicitation conviction creates a classification that has no
rational relation to any legitimate governmental interest. The
defendants counter that the Crime Against Nature by Solicitation
and Prostitution statutes punish different conduct differently,
that this Court is bound by the Louisiana Supreme Court's
interpretation of the two statutes at issue, and that a rational
basis can be found for the registration requirement imposed only on
individuals convicted of Crime Against Nature by Solicitation.

*B.*

To repeat for emphasis, the Equal Protection Clause of the
Fourteenth Amendment of the Constitution clearly and directly
commands that no State shall "deny to any person within its

18

jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. This is "essentially a direction that all persons similarly situated should be treated alike." City of Cleburne, Texas v. Cleburne Living Center, 473 U.S. 432, 440 (1985)(citation omitted); John Corp. v. City of Houston, 214 F.3d 573, 577 (5th Cir. 2000)(citation omitted)("The Equal Protection Clause protects individuals from governmental action that works to treat similarly situated individuals differently."); Stoneburner v. Secretary of the Army, 152 F.3d 485, 491 (5th Cir. 1998)(citation omitted)("The Equal Protection Clause...essentially directs that all persons similarly situated be treated alike."). However, "if a law neither burdens a fundamental right nor targets a suspect class," the Supreme Court has observed, "the legislative classification [will survive] so long as it bears a rational relation to some legitimate end." Romer v. Evans, 517 U.S. 620, 631 (1993)(citing Heller v. Doe, 509 U.S. 312, 319-20 (1993)); City of Cleburne, Texas v. Cleburne Living Ctr., 473 U.S. 432, 440 (1985)("The general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest.").[22] So that is

---

[22]City of Cleburne, Texas v. Cleburne Living Ctr., 473 U.S. 432, 439-40 (1985)("Section 5 of the Amendment empowers Congress to enforce this mandate, but absent controlling congressional direction, the courts have themselves devised standards for determining the validity of state legislation or other official action that is challenged as denying equal protection.").

the test, as previously posed by this Court: Is there a rational
relation (basis) for the sex offender registration requirement
mandated by a conviction under the Crime Against Nature by
Solicitation statute, if its every prohibited act is also
prohibited by the Prostitution statute and does not similarly
require sex offender registration?

When conducting rational basis review, the Supreme Court has
observed that "we will not overturn such [government action] unless
the varying treatment of different groups or persons is so
unrelated to the achievement of any combination of legitimate
purposes that we can only conclude that the [government's] actions
were irrational." Kimel v. Florida Bd. of Regents, 528 U.S. 62, 84
(2000)(citing Vance v. Bradley, 440 U.S. 93, 97 (1979)). Where, as
here, the challenged classification is presumptively rational, "the
individual challenging its constitutionality bears the burden of
proving that the 'facts on which the classification is apparently
based could not reasonably be conceived to be true by the
governmental decisionmaker.'" Id. (citing Bradley, 440 U.S. at
111). In this regard the defendants' explanation for this
legislative model is an empty one in the face of plaintiffs'
challenges and the clarity of the constitutional infirmity.

To prove an Equal Protection violation, and thereby satisfy
their burden of proving a Constitutional violation sufficient to
warrant § 1983 relief, the plaintiffs must show that they have been

treated differently by the state from others similarly situated, and that there is no rational basis for the difference in treatment. <u>Stoneburner</u>, 152 F.3d at 490 (citations omitted). They have done so as a matter of law. The plaintiffs contend that they have demonstrated a violation of the Equal Protection Clause: they observe that an examination of the two statutes reflects that they treat differently identically-situated individuals, because plaintiffs are required to register as sex offenders simply because they were convicted of Crime Against Nature by Solicitation, rather than solicitation of Prostitution (conduct chargeable by and covered under either statute). Plaintiffs draw the conclusion that the statutory classification drawn between individuals convicted of Crime Against Nature by Solicitation and those convicted of Prostitution is not rationally related to achieving any legitimate state interest.[23] The Court agrees.

