UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

_____
:
AUDREY DOE, et al.,                 :
                                    :
Plaintiffs,                         :
                                    :
        v.                          :       Civil Action No. 11-00388
                                    :       (MLCF) (ALC)
BOBBY JINDAL, et al.,               :
                                    :
Defendants.                         :
                                    :
_____ :

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO SET ATTORNEYS' FEES AND COSTS PURSUANT TO
42 U.S.C. § 1988 AND FED. R. CIV P. 54(d)**

Plaintiffs AUDREY DOE, *et al.*, through undersigned counsel, hereby move the Court to set an award of reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and Fed. R. Civ. P. 54(d).

**I.  Background**

On February 16, 2011, Plaintiffs, proceeding anonymously, filed this action challenging the requirement that individuals convicted of Crime Against Nature by Solicitation ("CANS") pursuant to La. R.S. §14:89 (A)(2) or La. R.S. §14:89.2 register as sex offenders under the Louisiana Registration of Sex Offenders, Sexually Violent Predators, and Child Predators Act, La. R.S. § 15:540 *et seq.* ("Registry Law"), for periods of 15 years to life where no such requirement is imposed on individuals convicted under the solicitation provision of Louisiana's Prostitution statute, La. R.S. §14:82, and where both statues reach identical conduct and require proof of identical elements.

On September 7, 2011, Plaintiffs successfully defeated state and municipal Defendants' motions to dismiss their claims in their entirety on both substantive and procedural grounds. Rec. Doc. 59, *Doe v. Jindal*, 11cv0388, 2011 U.S. Dist. LEXIS 100408 (E.D. La. Sep. 7, 2011). On March 29, 2012, the Court granted summary judgment in Plaintiffs' favor, declaring the sex offender registration requirement for individuals convicted of CANS unconstitutional and ordering Plaintiffs to submit a proposed judgment. Rec. Doc. 103, *Doe v. Jindal*, 11cv0388, 2012 U.S. Dist. LEXIS 43818 (E.D. La. March 29, 2012).

On April 11, 2012, the Court entered judgment ordering Defendants to cease and desist from placing any individuals convicted of CANS on the Louisiana Sex Offender and Child Predator Registry ("SOCPR") and to remove plaintiffs from the Registry within 30 days. Rec. Doc. 106, attached hereto as Exhibit A. The judgment awarded Plaintiffs all of the injunctive relief sought in the Complaint, and specifically provided that "costs and fees shall be awarded by the Court upon application by the Plaintiffs pursuant to Federal Rule of Civil Procedure 54(d) and 42 U.S.C. § 1988." *Id*. at ¶ 10.

Having sought without success to resolve the matter of fees and costs without the necessity of intervention by the Court,[1] Plaintiffs hereby move this Court to set an award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and Fed. R. Civ. P. 54(d) in the amount of $349,679 in attorneys' fees and $13,386 in costs.

---

[1] On May 4, 2012, at Defendants' invitation, after trimming hundreds of hours expended on this litigation and thousands of dollars in costs which would otherwise have been assessed to plaintiffs in private litigation, Plaintiffs made a demand on Defendants of $400,029.50 in attorneys' fees and $21,568 in costs and expenses reasonably necessary to the litigation. On May 9, 2012, Defendants responded by offering to pay Plaintiffs $100,000 in attorneys' fees and $370 in costs. On May 24, 2012, Plaintiffs countered by offering to settle the matter of attorneys fees and costs for a total of $335,000 inclusive of costs. Defendants' last response to Plaintiffs' counter offer was a suggestion that Plaintiffs "go ahead and file the motion." Accordingly, Plaintiffs now ask the Court to set an award of attorneys' fees and costs in an amount that roughly corresponds to their last counter offer to Defendants, plus fees reasonably necessary to the preparation of the instant motion and the full amount of costs.

