# EXHIBIT B

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| AUDREY DOE, et al., :<br><br>   Plaintiffs, :<br><br>   v. :<br><br>BOBBY JINDAL, et al., :<br><br>   Defendants. : | Civil Action No. 11-00388<br>(MLCF) (ALC) |

**DECLARATION OF WILLIAM P. QUIGLEY IN SUPPORT OF
PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS PURSUANT TO
42 U.S.C. § 1988 AND FED. R. CIV P. 54(d).**

**WILLIAM P. QUIGLEY** declares, pursuant to 28.U.S.C. § 1746 and under penalty of perjury as follows:

1. I am counsel for plaintiffs in the above-captioned action. I hereby submit this declaration in support of Plaintiffs' motion to set the amount of attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and Fed. R. Civ. P. 54(d)(2).

2. I have been a civil rights and constitutional lawyer my whole career. I am an attorney in good standing admitted to practice in the state of Louisiana since 1977 and before the U.S. District Court for the Eastern District of Louisiana since 1977. I have also been admitted to practice in federal courts in several other jurisdictions including Arizona, District of Columbia, Georgia, New York, and North Dakota.

3. I graduated from Loyola University New Orleans College of Law in May 1977. I clerked for civil rights lawyers Ben Smith and John P. Nelson while in law school.

4. I graduated from Purdue University in 1971. In the interim I studied graduate theology at Notre Dame Seminary in New Orleans and worked as a social worker at Hope House with residents of the St. Thomas Housing Development.

5. After I graduated from law school in 1977, I was a staff attorney at New Orleans Legal Assistance. While there I brought successful federal civil rights challenges on behalf of the Louisiana Black Assembly to address problems in the Community Development Block Grant programs in Jefferson Parish.

6. I joined the New Orleans City Attorney's Office when Mayor Ernest Dutch Morial was elected in 1978. There I was lead attorney in charge of legal issues in federal housing, anti-poverty and jobs programs.

7. I returned to New Orleans Legal Assistance in 1979 and brought numerous successful federal challenges for civil rights violations in Plaquemines Parish, St. Bernard Parish, Jefferson and Orleans Parish. These federal cases involved public housing conditions in the Desire and St. Thomas housing developments, racial discrimination in Plaquemines Parish, and other issues. These and others are detailed in Attachment 1.

8. From 1981 to 1991 I was in private practice in New Orleans specializing in civil rights litigation. I litigated numerous federal class and individual actions. These cases involved everything from public housing, voting rights, death penalty challenges, police brutality, homelessness, prison litigation, free speech, reform of public education, housing discrimination, access to justice, right to be free from searches, tax resistance, Medicaid cutbacks, a defecting Russian seaman, and criminal law issues. (Attachment 1).

9. Starting in 1981 I was the General Counsel of the ACLU of Louisiana. I served in this position until 2001. This was a volunteer position. In that position I had ultimate approval

and supervision for all of the organization's litigation in Louisiana and I was counsel of record in most.

10. I litigated cases for and with ACORN, the Advancement Project, the League of Women Voters, Louisiana Black Assembly, the Louisiana NAACP, the NAACP Legal Defense and Educational Fund, Inc., and the Southern Christian Leadership Conference.

11. Since 1991 I have been a law professor at Loyola University New Orleans. I have headed up the clinical programs and the Poverty Law Center for about 20 years.

12. I served as Legal Director of the Center for Constitutional Rights from 2009 to 2011 and have served as Associate Director since that time.

13. Since I began as an attorney I have been counsel in the cases listed in Attachment 1 this document as well as others too numerous to detail.