The plaintiffs contend that their Equal Protection claim turns on the obvious situation that, because the Crime Against Nature by Solicitation and the solicitation provision of the Prostitution statute have identical elements and punish, as to

---

[23]The parties concede that no fundamental right has been infringed, nor any suspect classification is involved; accordingly, the parties agree that the classification need only bear a rational relationship to some legitimate objective. Again, "[r]ational basis scrutiny requires only that the classification rationally promote a legitimate governmental objective." <u>Stefanoff v. Hays County, Texas</u>, 154 F.3d 523, 525 (5th Cir. 1998)(per curiam)(citation omitted).

them, identical conduct, the State cannot point to any constitutionally acceptable rationale for requiring those convicted of Crime Against Nature by Solicitation, but not Prostitution, to register as sex offenders. The plaintiffs correctly lean heavily on Eisenstadt v. Baird, 405 U.S. 438, 454 (1972), which they argue supports their assertion that the State cannot have a legitimate interest in imposing a sanction on one group of people and not another when the "evil, as perceived by the State, [is] identical." The Court finds that Eisenstadt supports their contentions and is binding here.

In Eisenstadt, the Supreme Court invalidated a Massachusetts law that criminalized the distribution of contraception to unmarried persons because of the different statutory treatment of married persons, who were allowed access to contraception. Id. at 440-43. In so doing, the high court rejected various arguments that the government offered for treating these groups differently. The Court announced that "whatever the rights of the individual to access to contraceptives may be, the rights must be the same for the unmarried and the married alike." Id. at 453. Those words resonate here. For example, the Supreme Court rejected the asserted public health purpose of the law, on the ground that such a purpose would apply equally to married people not subject to the restriction and, also, that any concern over the dangerousness of the contraceptives themselves was already addressed by federal and

state public health regulations in place.  <u>Id.</u> at 452.  In holding that criminally outlawing the distribution of contraceptives to unmarried persons but not the distribution to married persons violated the Equal Protection Clause, the Supreme Court explained: "the evil, as perceived by the State, would be identical, and the underinclusion would be invidious."[24]  <u>Eisenstadt</u> reaches far into this dispute and the State unconvincingly seeks to run from it.

The Court finds that the plaintiffs have demonstrated entitlement to judgment as a matter of law: First, the State has created two classifications of similarly (in fact, identical) situated individuals who were treated differently (only one class is subject to mandatory sex offender registration).[25]  Second, the

---

[24]The Supreme Court further observed:

> [N]othing opens the door to arbitrary action so effectively as to allow [government] officials to pick and choose only a few to whom they will apply legislation and thus to escape the political retribution that might be visited upon them if larger numbers were affected.  Courts can take no better measure to assure that laws will be just than to require that laws be equal in operation.

<u>Id.</u> (quoting <u>Ry. Express Agency v. New York</u>, 336 U.S. 106, 112-13 (1949)).

[25]Simply comparing the statutes demonstrates the inequality: a defendant convicted of Crime Against Nature by Solicitation is a "sex offender" as defined by the registry law and such a conviction is a "sex offense", which mandates registration for 15 years (to life) under the registry law, although no individual convicted of solicitation of Prostitution is ever defined as a "sex offender" and, therefore, has never been required to register as such.

classification has no rational relation to any legitimate government objective: there is no legitimating rationale in the record to justify targeting only those convicted of Crime Against Nature by Solicitation for mandatory sex offender registration. The defendants' arguments fail, as the similar ones did under Eisenstadt. The very same public health and moral purposes apply to both statutes.