Under 42 U.S.C. § 1988, a prevailing party in a civil rights case is entitled to an award of reasonable attorneys fees for litigating claims arising under 42 U.S.C. § 1983. "Plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefits the parties sought in bringing the suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). "A plaintiff prevails if the relief obtained, through judgment or settlement, materially alters defendants' behavior in a way directly benefitting the plaintiff," and "the lawsuit is a 'substantial factor' or a significant catalyst in motivating the defendants to end their unconstitutional behavior." *Watkins v. Fordice*, 7 F.3d 453, 456 (5th Cir. 1993). It is beyond question that, having obtained the entirety of the relief sought in the Complaint by judgment entered in this litigation, Plaintiffs are prevailing parties in this action. *See also* Exhibit A, ¶ 10.

## II. Calculation of Fees

Both the legislature and the Courts have stated that the purpose of 42 U.S.C. § 1988 is "to ensure effective access to the judicial process for persons with civil rights grievances." *Hensley*, 461 U.S. at 429. The amount of the fees and costs to be awarded pursuant thereto is set at the discretion of the District Court, based on the facts and circumstances of each case. *Id*.

The two step procedure by which awards of attorneys' fees and costs are assessed is well established in this Circuit. The number of hours reasonably expended in litigation is multiplied by a reasonable hourly rate for attorneys of comparable experience in the community to arrive at the "lodestar" figure. *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 323-24 (5th Cir. 1995) (*citing Hensley*, 461 U.S. at 433-34); *Watkins*, 7 F.3d at 457; *Shipes v. Trinity*, 987 F.2d 311, 319-320 (5th Cir. 1993); *Hornbeck Offshore Services, L.L.C. v. Salazar*, 10cv1663, 2011 U.S. Dist. LEXIS 59846 *14-17 (E.D. La., June 1, 2011) *adopted and app'd* at 2011 U.S. Dist.

LEXIS 59798 (E.D. La. June 6, 2011). The lodestar amount is presumptively reasonable and should be modified only in exceptional cases. *Louisiana Power & Light Co.*, 50 F.3d at 323-24; *Watkins*, 7 F.3d at 457; *Hernandez v. U.S. Customs and Border Protection Agency*, 10cv04602, 2012 U.S. Dist. LEXIS 14290 at *49 (E.D. La., Feb. 6, 2012); *Hornbeck Offshore Services, L.L.C.*, 2011 U.S. Dist. LEXIS 59846 at *17.

The factors to be considered when determining a reasonable award of attorneys' fees and costs were enumerated by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, and adopted by the U.S. Supreme Court in *Hensley*: (1) the time and labor required; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount of money involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson v. Georgia Highway Express, Inc.*, 488 F.3d 714, 717-18 (5th Cir. 1974). Upon consideration of these twelve factors, the lodestar amount may be adjusted upward or downward to the extent that the factor was not already subsumed in the lodestar calculation. *Shipes v. Trinity*, 987 F.2d at 320; *Watkins v. Fordice*, 7 F.3d at 457; *Hornbeck Offshore Services*, 2011 U.S. Dist. LEXIS 59846 at *15-16.

A. **Lodestar Amount**

Plaintiffs hereby seek an award of attorneys' fees in the amount of $349,679, which reflects a total of 1165.28 hours reasonably expended by attorneys William Quigley, Alexis Agathocleous, Andrea J. Ritchie, Davida Finger, and Sunita Patel in this matter, including

4

preparation of the instant motion, multiplied by rates reasonable and customary for attorneys of their experience and expertise in New Orleans. The amount sought excludes numerous hours of work undertaken on the case by attorneys from the law firm of Cleary Gottlieb Steen & Hamilton, as well as additional hours expended by the above-referenced attorneys prior to being formally retained by Plaintiffs, and reflects a substantial across-the-board 15% reduction in fees to account for any potential duplication in work performed by Plaintiffs' counsel.

    1. *The number of hours requested is reasonable.*

Billing records for each of these attorneys are appended to their declarations at Exhibits B-F. In calculating these hours, counsel guarded against unnecessary labor and duplication of effort - indeed, given the uphill battle they faced in advancing novel legal theories in a case for which the likelihood of fee recovery was far from certain, there was no incentive to expend hours on work that was redundant or not reasonably necessary to advance the litigation. While in some instances, where reasonable and necessary, attorneys billed for simultaneous activities such as conference calls, strategy meetings, and court appearances, where appropriate, tasks were divided among counsel in the interests of efficiency.