14. I have published extensively on issues of civil and human rights law, as detailed in Attachment 2.

15. Recent awards I have received include the 2011 Fordham University School of Law Louis J. Lefkowitz Public Service Award, the 2011 Activist Scholar Award of the Urban Affairs Association, the 2009 Daynard Public Interest Fellow at Northeastern University School of Law, the 2007 University of California School of Law Thelton Henderson Social Justice Scholar in Residence, the 2006 National Lawyers Guild Ernie Goodman Award, the 2006 Stanford Law School Public Service Award, the 2006 Federal Bar Association New Orleans Camille Gravel Pro Bono Award, and the 1998 Pro Bono Publico Lifetime Achievement Award from the Louisiana State Bar Association. I have served as Chair and board member of the U.S. Commission on Civil Rights Louisiana Advisory Board and a board member for the U.S. Human Rights Network.

16. The amount of time I am asking for recovery of fees in this case comes to a total of 24.75 hours.  A copy of my timesheet is attached hereto as Attachment 3. I estimate that number is about 10% of the total time I worked on the case.

17. In an exercise of billing judgment I have not included many hours spent discussing the case with attorneys from CCR and Loyola prior to and subsequent to October 2010 when Plaintiffs first retained my services, hours spent meeting with the media or community members concerning the case, or hours for which I have insufficient documentation. Additionally, Plaintiffs are not seeking an award of attorneys' fees for any of the time I spent working on advocacy before the Louisiana legislature with respect to repealing the sex offender registration requirement at issue in this litigation.

18. I am asking for $450 an hour for my time in this case which I submit is reasonable for an attorney of my expertise and experience in this jurisdiction.

19. Accordingly, Plaintiffs seek an award of $11,137.50 for work I performed in this case.

I declare under penalty of perjury that this is correct.

DATED:  August 7, 2012                     Respectfully Submitted,

                                           _____/s/_____

                                           William P. Quigley, Clinical Professor



**William P. Quigley, Janet Mary Riley Professor of Law**
**Loyola University New Orleans College of Law**
**Stuart A. Smith Law Clinic and Center for Social Justice**
7214 St. Charles Avenue, Campus Box 902
New Orleans, LA 70118
504.861.5590 - Quigley77@gmail.com

**Attachment 1 –** QUIGLEY LITIGATION, as of July 2012

VOTING RIGHTS

Chisom v Jindal, USDC, 86-4075, 2012 federal voting rights challenge to Louisiana Supreme Court efforts to deny Justice Bernette Johnson, court's only African American Justice, her rightful position as Chief Justice.  Reopened federal action. Also filed Section 5 complaint.  Co-counsel.

ACORN v. Blanco, USDC, 06-611 B (2006) federal voting rights challenge to insure Katrina displaced voters in Orleans have full opportunity to vote.  Co-counsel to Advancement Project.  Judge pushed State to set up in-state voting centers, refused to order Louisiana to set up out of state voting centers.

ACORN, Urban League and Unity 04 v. McKeithen et al., CDC, #2004-15624, Lawsuit by voting rights groups to keep New Orleans polls open extra hours on November 2, 2004 to remedy system-wide problems with voting machines and provisional ballots. Co-counsel with Alaina Beverly, NAACP Legal Defense and Educational Fund and Ron Wilson.

Louisiana House of Representatives et al. v. Ashcroft et al., USDC, DC, DC, # 02-CV00062.  April 2002.  Intervention on behalf of African American voters to challenge reapportionment of Louisiana House of Representatives.  Co-counsel with NAACP Legal Defense Fund (LDF).  Obtained improvements in apportionment schemes.

Maxwell v. Foster, USDC, W.D. LA, #98-1378.  Intervention on behalf of African American voters into challenge to black-majority legislative district in north Louisiana.  Co-counsel with NAACP Legal Defense and Education Fund (LDF).

Hays v. Edwards, USDC, W.D. LA #92-1522 c/w 95-1241 "S", Intervention on behalf of African American voters into challenge to black-majority Louisiana congressional district by white voters.  Co-counsel with NAACP Legal Defense Fund (LDF).