The defendants acknowledge that the plaintiffs, "[w]ith regard to the registration requirement, ... seek to be treated 'equal' to people convicted of prostitution"; nonetheless, the defendants reassert some arguments that this Court has already rejected.[26] They also assert some new ones. The defendants contend that the plaintiffs' Equal Protection claim is barred by Heck v. Humphrey, 512 U.S. 477 (1994) because "a finding that the co-existence of CANS and prostitution statutes violates the Fourteenth Amendment necessarily implies the invalidity of plaintiffs' CANS convictions and, thus, is barred." This argument is wholly without merit, as is the reliance on Heck. Unlike Heck v. Humphrey, the plaintiffs do not ask the Court to upset their convictions. They do not claim innocence. In Heck, an inmate claimed his conviction was invalid because of an unlawful investigation and destruction of

---

[26]Thankfully, the defendants do not reintroduce their argument, rejected by this Court, that the Prostitution and Crime Against Nature by Solicitation statutes punish different types of conduct because the latter also covers bestiality.

evidence.  Neither <u>Heck</u>'s facts or doctrine apply here.

The defendants next contend that persons convicted of Crime Against Nature by Solicitation are not similarly situated to persons convicted of Prostitution and, thus, state law has created no impermissible classification.  In support of their argument that the Crime Against Nature by Solicitation and Prostitution statutes punish different conduct differently, the defendants invoke the Louisiana Supreme Court case of <u>State v. Baxley</u>, 656 So.2d 973 (La. 1995), and mistakenly argue that this Court is bound by the state high court's interpretation of the statutes at issue.

The plaintiffs respond that <u>Baxley</u> was limited to a finding that it does not "facially punish homosexuals more severely than heterosexuals", whereas the plaintiffs' Equal Protection claim here is premised upon the classification that exists between individuals convicted of Crime Against Nature by Solicitation and those convicted under the solicitation provision of the Prostitution statute.  That question, whether a classification exists between these two groups, this Court concludes, was not reached by the Louisiana Supreme Court in <u>Baxley</u>.[27]

_____

[27]And whether a state court can bind a federal court regarding the U.S. Constitution seems novel at best.  This Court has already determined that the plaintiffs have plausibly claimed that the conduct being punished is the same such that those convicted under either statute are identically-situated, but one group is singled out for sex offender registration.  Any contention to the contrary -- to the extent it relies on the "distinctions" between "unnatural carnal copulation" and "indiscriminate sexual intercourse" -- is an exercise that is without substance.  This is

25

In <u>State v. Baxley</u>, the Louisiana Supreme Court rejected a state constitutional challenge that the Crime Against Nature by Solicitation statute punished homosexuals more harshly than heterosexuals; the state high court narrowly found that both the Crime Against Nature by Solicitation and the Prostitution statutes facially apply to homosexuals and heterosexuals equally. <u>Id.</u> (noting that the two statutes "simply punish two types of conduct differently"). That narrow setting provides no guide here. Also it seems useful to repeat that the state high court's analysis was limited to the state constitution and this Court is no less empowered to hear this federal constitutional challenge. "It is well established," it is instructive to note, "that a state court's interpretation of its statutes is binding on the federal courts unless a state law is inconsistent with the federal Constitution." <u>See</u> <u>Hangarter v. Provident Life & Accident Ins. Co.</u>, 373 F.3d 998, 1012 (9th Cir. 2004); <u>see also</u> <u>Lundy v. Mich. State Prison Bd.</u>, 181 F.2d 772, 773 (6th Cir. 1950)("Interpretation of a state statute by the highest court of the state is binding upon United States, unless in contravention of the Constitution of the United States or

---

particularly so in these circumstances, in which solicitation with the intent to engage in oral or anal sex for money are required elements of both statutes, and the Louisiana Supreme Court has defined "unnatural carnal copulation" as between human beings as "refer[ing] only to two specified sexual practices: sodomy...and oral-genital activity...." <u>State of Louisiana v. Smith</u>, 766 So.2d 501, (La. 2000)(citing <u>State v. Phillips</u>, 365 So.2d 1304, 1306 (La. 1978)).

of some federal statute.").