Plaintiffs' counsel further exercised billing judgment by: (1) relinquishing their claim to fees in the amount of $112,154, reflecting 574 hours reasonably expended by attorneys and paralegal staff at the firm of Cleary Gottlieb Steen & Hamilton conducting legal research, drafting discrete portions of the Plaintiffs' opposition to Defendants' motion to dismiss, and conducting a substantive review of all pleadings in this matter;[2] (2) cutting over 100 hours

---

[2] These fees were included in the original fee demand of $400,000 made to Defendants, which reflected an across the board 30% duplication deduction for all of Plaintiffs' attorneys' hours. Given the elimination of a significant number of potentially duplicative hours achieved by taking the hours expended by Cleary attorneys out of the equation entirely, the remaining Plaintiffs' counsel have reduced the percentage across the board deduction to account for duplication accordingly from 30% to 15%.

expended researching legal claims, developing the case, and drafting the Complaint prior to being formally retained by Plaintiffs in this action in October of 2010; (3) eliminating dozens of hours expended in legislative advocacy and media relations which advanced the goals of the litigation by achieving a legislative remedy for individuals convicted of CANS after August 15, 2011; and (4) cutting hours counsel expended to edit Plaintiffs' memorandum of law in response to Defendants' motion to dismiss in light of the Court's denial of Plaintiffs' motion for excess pages.

Each attorney further exercised billing judgment by individually deducting hours expended on drafting, reviewing, and editing pleadings, communicating with clients, and consulting with co-counsel so as to further account for duplication of effort. *See Hornbeck Offshore Services*, L.L.C. 2011 U.S. Dist. LEXIS 59846 at *46 ("Attorneys must exercise billing judgment by writing off unproductive, excessive, or redundant hours when seeking attorneys' fees awards.") (internal quotations omitted). For example, Plaintiffs' counsel Alexis Agathocleous excluded over 220 hours expended researching potential claims, working up the case, and drafting the Complaint. Likewise, Plaintiffs' counsel Andrea J. Ritchie excluded over 100 hours spent researching potential claims, working up the case, and drafting and reviewing the Complaint, and 25 hours expended researching issues relating to maintaining Plaintiffs' anonymity. Similarly, Plaintiffs' counsel William P. Quigley excluded 67 hours expended on the case.

Notwithstanding these economies of effort and exercises of billing judgment, the attached billing records reflect a further 15% across the board deduction to account for any hours

expended that were duplicative of the work of other attorneys.[3] *See Hensley*, 461 U.S. at 434 (attorneys should "make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary…"); *Hornbeck Offshore Services L.L.C.*, 2011 U.S. Dist. LEXIS 59846 at *46 ("All time that is excessive, duplicative or inadequately documented should be excluded."). A 15% across-the-board reduction to Plaintiffs' lodestar falls well within the range that courts accept to account for duplicative attorney work. *See Hornbeck Offshore Services*, 2011 U.S. Dist. LEXIS 59846 at *47 (citing cases in which across the board cuts of 10-25% were imposed for duplicative work, inadequacy of time entries, and failure to exercise billing judgment).

Accordingly, the total number of hours for which plaintiffs now seek an award of attorneys' fees in this matter is reasonable.

2. *The requested hourly rates are reasonable*

A reasonable hourly rate is established based on prevailing community standards for attorneys of similar experience in similar cases in the community where the litigation is brought. *Shipes*, 987 F.2d at 319. Courts will award the rate customarily charged by an attorney provided it is within the market rate charged by attorneys of comparable skill and expertise in the community. *Louisiana Power and Light Co*, 50 F.3d at 328; *see also*, *Hornbeck Offshore Services, L.L.C.*, 2011 U.S. Dist. LEXIS 59846 at *24 ("An attorney's requested hourly rate is *prima facie* reasonable when the attorney requests that the lodestar be computed at his or her customary billing rate, the rate is within the range of the prevailing market rates, and the rate is not contested."). "Generally, the reasonable hourly rate for a particular community is established through affidavits of other attorneys practicing there." *Hornbeck Offshore Services*, 2011 U.S.