Chisom v. Roemer, 111 S.Ct. 2354 (1991) successful federal class action seeking creation of first black majority district on Louisiana's Supreme Court.  Decision on legal issues by U.S. Supreme Court, 111 S.Ct. 2354 (1991).  Co-counsel with LDF.
Major v. Treen, 574 F.Supp 325 (E.D.LA 1983), federal class action resulted in reapportionment of Congressional districts of Louisiana.  Created Louisiana's first black majority congressional district and one of the first cases to interpret the newly amended Voting Rights Act.  Co-counsel with LDF.
 Valteau v. Edwards, (#84-1293, USDC, E.D.LA 1984), three judge court, federal statewide class action resulting in the reinstatement of the Presidential Primary in Louisiana which was canceled after Rev. Jesse Jackson announced he sought Democratic nomination.  Lead counsel with LDF.

Quant v. Edwards, (#84-3841, USDC, E.D.LA 1984), federal statewide class action challenging Louisiana's voter registration laws.  Lead counsel with LDF.

Jones v. Edwards, 674 F.Supp 1225 (E.D.LA 1987), three judge court, class action challenging voter purges prior to elections.  Co-counsel with LDF.

Numerous Section 2 and Section 5 VRA challenges to:  Louisiana House of Representatives on behalf of the Legislative Black Caucus (in 1980s as co-counsel with LDF; in 1990s as co-counsel with The Lawyers' Committee for Civil Rights and LDF; in 2000's with LDF) the Louisiana Senate in 1991 and local governmental electoral actions in Orleans, Plaquemines, East Carroll, East Feliciana, St. Tammany, Pointe Coupee, Madison, Washington, Basile and others.

Cooper v. Fowler, (#87-19205, CDC), successful statewide class action against State of Louisiana and all 64 parish governments improving access to polls for physically handicapped.  Lead counsel with Advocacy Center.

Rodney v. McKeithen, (USDC, M.D. La), successful challenge to failure to redistrict Louisiana parishes of Pointe Coupee, Madison, West Feliciana, East Carroll.  Cocounsel with Lawyers Committee for Civil Rights, Washington, DC.

Wilson v. St. Francisville, (#92-765 B USDC, M.D. LA), successful challenge to town council elections. Result: consent creation of additional black majority voting district. 1996 effort of town to set aside consent judgment. Matter reheard and new black majority district created. Co-counsel with Voting Rights Project of ACLU, Atlanta, Georgia.

Perschall v. Louisiana, (various Louisiana state and federal courts), effort to set aside federal court consent remedy in Chisom v Roemer (see above). Intervened to represent African American voters.

CONSTITUTIONAL RIGHTS
State of Louisiana versus 10 people without counsel. June 2012 challenge to Orleans Parish Criminal Court prosecutions of people without appointed counsel. Ask that prosecutions be stayed and those in jail awaiting trial without counsel be released. Section K.

Enziaya v. Landrieu, USDC #11-2977 "I", federal First Amendment challenge to actions by City of New Orleans to demolish Occupy NOLA encampment at Duncan Plaza. Won Temporary Restraining Order December 6, 2011 ordering City to let protestors in tents back into plaza. Co-counsel.

Al-Aulaqi v. Obama, USDC DC – challenge to extrajudicial targeted killings of US citizens by US government. Co-counsel.

CCR and ACLU v. OFAC, - USDC DC – challenge to requirement that lawyers get permission of government to sue government on behalf of people on terrorist list, won settlement fall 2010. Co-counsel.

ACORN v. USA, USDC – 09-04888, E.D. NY, November 2009, challenge to Bill of Attainder by Congress cutting off all federal funding to ACORN and affiliates, subsidiaries, and allies. Co-counsel.

City Council of New Orleans v. Tracie Washington, CDC, First Amendment appeal of district court gag order and prior restraint on publication of emails of city council members, March 2009. Co-counsel.

Joshua v. City of New Orleans, USDC, 07-0425 – class action challenge to lack of due process in home demolitions in New Orleans. Co-counsel.

Bentley v. La Dept Education, USDC, 07-0571 S-4.  Children signing up for public school in Recovery School District wait listed.  Violation of homeless children education act.  Over 300 children turned away from school.  Case settled with removal of wait list policy.  Assistant counsel to NAACP Gulf Coast Advocacy Project.