The defendants also urge that the plaintiffs are not similarly situated to prostitutes because they have submitted no evidence regarding the underlying circumstances of their convictions. That argument conveniently ignores that the straightforward comparison for the plaintiffs, for Equal Protection purposes, is with those convicted of solicitation of Prostitution.

Finally, focusing again in their search for a rational basis, the defendants assert that requiring sex offender registration protects the public's safety, health, and welfare. They insist that conviction is an imperfect indicator of the underlying charge and, because Crime Against Nature by Solicitation is a lesser offense to which other registrable offenses can be pleaded down to, it is possible that prosecutors pleaded down "more heinous" solicitation charges (such as solicitation of persons under 17, human trafficking, and intentional exposure to the AIDS virus if the exposure occurred during the course of a commercial sex act). The Court has no duty to indulge such patent hypothetical speculation; no suggestion exists in the record that the state legislature's purpose for requiring those convicted of Crime Against Nature by Solicitation to register as sex offenders was anchored to a legislative desire that prosecutors plead down other registrable offenses. The defendants add that requiring individuals convicted of Crime Against Nature by Solicitation

protects public morality. But the Court has already observed that public health and moral concerns apply equally to prostitution.[28] The defendants fail to credibly serve up even one unique legitimating governmental interest that can rationally explain the registration requirement imposed on those convicted of Crime Against Nature by Solicitation. The Court is left with no other conclusion but that the relationship between the classification is so shallow as to render the distinction wholly arbitrary.[29] <u>See City of Cleburne, Texas v. Cleburne Living Ctr.</u>, 473 U.S. 432, 446 (1985).

For all of these reasons, stripped of all political theater and with a concern solely to fidelity to the simple and clear

---

[28]It is an obvious implication of just this sort of rhetorical musing that explains the defendants' failed search for a legitimating purpose: for example, the state legislature in amending the law effective August 15, 2011 removed the registration requirement for those convicted of Crime Against Nature by Solicitation, admittedly "equalizing" the consequences of conviction between that and the Prostitution statute. That is the point: for those convicted before August 15, 2011, the burden remains unequal and any articulated purpose cannot explain the distinction because any rationale must logically apply also to those convicted of soliciting anal or oral sex under the Prostitution statute. It seems clear and the Court stresses that no Equal Protection claim would exist here if the Louisiana legislature had determined that sex offender registration would be mandated for <u>all</u> individuals who are convicted of performing oral or anal sex for money.

[29]The inquiry is, of course, whether the burden imposed on individuals convicted of Crime Against Nature by Solicitation is justified by any asserted legislative purpose. There is no other legislative purpose in the record or otherwise asserted that would support imposing the registration requirement only on those individuals convicted of Crime Against Nature by Solicitation.

injunction of the Fourteenth Amendment, the Court finds that the plaintiffs have demonstrated that the record, taken as a whole, leads to no rational basis for what the state legislature has done.[30] The record discloses no genuine dispute as to any material fact: the plaintiffs have shown that they are entitled to judgment as a matter of law that they have been deprived of equal protection of the laws in violation of the Fourteenth Amendment to the U.S. Constitution. Accordingly, the plaintiffs' motion for summary judgment is GRANTED. The plaintiffs shall submit a proposed judgment within five days consistent with this Order and Reasons.

New Orleans, Louisiana, March 29, 2012

MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

---

[30]The Supreme Court has held, albeit in a factually distinguishable context, that imposing different restrictions on those who committed the same type of offense violates the Equal Protection Clause. Skinner v. Okla. ex rel. Williamson, 316 U.S. 535, 542 (1942)("When the law lays an unequal hand on those who have committed intrinsically the same quality of offense...it has made an invidious a discrimination as if it had selected a particular race or nationality for oppressive treatment"; "The equal protection clause would...be a formula of empty words if such conspicuously artificial lines could be drawn.").