---

[3] With the exception of hours billed by William Quigley, who had already deducted the vast majority of hours expended on the litigation. *See* Quigley Aff., Ex.B, ¶ 16.

Dist. LEXIS 59846 at *27.  Applying these standards to the case at bar, the fee award requested by Plaintiffs is both reasonable and customary.

Plaintiffs seek compensation for the work of attorney William P. Quigley at the rate of $450 an hour. This rate is admittedly at the very top end of the standard rates for attorneys in New Orleans. *See Hornbeck Offshore Services*, *L.L.C.*, 2011 U.S. Dist. LEXIS 59846 at *28. However, it is undisputed that Mr. Quigley is a civil rights attorney of the highest caliber, and commands the utmost respect from members of the both the bar and bench in New Orleans and beyond. He has 35 years of experience practicing in various capacities in this jurisdiction, and has successfully litigated dozens of actions vindicating voting rights, housing rights, prisoners' rights, the right to access to justice and the courts, the right to education, economic rights, and rights guaranteed by the First Amendment, fully dedicating his practice to civil rights litigation throughout his long and storied career. *See* Quigley Aff., Ex. B ¶¶ 2, 6-10. He served as General Counsel for the ACLU of Louisiana for 20 years, and taught many generations of New Orleans attorneys as a Professor of Law at Loyola University Law School for over two decades. *Id*. ¶¶ 9, 11. As set forth in the declarations of attorneys Mary E. Howell, Katie Schwartzmann, and Carol Kolnichak, attached hereto as Exhibits G-I, respectively, $450 is within the range of rates charged by and awarded to attorneys in the New Orleans area with comparable skill, experience, and expertise. Mr. Quigley provided invaluable insights and advice to Plaintiffs' counsel at critical junctures throughout the litigation, and attended all hearings and arguments in the case. The total lodestar amount for services performed by Mr. Quigley is $ 11,137.50 ($450 x 24.75). Quigley Aff., Ex. B ¶¶ 16-18.

Plaintiffs seek compensation for the work of Alexis Agathocleous, Andrea J. Ritchie, and Davida Finger at the rate of $300 an hour, which is consistent with fees charged by and awarded to attorneys with 10 years of litigation experience in civil rights matters in New Orleans.

Mr. Agathocleous has litigated a number of high profile cases pursuant to 42 U.S.C. § 1983 on behalf of prisoners, immigration detainees, and journalists, and has dedicated his career to protecting and vindicating the constitutional rights of criminal defendants and individuals convicted of criminal offenses. He has been a staff attorney at the Center for Constitutional Rights since 2009, and previously was the founding director of the Reinvestigation Project at the Office of the Appellate Defender in New York City. Agathocleous Aff., Ex. C, ¶¶ 4-5. A graduate of Yale Law School who earned his undergraduate degree *magna cum laude* from Brown University, he is the recipient of numerous honors and prestigious fellowships. *Id*. at ¶¶ 2, 6.

Mr. Agathocleous served as lead counsel in this matter, playing a central role in development of plaintiffs' legal theories, performing the lion's share of the legal research and drafting of the Complaint, and undertaking the overall coordination of the case. He also coordinated and drafted significant portions of Plaintiffs' response to State defendants' motion to dismiss, and was the principal author of the supplemental briefing thereon, as well as of Plaintiffs' successful motion for summary judgment. Mr. Agathocleous argued all substantive motions before the Court. *Id*. at ¶ 9. Plaintiffs seek an award of $155,502 for Mr. Agathocleous' work on this case (518.34 hours x $300).

Ms. Ritchie has been a solo practitioner in the Southern District of New York since 2004, focusing on litigation pursuant to 42 U.S.C. § 1983 challenging governmental misconduct against women and lesbian, gay, bisexual and transgender people. Ritchie Aff., Ex. D at ¶ 3. She

9

serves as lead counsel in complex impact litigation challenging the New York City Police Department's (NYPD) pattern and practice of subjecting transgender and gender nonconforming people to unlawful searches, and has successfully litigated multiple Fourth and Fourteenth Amendment claims against the NYPD. *Id*. at ¶¶ 7, 8. She has also testified before the United Nations on a number of occasions concerning legal remedies available under § 1983, and is a published author and recognized expert in criminal justice matters. *Id*. at ¶ 10. Ms. Ritchie served as Director of the Sex Workers Project at the Urban Justice Center in 2009 and now directs Streetwise and Safe, an organization focused vindication of the rights of LGBT youth in the criminal legal system. *Id*. at ¶¶12-13. She graduated *magna cum laude* from Howard University School of Law and clerked for the Honorable Emmet G. Sullivan of the U.S. District Court for the District of Columbia. *Id*. at ¶¶ 4-5.