Kirk v. City of New Orleans, 2005-13471 "I", 12.28.05; class action challenge to Christmas Eve announcement of bulldozing by City of NO without notice action brought first in state court, got TRO stopping all bulldozing; removed to USDC, settlement, January 2006 giving notice to all homeowners of city intention to demolish; no houses demolished until February, after newspaper, mail and web notice; Co-counsel with Advancement Project.

Sylvester v. Boissiere, USDC, ED La. # 05-05527, successful due process challenge to inadequate notice by tacking for absentee renters after Katrina.  Co-counsel with Advancement Project. November 2005.

Gizelle Smith et al. v. Lambert Boissiere et al., CDC 2005-12029, 10-24-05, successful state court constitutional challenge to holding Orleans eviction hearings in Gonzales Louisiana because New Orleans courts were damaged.  Won TRO and Permanent Injunction.  Lead counsel.

 Bourgeois v. Peters, 387 F.3rd. 1303 (11th cir 2004) October 15, 2004, successful First and Fourth Amendment challenge to city policy of subjecting political protestors to metal detector searches.  Co-counsel.

Hamdan v. Foti, USDC #03-1420 C, ED LA.  First Amendment challenge of Muslim prisoners to lack of accommodation to their religion at Ramadan.  Appointed by USDC. Settled 2004.

Parents for Educational Justice, et al. v. Picard, USDC #00-0633 N, E.D. La.  Due Process constitutional challenge on behalf of parents of public school children to use of Louisiana LEAP test for retention purposes.  Lead counsel.

Charlet v. Edwards, Louisiana state court constitutional challenge to inadequate educational opportunity.  Filed 1992.  Co-counsel with New Orleans Legal Assistance Corporation, ACLU, and others.

Short v. Bridwell, successful federal housing discrimination case received $57,000 award in 1993.  Reported as "largest lump sum ever obtained in the South" by co-counsel Lawyers Committee for Civil Rights Under Law.

Louisiana v. Leonard Peart, appointed by Criminal District Court to litigate issue of funds for court-appointed DNA experts.  Awarded $10,000 July 1992.

Thompson v. City of New Orleans, (#85-5475, USDC, E.D.LA), successful class action challenge to municipal criminal ordinance "sleeping in public" used to harass homeless. Lead counsel.

Roshan v. Smith, 615 F. Supp. 901 (DC.DC. 1985) challenge to construction of Oakdale Alien Detention Center on grounds that people confined there would not have adequate access to counsel because of its size and isolated location.  Co-counsel with Lawyers Committee International Human Rights and ACLU.
Ringe v. Romero, 624 F.Supp 417 (W.D.LA 1985), successful constitutional challenge invalidating Louisiana statute and local ordinances "consent to search" laws.  Lead counsel.

Shirley Jones v. City of New Orleans, (1983, E.D.LA), successful class action resulting in improvements in law enforcement computer identification in Greater New Orleans area.  Lead counsel.

Meadows v. City of New Orleans, (#83-703, USDC E.D.LA), successful action improving rights of hearing-impaired persons in interrogation, arrest and incarceration. Lead counsel.

Melvin Jones v. City of New Orleans, (#85-2897, USDC E.D.LA) successful class action challenging municipal restrictions on campaign signs.  Lead counsel.

Medvid v. Lambert, (#85-5150, USDC, E.D.LA) unsuccessful habeas petition for defecting Russian seaman by next friends U.S. Senators Grassley, Helms and Humphries.  Lead counsel.

Drefchinski v. Regan, 589 F.Supp 1516 (W.D.LA, 1984), constitutional challenge to I.R.S. penalty imposed on pacifist tax protester.  Lead counsel.

Bates v. Phelps, (#89-65, USDC, W.D.LA), successful constitutional class action by death-row inmates concerning access to courts issues.    Co-counsel with National Prison Project.