Playing the role of second chair throughout the litigation, Ms. Ritchie shared equally in the development of the theory of the case, played an instrumental role in the development and implementation of the overall litigation strategy throughout, as well as the investigation of the case and selection of plaintiffs. Additionally, Ms. Ritchie was primarily responsible for research, pleadings and argument concerning questions relating to maintaining Plaintiffs' anonymity, and for negotiation of the extensive protective order entered in this case. She also performed legal research which informed drafting of the complaint, researched and drafted discrete portions of Plaintiffs' response to State defendants' motion to dismiss, and made substantive contributions to all pleadings in the case. *Id*. at ¶16. Plaintiffs seek an award of $129, 663 for Ms. Ritchie's work on this case (432.21 x $300).

Davida Finger is an award-winning clinical Law Professor at Loyola University School of law with extensive litigation experience in housing rights, First Amendment Rights, consumer

rights, land use and environmental law, and administrative matters relating to post-Katrina disaster relief. Finger Aff., Ex. E, ¶¶ 5-8, 10-11. In the course of her successful decade long legal career she has obtained multi-million dollar verdicts on behalf of individual plaintiffs and class members as well as broad ranging injunctive and systemic relief. *Id.* ¶ 10. As local counsel in this action, Ms. Finger played an integral role in investigation and factual development of the case and ongoing client relations, performed essential legal research on issues of Louisiana law, played a leadership role in legislative advocacy, and made critical contributions to the overall development and implementation of Plaintiffs' litigation strategy. Plaintiffs seek an award in the amount of $35,392 for Ms. Finger's work in this case (117.64 x $300).

Plaintiffs seek compensation for the work of Sunita Patel, staff attorney at the Center for Constitutional Rights, at the rate of $250 an hour. Ms. Patel is a Tulane graduate who earned a *juris doctor* from Washington College of Law at American University *magna cum laude* and clerked for the Honorable Ivan L.R. Lemelle, United States District Judge for the Eastern District of Louisiana. Patel Aff., Ex. F, ¶¶ 3-4. Since 2009 she has focused her practice on litigation pursuant to 42 U.S.C. § 1983, serving as counsel in complex class action litigation challenging the New York City Police Department's discriminatory stop and frisk practices, as well as actions challenging discriminatory immigration enforcement practices. *Id.* at ¶¶ 5-6. Ms. Patel performed research essential to the drafting of the Complaint and defense against defendants' motion to dismiss, drafted discrete portions of Plaintiffs' opposition to State defendants' motion to dismiss, and played a key role in development and implementation of overall litigation strategy. Plaintiffs seek an award of $18,065 for Ms. Patel's work in this case (72.34 x $250).

There is precedent in the Eastern District of Louisiana for the hourly rates Plaintiffs' counsel seek here. A senior partner with 37 years of experience was awarded $425 an hour by

this Court in *Hornbeck Offshore Services*, 2011 U.S. Dist. LEXIS 59846 at *28 (highest reasonable rate in this District is $450 an hour). In *Hernandez v. U.S. Customs and Border Protection Agency*, 10cv04602, 2012 U.S. Dist. LEXIS 14290 *48 (E.D. La., Feb. 6, 2012) (Barbier, J.), the Court awarded $300 an hour to an attorney with 8 years of experience. Plaintiffs seek equivalent awards for attorneys with two additional years of experience. In *Cavaretta v. Entergy Corp. Companies Benefits Long Term Disability Plan*, the court awarded an attorney with five years' litigation experience an hourly rate of $225 in an ERISA matter. *Cavaretta v. Entergy Corp. Companies Benefits Long Term Disability Plan*, 03cv1830, 2005 U.S. Dist. LEXIS 8028 at *5, (E.D. La. April 29, 2005)(Duval, J.). Notwithstanding the 8 years which have elapsed since *Cavaretta* was litigated, Plaintiffs seek an hourly rate only $25 higher than this for an attorney with an equivalent level of experience.