Hamilton v. Morial, (#88-3736, USDC, E.D.LA), class action by 3000+ inmates in Orleans Parish jails challenging conditions of confinement.  Successful settlement of

medical issues, psychiatric issues, and environmental issues.  Other issues pending include a recently filed sub-class action for all female inmates: Lambert v Morial.  Co-counsel with National Prison Project.

Schultz v. Edwards, (#86-4926, USDC, E.D.LA), successful class action by 450,000 Medicaid recipients to restore illegal program and budget cuts.  Lead counsel with New Orleans Legal Assistance Corporation.

Oakdale Legal Assistance v. Bureau of Prisons, (1986, USDC, W.D.LA), successful challenge to BOP curtailment of access of paralegals to incarcerated clients.  Lead counsel.

HOUSING
Allen v. HANO, CDC 07-15799 (F)(10) – successful action for injunction to halt demolition until approval by New Orleans City Council.  Cocounsel.

Anderson v. Jackson, USDC 06-3298 (B)(5) (2006) class action on behalf of 4000 families seeking to return to public housing in New Orleans and to prevent HUD from demolishing 5000 affordable housing units – co-counsel with Advancement Project and Jenner & Block.

Community Development Block Grant $10 billion objections filed on behalf of ACORN, PHRF, others, March 2006, April 2006 – co-counsel with many other advocates

McWaters v. FEMA, USDC 05-5488, In February 2006, played a small part in a very big case brought by other lawyers.  Filed intervention on behalf of 12,000 families to stop FEMA hotel evictions.  Cocounsel.

Powell v. Maison Inn St. Charles, CDC, 1.7.06, successful class action to stop evictions of FEMA residents at hotel.  Co-counsel.

Mitchell v. Housing Authority of New Orleans, (#87-1446, USDC, E.D.LA), successful class action to enforce federal regulations re:  lead paint poisoning.  Lead counsel.

Jackson v. H.A.N.O., (#82-3907, USDC, E.D.LA), successful class action to utility allowances, eviction procedures and general conditions in St. Thomas Housing Development.  Lead counsel.

Alexander v. Landrieu, (#79-4040, USDC, E.D.LA), successful class action challenge to conditions in Desire Housing Development.  Lead counsel.

VanZan v. Harris, 1978, and Louisiana Black Assembly v. HUD, 1979, USDC, E.D.LA, challenges to 1978 and 1979 Community Development Block Grant programs in Jefferson Parish, LA.  Lead counsel.



**William P. Quigley, Janet Mary Riley Professor of Law**
**Loyola University New Orleans College of Law**
**Stuart A. Smith Law Clinic and Center for Social Justice**
**7214 St. Charles Avenue, Campus Box 902**
**New Orleans, LA 70118**
**504.861.5590**
**Quigley77@gmail.com**

## Attachment 2 – Quigley Publications

Scholarly Writings, Books and Book Chapters by Bill Quigley, August 1, 2012

Author, "Ten Thoughts on Social Change Lawyering," Loyola University Chicago School of Law Public Interest Journal, forthcoming 2012;

Author, "Haiti Earthquake Response Justice Issues," Arkansas Journal for Social Change, February 2012.  http://ualr.edu/socialchange/2012/02/26/haiti-where-is-the-money/

Author, "Racism: The Crime in Criminal Justice," Loyola Public Interest Law Journal, forthcoming spring 2012;

Author, "Justice and Law: The One Hundred Year Rule," City University of New York Law Review, forthcoming spring 2012;

Author, "Twenty Examples of the Obama Administration Assault on Domestic Civil Liberties," a chapter in the forthcoming book, HOPELESS: BARACK OBAMA AND THE POLITICS OF ILLUSION, edited by Jeffrey St. Clair (AK Press 2012);

Author, "Fourteen Examples of Racism in the Criminal Justice System," reprinted in textbooks edited by Mark Stohr and Anthony Walsh, CORRECTIONS: The Essentials (2011 SAGE Publications) and CORRECTIONS: A Text/Reader (2011 SAGE Publications);