Accordingly, the hourly rates at which Plaintiffs' attorney seek to be compensated are within the reasonable market rates charged by attorneys with comparable experience in the community where the action was litigated.

    B. **Application of the Johnson Factors**

Although several of the *Johnson* factors are subsumed within the lodestar calculus, all are to be considered by the District Court when setting the amount of an award of attorneys' fees. The U.S. Supreme Court has held that "the most critical factor is the degree of success obtained." *Hensley*, 461 U.S. at 436. Additionally, when applying the *Johnson* factors, courts should give special consideration to the time and labor involved, the customary fee, and the experience, reputation, and ability of counsel. *Hornbeck Offshore Services, L.L.C.*, 2011 U.S. Dist. LEXIS 59846 at *16. Plaintiffs do not seek an upward adjustment based on the *Johnson* factors, but rather submit that consideration of the relevant factors discussed in greater detail below confirms

12

the reasonableness of the lodestar amount. *See Hernandez v. U.S. Customs and Border Protection Agency*, 10cv04602, 2012 U.S. Dist. LEXIS 14290 at *49-53 (E.D. La., Feb. 6, 2012).

      1. *Results Obtained*

The U.S. Supreme Court repeatedly emphasizes in *Hensley* that "the most critical factor" in assessing a fee award is "the degree of success obtained." *Hensley*, 461 U.S. at 436, 440. Where plaintiffs obtain relief of "significant import," affecting not only their rights, but also those of "numerous other [persons] similarly situated," the "extent of this relief clearly justifies the award of a reasonable attorney's fee." 461 U.S. at 438. If a decision "corrects across-the-board discrimination affecting a large class of [people], the attorney's fee award should reflect the relief granted." *Johnson*, 488 F.2d at 718.

It is beyond dispute that Plaintiffs' counsel achieved excellent results in this action, obtaining a complete victory for Plaintiffs and all individuals subject to sex offender registration solely as a result of a CANS conviction. Specifically, this Court issued a declaratory judgment unequivocally stating that the sex offender registration requirement for individuals convicted of CANS is unconstitutional as to Plaintiffs and all others similarly situated, and granted all of the injunctive relief sought in Plaintiffs' Complaint without reservation. Plaintiffs also succeeded in maintaining anonymity throughout the litigation over defendants' objections, as well as the rare but necessary protection of Plaintiffs' identities from disclosure to Defendants through entry of an extensive protective order in this matter.

The value of the relief obtained for Plaintiffs and others similarly situated is immeasurable, affording complete and total vindication of their constitutional rights. Plaintiffs were immediately relieved of the discrimination they suffered for years solely on the basis of the particular statute pursuant to which they were charged, prosecuted and convicted, as well as of

the considerable burden of compliance with the myriad costly and restrictive requirements of the Registry Law, and of the untold stigma and shame associated with being branded with a badge of infamy as "sex offenders."

While Plaintiffs did not obtain judgment in their favor on all legal theories advanced in the Complaint or against all defendants, their "victory was complete on all issues," including "very importantly, future protection against discrimination in the form of injunctive relief." *See Shipes v. Trinity*, 987 F.2d at 322. "Where a plaintiff has obtained excellent results, his [or her] attorney should recover a fully compensatory fee…the fee award should not be reduced because the plaintiff failed to prevail on every contention raised in the law suit. Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters." *Hensley*, 461 U.S. at 435, 440.

In light of the outstanding results achieved on behalf of Plaintiffs and individuals similarly situated, the lodestar amount is both reasonable and warranted.