Author, "Challenging Torture at Fort Huachuca and the School of the Americas," chapter in "THE UNITED STATES AND TORTURE: Interrogation, Incarceration, and Abuse, edited by Marjorie Cohn (NYU Press 2011);

Author, "Katrina: A Chance to Do It Right," chapter in MANDATE FOR CHANGE: Policies and Leadership for 2009 and Beyond, edited by Chester W. Hartman (Lexington Books 2009);

Author, STORMS STILL RAGING: Katrina, New Orleans and Social Justice (2008);

Author, "What Katrina Revealed," Harvard Journal of Law and Public Policy (2008);

Author, "Showing Conviction at Echo 9," chapter in Joshua Frank & Jeffrey St. Clair RED STATE REBELS: Tales of Grassroots Resistance in the Heartland (2008).

Author, "Voting Wrongs: New Orleans Voting Problems after Katrina," Washington & Lee Journal of Civil Rights and Social Justice (2008);

Author, "Racial Discrimination and the legal system in the United States: The recent lessons from Louisiana," United Nations Chronicle 2007, Volume XLIV, Number 3, September 2007;

Author, "Human Rights Trump Property Rights – Lawyers Are Called to Become Revolutionaries," 64 Guild Practitioner 95 (Summer 2007);

Co-author, "A Call for the Right to Return in the Gulf Coast," chapter with Sharda Sekaran in BRINGING HUMAN RIGHTS HOME, edited by Cynthia Soohoo, Catherine Albisa, Martha F. Davis. (2008);

Author, "Letter to a Law Student Interested in Social Justice," 1 DePaul Journal for Social Justice 7 (2007);

Author of Book Review, "There is no such thing as a Natural Disaster," 41 Clearinghouse Review: Journal of Poverty Law and Policy 99 (May-June 2007);

Author, "Obstacle to Opportunity: Housing that working and poor people can afford in New Orleans since Katrina," 42 Wake Forest Law Review 393 (2007);

Author, "Thirteen Ways of Looking at Katrina: Human and Civil Rights," 81 Tulane Law Review 955 (2007);

Author, "Who was left behind in Katrina and Who is being left behind now?" 40 Clearinghouse Review for Poverty Law 149 (May-June 2006)

Author, "A Radical Revolution of Values Addressing Poverty, Wealth and the Working Poor: The Social Responsibility of Lawyers" 20 Washington University Law School Journal of Law and Policy 101 (2006)

Author, "The Case for Closing the School of Americas," 20 Brigham Young Journal of Public Law 1 (2006)

Author, "Reflections from the Journals of Prosecution Clinic Students," 74 University of Mississippi Law Journal 1147 (2005)

Author, "Enforcing International Law Through Civil Disobedience: The Trial of the St. Patrick's Four," in Jeremy Brecher, Jill Cutler and Brendan Smith, IN THE NAME OF DEMOCRACY: American War Crimes in Iraq and Beyond (Metropolitan Books, Henry Holt and Company, New York 2005).

Author, "Make No Mistake: Peace, Justice, and Love For The Gospel Tells Us So," in Neil Paynter & Helen Boothroyd, editors, HOLY GROUND: Liturgies and worship resources for an engaged community (Wild Goose Publications, Glasgow 2005)

Author, "The Story of the Trial of the St. Patrick's Four: Jury Votes 9-3 to Acquit Peace Activists Despite Admission They Poured Blood in Military Recruiting Center," 61 Guild Practitioner, Number 2, 110, Spring 2004 (published November 2004).

Author, "Catholic Social Thought on Work and Prisons," 44 Santa Clara University Law Review 1159 (2004)

Author, "Seven Principles for Catholic Law Schools Serious About A Preferential Option for the Poor," 1 St. Thomas University Law Journal 128 (2003)

Author, "Catholic Social Thought and the Amorality of Corporations: Time to Remove Corporate Personhood," in 5 Loyola University Journal of Public Interest Law 109 (2004).