   2. *Novelty and difficulty of issues*

Many of the claims asserted in this action presented issues of first impression. *See Johnson*, 488 F.2d 714 ("Cases of first impression generally require more time and effort on the attorney's part…[an attorney] should not be penalized for undertaking a case which may 'make new law.' Instead, he [or she] should be appropriately compensated for accepting the challenge.") The theory advanced by Plaintiffs with respect to the classification created by the imposition of a sex offender registration requirement upon conviction of CANS, but not the solicitation provision of the Prostitution statute, was both novel and unique, and required extensive analysis of the U.S. Supreme Court's equal protection jurisprudence over time, as well

as its application to analogous circumstances across the country. No case exists squarely on all fours with the facts and theory advanced here by Plaintiffs, and analogous circumstances had only previously been considered in a handful of cases in state criminal courts.

Accordingly, the legal research, analysis, and consultation among Plaintiffs' counsel required to draft the Complaint, respond to State Defendants' motion to dismiss, prepare for oral argument, provide the Court with requested supplemental briefing, and draft Plaintiffs' motion for summary judgment was both extensive and substantial. Additionally, while not presenting an issue of first impression, the jurisprudence governing plaintiff anonymity is somewhat arcane, and the particular relief sought by Plaintiff in this case rarely granted.

Accordingly, the novelty and difficulty of the issues presented by Plaintiffs' claims and efforts to protect their identities from disclosure militates in favor of a finding that the lodestar amount sought by Plaintiffs is reasonable.

### 3. Skill required to perform legal services

In light of the novelty, complexity and unique nature of the legal issues presented, a particular degree of expertise in constitutional law, as well as regulation of prostitution-related offenses, was necessary. The purpose of attorneys' fees provisions in civil rights statutes is "to enable litigants to obtain competent counsel worthy of a contest with the caliber of counsel available to their opposition..." *Johnson*, 488 F.2d at 719. Plaintiffs' counsel brought no shortage of civil rights litigation experience, creativity, intellectual firepower, and advocacy skills to bear in advancing Plaintiffs' unique claims, justifying a finding that the attorneys' fee award sought is reasonable.

### 4. *Time and labor required*

"Although hours claimed or spent on a case should not be the sole basis for determining a fee, they are a necessary ingredient to be considered." *Johnson*, 488 F.2d at 717 (internal citations omitted). Plaintiffs' counsel expended a significant number of hours litigating complex substantive issues in this matter.

In light of the novelty and complexity of constitutional and procedural issues at play, a significant amount of time was required to research potential claims and draft the Complaint and pleadings in this case. In so doing, Plaintiffs' counsel combed the history of the criminal laws and the Registry Law at issue in order to explore the origins and judicial interpretations of Louisiana's 200 year-old "crime against nature" law, as well as the sex offender registration requirement imposed upon conviction under the solicitation provision thereof, in order to uncover whether any rational basis was articulated for the distinction between individuals convicted of CANS and individuals convicted under the solicitation provision of the Prostitution statute. Counsel also conducted an extensive survey of laws in all 50 states to determine whether a similar distinction or registration requirement existed in any other jurisdiction, and devoted a significant amount of time to reviewing the records of the SOCPR to determine the numbers and characteristics of individuals affected by the challenged registration requirement.

During investigation and development of the litigation, a significant amount of time was also expended meeting with individuals subjected to sex offender registration as a result of a CANS conviction across the state in order to identify potential plaintiffs in this action, ensure that the plaintiffs in this action made up a somewhat representative cross-section of individuals affected by the registration requirement, and to gain a full understanding of the burdens imposed thereby. Moreover, working with nine plaintiffs representative of individuals who are required to

register as sex offenders as a result of the challenged requirement, a number of whom continue to experience discrimination, poverty, homelessness, and incarceration, required that attorneys, and particularly local counsel, consistent with their ethical duties, devote a significant amount of time to maintaining contact with clients, keeping them apprised of developments in the case, and consulting them at critical junctures in the litigation.

Additionally, a considerable amount of time, research and effort was required to ensure protection of Plaintiffs' identities in this litigation in order to avoid exposing them to further stigma, shame, embarrassment and potential retaliation. Plaintiffs' counsel engaged in extensive legal research, consultation, and advocacy to defend against procedural challenges to Plaintiffs' use of pseudonyms, explore procedural mechanisms for introducing evidence on motion for summary judgment without disclosure of Plaintiffs' identities, and to negotiate an appropriate protective order in this matter.