Author, Book Review, Human Rights Review, John H. Scott, WITNESS TO THE TRUTH: My Struggle for Human Rights in Louisiana (Spring 2004)

Author, "Ending Poverty by Creating a Constitutional Right to a Living Wage," JURIST, September 24, 2003.  Reprinted in OPPOSING VIEWPOINTS: Social Justice (OVPSJ) 2005.

Author, "The Necessity Defense in Civil Disobedience Cases: Bring in the Jury" 38 New England Journal of Law 3 (2003)

Author, "Just Compensation," Encyclopedia of Bioethics, 3rd edition, (Macmillan Reference USA 2003)

Author, ENDING POVERTY: Guaranteeing a Right to a Job at a Living Wage (Temple University Press, 2003)

Author, "America, Yes! War, No." JURIST, November 12, 2002

Author, "The earliest years of Federal Social Welfare Legislation: Federal Poor Relief Prior to the Civil War," 79 University of Detroit Mercy Law Review 157 (2002).

Author, "Full-time Workers Should Not Be Poor: The Living Wage Movement," 36 University of Mississippi Law Journal 889 (2001). Reprinted in WORK LAW: Cases and Materials (Lexis 2005).

Author, "Due Process Rights for Grade School Students Facing High-Stakes Testing," 10 Boston U Public Law Journal 284 (2001)

Author, "Predictions for Poverty Law," 47 Louisiana Bar Journal 407 (February 2000)

Author, "The Demise of Law Reform and the Triumph of Legal Aid: Congress and the Legal Services Corporation from the 1960's to the 1990's," 17 St. Louis Public Law Journal 241-264 (1998) [reprinted in part in West Publishing Company casebook SOCIAL JUSTICE: PROFESSIONALS, COMMUNITIES AND LAW, by Martha R. Mahoney, John O. Calmore and Stephanie M. Wildman., 4-03] Cited as a reference in Alan W. Houseman and Linda E. Perle, SECURING EQUAL JUSTICE FOR ALL: A Brief History of Civil Legal Assistance in the United States, CLASP (November 2003).

Author, "The Right to Work and Earn a Living Wage: A Proposed Constitutional Amendment," 2 City University of New York Law Review 139-182 (1998) [reprinted in part in West Publishing Company casebook POVERTY LAW, Cases and Materials, Second Edition, edited by Juliet M. Brodie pending 2004]

Author, "Backwards to the Future: Welfare Reform in the Millennium Using Poor Law Principles from the Middle Ages," 9 Stanford Law and Policy Review 101 (1998)

Author, "Rumblings of Reform: Northern Poor Laws 1820-1860," 26 Capital University Law Review 739-774 (1997)

Author, "The Quicksands of the Poor Law: Poor Relief Legislation in a Growing Nation, 1790-1820," 18 Northern Illinois University Law Review 1-98 (1997).

Co-author, "The Significance of Race: Legislative Racial Discrimination in Louisiana, 1803-1865," 24 Southern University Law Review 145-205 (1997)

Author, "Reluctant Charity: Poor Laws in the Original Thirteen States," 31 U. Richmond Law Review 111-178 (1997)

Author, "Five Hundred Years of English Poor Laws, 1349-1834: Regulating the Working and Nonworking Poor," 30 Akron Law Review 73-128 (1996)

Author, "Work or Starve: Colonial American Poor Laws" 31 U. San Francisco Law Review 35-83 (1996)

Author, "A Fair Day's Pay for a Fair Day's Work: Time to Raise and Index the Minimum Wage," 27 St. Mary's Journal 513-556 (1996) cited by US Court of Appeals, Ninth Circuit in their decision upholding the living wage ordinance of Berkeley CA June 16, 2004.  See Rule One Corporation v City of Berkeley, USCA, 9th Cir. 02-15762, June 16, 2004

Author, "Primer on Minimum Wage and Overtime Issues Under the Fair Labor Standards Act for Low Wage Workers and Their Advocates,"  29 Clearinghouse Review 925-943 (February 1996).