Finally, Defendants' refusal to resolve this matter early in the litigation despite Plaintiffs' good faith efforts to engage in settlement negotiations, as well as the numerous arguments bordering on frivolous raised in Defendants' motions to dismiss and response to Plaintiffs' motion for summary judgment further contributed to the hours expended by Plaintiffs' counsel in this matter. For example, a significant amount of time was required to obtain records necessary to defeat Defendants' speculative claims concerning Plaintiffs' standing – records which were easily available to Defendants as they were exclusively within their possession and control – as well as to counter Defendants' various hypothetical musings concerning irrelevant matters such as the nature of the conduct underlying Plaintiffs' convictions.

In light of the above, despite the relatively brief course of litigation, the significant amount of time and labor expended by Plaintiffs' attorneys counsels in favor of the reasonableness of the award sought.

    5. *Undesirability of the case*

Although the sex offender registration requirement at issue in this case has been in place since 1992, and was increasingly aggressively enforced in recent years, prior to this litigation only one unsuccessful state court challenge to the CANS law specifically referenced the sex offender registration requirement in the 20 years it remained on the books. *See State v. Baxley*, 656 So. 2d 973, 978-79 (1995). No challenge was ever mounted to the sex offender registration requirement in federal court, and Plaintiffs are unaware of any such challenge that would have been filed by other attorneys had undersigned counsel not brought this litigation. Indeed, actions vindicating the constitutional rights of individuals labeled as sex offenders and of individuals who have been convicted of prostitution-related offenses, and particularly those with such infamous monikers as "crimes against nature," are among the more unpopular in the universe of civil rights cases.

Accordingly, the Court may consider the undesirability of the case when setting the amount of amount of attorneys' fees awarded in this case.

In light of the above, consideration of the *Johnson* factors further supports a finding that the attorneys' fees sought in this matter are reasonable in light of the hours and expertise necessary to achieve the degree of success obtained by Plaintiffs.

### III. Costs

Plaintiffs seek an award of costs in the amount of $13,386, reflecting those expenditures reasonably necessary to undertake the litigation, including filing fees, fees incurred in connection

with service of process on Defendants, and costs of necessary travel from New York to New Orleans to meet with potential clients and Plaintiffs, develop and file the case, attend conferences, hearings and oral argument relating to Defendants' motions to dismiss, Plaintiffs' motion for summary judgment, and Plaintiffs' motion to submit a declaration in support of their motion for summary judgment *ex parte* for *in camera* review. Plaintiffs exercised billing judgment by eliminating costs for meals while traveling, filing fees for applications to appear *pro hac vice,* as well as other costs incidental to maintaining the litigation. Affidavits submitted by Alexis Agathocleous and Andrea J. Ritchie attest under penalty of perjury that the costs for which Plaintiffs now see reimbursement were necessarily incurred in the case. Agathocleous Aff. Ex. C at ¶ 12; Ritchie Aff., Ex. D at ¶18.

### IV. Conclusion

For the foregoing reasons, Plaintiffs hereby respectfully request that the Court award attorneys fees and costs in this matter at $ 349,679 in fees and $13,386 in costs.

Respectfully submitted,

By: /s/ Andrea J. Ritchie
ANDREA J. RITCHIE, N.Y. State Bar # 4117727, *pro hac vice*
995 President Street
Brooklyn, NY
Tel: (646) 831-1243
Email: andreajritchie@aol.com

Alexis Agathocleous, N.Y. State Bar #4227062, *pro hac vice*
Sunita Patel, N.Y. State Bar #4441382
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
Tel: (212) 614-6478
Facsimile: (212) 614-6499
Email: aagathocleous@ccrjustice.org

William P. Quigley, La. State Bar #7769

Davida Finger, La. State Bar #30889 (T.A.)
LOYOLA UNIVERSITY NEW ORLEANS COLLEGE OF LAW
Stuart H. Smith Law Clinic & Center for Social Justice
7214 St. Charles Ave, Box 902
New Orleans, LA 70118
Tel: (504) 861-5596
Facsimile: (504) 861-5440
Email: dfinger@loyno.edu

*Attorneys for Plaintiffs*