Author, Book Review of The War Against the Poor by Herbert Gans, 1 Detroit College of Law Review 17 (1996).

Author, "De-Mythologizing Welfare: Book Review of Faces of Poverty: Portraits of Women and Children on Welfare," 2 Loyola Poverty Law Journal 179-215 (1996).

Author, "Louis Westerfield, 1949-1996" Black Issues in Higher Education, Volume 13, No 16, October 3, 1996, 25.

Co-author, "Remembering Dean Louis Westerfield: Thoughts from Friends, Colleagues, and Former Students," 42 Loyola Law Review 405, 409-411 (1996)

Author, "Introduction to Clinical Teaching for the New Clinical Teacher: A View from the First Floor," 28 Akron Law Review 463-496 (1995). Used at South Asia Clinical Education Conference 1995; used in conference for South Africa clinical educators at University of Maryland 11-95; used in conference for South America clinical educators by Gonzaga Law School 4-96; translated into Polish 11-96; translated into Chinese 2002; used at AALS New Clinical Teacher Workshops;

Author, Book Review of The Selling of the South, 1 Loyola Poverty Law Journal 119-124 (1995)

Author, "Billing Issues for Legal Services Advocates," sidebar comments in "Federal Statutory Attorney Fees: Common Issues and Recent Cases," 28 Clearinghouse Review 752, November 1994.

Author, "Reflections of Community Organizers: Lawyering for Empowerment of Community Organizations," 21 Ohio Northern University Law Review 455-480 (1994). [reprinted in part in West Publishing Company casebook SOCIAL JUSTICE:

PROFESSIONALS, COMMUNITIES AND LAW, by Martha R. Mahoney, John O. Calmore and Stephanie M. Wildman., 4-03]

Author, "The Unmet Civil Legal Needs of the Poor In Louisiana," 40 Louisiana Bar Journal 477 (1993)

Author, "Affirmative Action: Necessary and Good," 2 American Constitution Journal of Law and Public Policy 20 (1992)

Author, "The Unmet Civil Legal Needs of the Poor in Louisiana," 19 Southern University Law Review 273-296 (1992)

Author, Book Review of Stepping Stones: Successful Advocacy for Children, 37 Loyola Law Review 401 (1991)

Author, "Constitutional Law" in Fifth Circuit Symposium, 34 Loyola Law Review 881 (1989)



**William P. Quigley, Janet Mary Riley Professor of Law**
**Loyola University New Orleans College of Law**
**Stuart A. Smith Law Clinic and Center for Social Justice**
**7214 St. Charles Avenue, Campus Box 902**
**New Orleans, LA 70118**
**504.861.5590 - Quigley77@gmail.com**

**Attachment 3 – Billed Hours – Doe v. Jindal, 11cv0388 (E.D. La.)**

**Total 24.75 hours @ $450 an hour**

<u>2011</u>

Feb 7 - mtg co-counsel re: case development - 1.0 hours

Feb 14 – fly from NYC to NOLA - 4 hours

Feb 15 - meeting with clients and co-counsel concerning filing, case filed, meeting with clients – 6.0 hours

Feb 16 - fly back to NYC - 4 hours

April 7 – mtg with co-counsel at GL – motions to dismiss, coordination of counsel, factual and legal research, discovery, protective order - 1.0 hours

August 8, 2011 –moot on motion to dismiss – 1.0 hours

August 9, 2011 – Gen mtg legal and plaintiffs and people impacted – discussion of case, impact on plaintiffs – 1.0

August 10, 2011 - prep and travel to USDC – 1.0; 1.5 in session with judge MLF, mtg after with clients - .25, travel back to office - .25 – total 3.0 hours

December 8, 2011 – prep for USDC status hearing, 1.0; travel to & from hearing, .5; hearing - .75 - total 2.25 hours

<u>2012</u>

March 28, 2012 –hearing USDC – hearing & travel   total 1.5 hours

April 17 – 24 - calculating time sheets – n/c